UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 1, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Civil Action No. 24-2743 (RBW) |

**<u>DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    I.     Facts Giving Rise to this Action ...................................................................... 2

    II.    Administrative Exhaustion .............................................................................. 4

LEGAL STANDARDS ......................................................................................................... 5

    I.     Rule 12(b)(1) ..................................................................................................... 5

    II.    Rule 12(b)(3) ..................................................................................................... 6

    III.   Rule 12(b)(6) ..................................................................................................... 7

ARGUMENT ........................................................................................................................ 8

    I.     The Court Should Dismiss This Action for Lack of Proper Venue, or in the
         Alternative, Transfer this Case. ...................................................................... 8

         A.    Venue Is Improper ................................................................................. 8

         B.    The Court Should Dismiss, Rather Than Transfer This Action ................ 14

         C.    If the Court Believes Transfer is Appropriate, It Should be to the Southern
              District of New York or the Southern District of Florida ........................ 17

    II.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims of Failure to
         Investigate Because the Discretionary Function Exception of the FTCA Bars Such
         Claims ........................................................................................................... 18

         A.    The FBI's Law Enforcement and Investigative Activities Are Protected by
              the Discretionary Function Exception. .................................................. 21

    III.   Plaintiffs' Claims Are Barred by the FTCA's Statute of Limitations .................. 29

    IV.   The Court Should Exercise Its Discretion in Ruling on Plaintiffs' Motion for
         Leave to File a Second Amended Complaint ...................................................... 36

CONCLUSION ................................................................................................................... 38

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*Abhe & Svoboda, Inc. v. Chao*,
　508 F.3d 1052 (D.C. Cir. 2007) ....................................................................................... 7

*Am. Farm Bureau v. EPA*,
　121 F. Supp. 2d 84 (D.D.C. 2000) ................................................................................... 6

*Armstrong v. McAlpin*,
　699 F.2d 79 (2d Cir. 1983) ............................................................................................ 31

*\*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................. 7, 12, 37

*Attkisson v. Holder*,
　241 F. Supp. 3d 207 (D.D.C. 2017) ............................................................................... 13

*Autery v. United States*,
　992 F.2d 1523 (11th Cir. 1993) ..................................................................................... 21

*Banneker Ventures, LLC v. Graham*,
　798 F.3d 1119 (D.C. Cir. 2015) ..................................................................................... 37

*Bartel v. FAA*,
　617 F. Supp. 190 (D.D.C. 1985) .................................................................................... 13

*Beatty v. Wash. Metro. Area Trans. Auth.*,
　860 F.2d 1117 (D.C. Cir. 1988) ..................................................................................... 20

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................... 7, 12

*Berkovitz v. United States,*
　486 U.S. 531 (1988) ................................................................................................. 19, 20

*Bernard v. United States*,
　25 F.3d 98 (2d Cir. 1994) .............................................................................................. 15

*Black v. City of Newark*,
　535 F. Supp. 2d 163 (D.D.C. 2008) ................................................................................. 6

*Blue Cross v. SmithKline Beecham Clinical Labs.*,
  108 F. Supp. 2d 116 (D. Conn. 2000) ...................................................................................... 31

*Brownback v. King*,
  592 U.S. 209 (2021) ................................................................................................................... 2

*Buchanan v. Manley*,
  145 F.3d 386 (D.C. Cir. 1998) ................................................................................................ 16

*Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) .......................................................................................... 13, 16

*Connors v. Hallmark & Son Coal Co.*,
  935 F.2d 336 (D.C. Cir. 1991) ................................................................................................ 30

*Cope v. Scott*,
  45 F.3d 445 (D.C. Cir. 1995) .................................................................................................. 18

*Dichter-Mad Family Partners, LLP v. United States*,
  709 F.3d 749 (9th Cir. 2013) .................................................................................................. 22

*Doe v. Syracuse Univ.*,
  335 F.R.D. 356 (N.D.N.Y. 2020) ...................................................................................... 36, 37

*\*Does v. United States* ("*Does I*"),
  Civ. A. No. 24-1071 (S.D.N.Y. Feb. 14, 2024) ......................................... 4, 11, 12, 17, 33

*Dubose v. Kansas City S. R. Co.*,
  729 F.2d 1026 (5th Cir. 1984) ................................................................................................ 29

*Dyniewicz v. United States*,
  742 F.2d 484 (9th Cir. 1984) .................................................................................................. 32

*E.Y. ex rel. Wallace v. United States*,
  758 F.3d 861 (7th Cir. 2014) .................................................................................................. 31

*Fisher Bros. Sales, Inc. v. United States*,
  46 F.3d 279 (3d Cir. 1995) ..................................................................................................... 22

*Flammia v. United States*,
  739 F.2d 202 (5th Cir. 1984) .................................................................................................. 29

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
  103 F. Supp. 3d 113 (D.D.C. 2015) .......................................................................................... 7

*Franz v. United States*,
    591 F. Supp. 374 (D.D.C. 1984) .................................................................................. 13

*Gable v. United States*,
    Civ. A. No. 12-1634 (GMH), 2017 WL 11592046 (D.D.C. Dec. 29, 2017) ...................... 35, 36

*Gen. Dynamics Corp. v. United States*,
    139 F. 3d 1280 (9th Cir. 1998) .................................................................................. 22

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962) ................................................................................................ 15

*Gonzalez v. United States*,
    814 F.3d 1022 (9th Cir. 2016) ................................................................................... 27

*Gonzalez v. United States*,
    851 F.3d 538 (5th Cir. 2017) .................................................................................... 21

*Gould v. Dep't of Health & Hum. Servs.*,
    905 F.2d 738 (4th Cir. 1990) .................................................................................... 31

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) ................................................................................ 6

*Gray v. Bell*,
    712 F.2d 490 (D.C. Cir. 1983) .............................................................................. 24, 28

*Guccione v. United States*,
    670 F. Supp. 527 (S.D.N.Y. 1987) ............................................................................. 31

*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987) ................................................................................... 6

*Hamilton v. Paulson*,
    Civ. A. No. 07-1365 (RBW), 2008 WL 4531781 (D.D.C. Oct. 10, 2008) .............................. 7

*Hayes v. Buttigieg*,
    Civ. A. No. 20-2523 (RBW), 2021 WL 6619326 (D.D.C. May 3, 2021) .............................. 36

*Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) .................................................................................. 37

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ................................................................................... 6

*In re Vioxx Prod. Liab. Litig.*,

 522 F. Supp. 2d 799 (E.D. La. 2007)................................................................................ 31

*Jerome Stevens Pharms. v. FDA*,

 402 F.3d 1249 (D.C. Cir. 2005)..................................................................................... 6

*Jones v. FBI*,

 Civ. A. No. 19-6752, 2019 WL 5550520 (W.D.N.Y. 2019) .................................... 15

*Kaempe v. Myers*,

 367 F.3d 958 (D.C. Cir. 2004)....................................................................................... 8

*Kauffman v. Anglo-Am. Sch. of Sofia*,

 28 F.3d 1223 (D.C. Cir. 1994) ..................................................................................... 13

*Kelly v. United States*,

 924 F.2d 355 (1st Cir. 1991)................................................................................. 27, 28

*KiSKA Constr. Corp., U.S.A. v. Wash. Metro. Area Transit Auth.*,

 321 F.3d 1151 (D.C. Cir. 2003) ................................................................................... 20

*Kowal v. MCI Commc'ns Corp.*,

 16 F.3d 1271 (D.C. Cir. 1994)....................................................................................... 2

*Limone v. United States*,

 579 F.3d 79 (1st Cir. 2009)......................................................................................... 21

*Liranzo v. United States*,

 690 F.3d 78 (2d Cir. 2012)........................................................................................... 15

*Littell v. United States*,

 191 F. Supp. 2d 1338 (M.D. Fl. 2002).................................................................... 27, 28

*Loumiet v. United States*,

 828 F.3d 935 (D.C. Cir. 2016) ..................................................................................... 19

*Lujan v. Defs. of Wildlife*,

 504 U.S. 555 (1992)........................................................................................................ 5

*Macharia v. United States*,

 334 F.3d 61 (D.C. Cir. 2003) ....................................................................................... 25

*Martinez v. United States*,

 587 F. Supp. 2d 245 (D.D.C. 2008) ....................................................................... 23, 27

*McCloskey v. Mueller*,
  385 F. Supp. 2d 74 (D. Mass. 2005) ....................................................................... 28

*McIntyre v. United States*,
  367 F.3d 38 (1st Cir. 2004) .................................................................................... 30

*Merando v. United States*,
  517 F.3d 160 (3d Cir. 2008) ................................................................................... 21

*Mesa v. United States*,
  123 F.3d 1435 (11th Cir. 1997) ........................................................................ 24, 27

*Mesa v. United States*,
  837 F. Supp. 1210 (S.D. Fla. 1993) ....................................................................... 23

*Mid-S. Holding Co., v. United States*,
  225 F.3d 1201 (11th Cir. 2000) .............................................................................. 25

*Modaressi v. Vedadi*,
  441 F. Supp. 2d 51 (D.D.C. 2006) ............................................................................ 6

*Myers v. Holiday Inns*, Inc.,
  915 F. Supp. 2d 136 (D.D.C. 2013) .......................................................................... 7

*Naartex Consulting Corp. v. Watt*,
  722 F.2d 779 (D.C. Cir. 1983) .......................................................................... 14, 16

*Ndondji v. Interpark Holdings, Inc.*,
  768 F. Supp. 2d 263 (D.D.C. 2011) .......................................................................... 7

*O'Ferrell v. United States*,
  253 F.3d 1257 (11th Cir. 2001) .............................................................................. 24

*Ostera v. United States*,
  769 F.2d 716 (11th Cir. 1985) ................................................................................ 25

*Patel v. Phillips*,
  933 F. Supp. 2d 153 (D.D.C. 2013) ........................................................................ 13

*Pendleton v. Mukasey*,
  552 F. Supp. 2d 14 (D.D.C. 2008) ............................................................................ 7

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ............................................................................ 10

*Phillips v. Seiter*,

    173 F.3d 609 (7th Cir. 1999) ........................................................................................ 16

*Pooler v. United States*,

    787 F.2d 868 (3d Cir. 1986)......................................................................................... 23

*Powell v. United States*,

    No. 22-5275, 2023 WL 4992816 (D.C. Cir. Aug. 3, 2023).................................... 8, 9

*Rakes v. United States*,

    352 F. Supp. 2d 47 (D. Mass. 2005) ........................................................................... 31

*Reuber v. United States*,

    750 F.2d 1039 (D.C. Cir. 1985) .................................................................................. 13

*Richards v. FBI*,

    Civ. A. No. 12-1027, 2012 WL 5386563 (W.D. Mich. Nov. 1, 2012)..................... 25

*Rosas v. Brock*,

    826 F.2d 1004 (11th Cir. 1987) .................................................................................. 22

*Rosebush v. United States*,

    119 F.3d 438 (6th Cir. 1997) ...................................................................................... 21

*Sabow v. United States*,

    93 F.3d 1445 (9th Cir. 1996) ...................................................................................... 28

*Sai v. Dep't of Homeland Sec.*,

    149 F. Supp. 3d 99 (D.D.C. 2015).............................................................................. 37

*Sanchez v. United States*,

    600 F. Supp. 2d 19 (D.D.C. 2009).............................................................................. 13

*Sanchez-Mercedes v. Bureau of Prisons*,

    453 F. Supp. 3d 404 (D.D.C. 2020) ........................................................................... 16

*Savignac v. Jones Day*,

    341 F.R.D. 120 (D.D.C. 2022).................................................................................... 36

*Schmidt v. United States*,

    198 F.2d 32 (7th Cir. 1952) ........................................................................................ 23

*SEC v. Page Airways, Inc.*,

    464 F. Supp. 461 (D.D.C. 1978) ................................................................................ 14

*Sexton v. United States*,

   832 F.2d 629 ............................................................................................................... 29, 35

*Shawnee Tribe v. United States*,

   298 F. Supp. 2d 21 (D.D.C. 2002) ..................................................................................... 13

*Shuler v. United States,*

   448 F. Supp. 2d 13 (D.D.C. 2006) ..................................................................................... 20

*Shuler v. United States*,

   531 F.3d 930 (D.C. Cir. 2008) ..................................................................................... 23, 29

*Sinclair v. Kleindienst*,

   711 F.2d 291 (D.C. Cir. 1983) ........................................................................................... 15

*Smith v. United States*,

   375 F.2d 243 (5th Cir. 1967) ....................................................................................... 27, 28

*Smith v. United States*,

   518 F. Supp. 2d 139 (D.D.C. 2007) ................................................................................... 30

*Spotts v. United States*,

   562 F. Supp. 2d 46 (D.D.C.2008) ................................................................................ 14, 17

*Starnes v. McGuire*,

   512 F.2d 918 (D.C. Cir. 1974) ........................................................................................... 15

*Suter v. United States*,

   441 F.3d 306 (4th Cir. 2006) ....................................................................................... 24, 27

*Terrell v. Lungren*,

   Civ. A. No. 98-00219, 1998 WL 574387 (N.D. Cal. Aug. 31, 1998)................................... 25

*Tri-State Hosp. Supply Corp. v. United States*,

   341 F.3d 571 (D.C. Cir. 2003) ........................................................................................... 21

*U.S. Ecology, Inc. v. Dep't of Interior*,

   231 F.3d 20 (D.C. Cir. 2000) ............................................................................................... 5

*United States ex rel. Groat v. Boston Heart Diagnostics Corp.*,

   255 F. Supp. 3d 13 (D.D.C. 2017) ..................................................................................... 10

*United States v. Faneca*,

   332 F.2d 872 (5th Cir. 1964) ............................................................................................. 23

*United States v. Gaubert,

499 U.S. 315 (1991)............................................................................. 19, 20, 21, 27

United States v. Kubrick,

444 U.S. 111 (1979)...................................................................................... 29, 30

United States v. Kwai Fun Wong,

575 U.S. 402 (2015)....................................................................................... 16, 29

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),

467 U.S. 797 (1984)............................................................................................. 20

Venetian Casino Resort, LLC v. EEOC,

409 F.3d 359 (D.C. Cir. 2005) ............................................................................... 6

Williams v. United States,

932 F. Supp. 357 (D.D.C. 1996) ............................................................................ 8

Wilson v. Obama,

770 F. Supp. 2d 188 (D.D.C. 2011) ....................................................................... 8

Woodruff v. United States,

Civ. A. No. 16-1884 (RDM), 2020 WL 3297233 (D.D.C. June 18, 2020) ............................ 21

Zakiya v. United States,

267 F. Supp. 2d 47 (D.D.C. 2003) ....................................................................... 13

*Zelaya v. United States,

781 F.3d 1315 (11th Cir. 2015) ................................................................ 22, 23, 26

**Statutes**

28 U.S.C. § 1346(b) ................................................................................................... 1

28 U.S.C. § 1346(b)(1) ............................................................................................ 19

28 U.S.C. § 1402(b) ................................................................................................... 8

28 U.S.C. § 1406(a) ................................................................................................. 14

28 U.S.C. § 2401(b) ........................................................................................... 16, 29

28 U.S.C. § 2680(a) ........................................................................................... 18, 19

U.S.C. § 1404(a) ...................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................................... 1, 21

Fed. R. Civ. P. 12(b)(3)................................................................................................. 1, 6, 8, 14, 18

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 1, 2, 6, 7

Defendant the United States of America respectfully moves to dismiss this suit under Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(3), and 12(b)(6).

## INTRODUCTION

Plaintiffs Jane Doe 1 through 17, Laura Newman, and Sandra Ward ("Plaintiffs"), bring this action against the United States alleging one count of negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Plaintiffs contend that they are victims of Jeffrey Epstein, alleging that they suffered years of sexual abuse by Epstein while they were minors, all over the United States and its territories. The gravamen of their complaint is that the Federal Bureau of Investigation ("FBI") failed to properly investigate and follow up on tips regarding Epstein's criminal conduct, breaching a duty of care purportedly owed to Plaintiffs. Plaintiffs aver that had the FBI intervened, Epstein would not have committed his crimes against Plaintiffs. *See* Am. Compl. (ECF No. 9).

In short, the Amended Complaint[1] fails for several reasons. First, this action does not belong in the District of Columbia because none of the Plaintiffs reside here and none of the events or omissions are alleged to have occurred here as required by the FTCA's venue provision, warranting dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(3). In the alternative, the Court should transfer this action to either the Southern District of New York or the Southern District of Florida. Second, Plaintiffs claims are not legally cognizable under the FTCA because they are barred by the discretionary function exception.[2] FBI personnel have broad, policy-based

---

[1] Plaintiffs filed an amended complaint on October 18, 2024. *See* ECF No. 9. They have subsequently moved for leave to file a Second Amended Complaint, and that motion remains pending. ECF No. 25. As discussed herein, because the legal claims are the same, regardless of whether the Court allows the amendment to move forward, the claims are subject to dismissal.

[2] The United States also believes that there exist several other avenues for dismissal, namely, that there is no private analogue for the claims Plaintiffs try to press against the United States. To advance valid FTCA claims, claimants "must plausibly allege that the United States, if a private

discretion in determining whether and how to respond to the type of information at issue in this case. Given the discretion afforded to the FBI in this context, its decisions here are exempt from the FTCA's waiver of sovereign immunity and cannot legally form the basis for civil liability. Third, Plaintiffs claims are barred by the FTCA's statute of limitations because they accrued more than two years prior to the submission of their administrative claim. In sum, the United States respectfully requests that the Court dismiss this action.

## BACKGROUND

For purposes of this motion, the United States accepts as true (but does not admit) the well-pled allegations of the Amended Complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1273 (D.C. Cir. 1994).

### I.     Facts Giving Rise to this Action

Plaintiffs, Jane Doe 1, Jane Doe 2, Jane Doe 3, Laura Newman, Jane Doe 4, Jane Doe 5, Jane Doe 6, Sandra Ward, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, Jane Doe 13, Jane Doe 14, Jane Doe 15, Jane Doe 16 and Jane Doe 17 bring this action alleging that they were victims of Epstein's sex trafficking scheme when they were minors, enduring years of sexual abuse. *See generally* Am. Compl. Plaintiffs aver that their abuse at the hands of Epstein stems back to 2001, and in some cases, continued until 2017. *Id.* ¶¶ 32-50. Of the

---

person, would be liable to the claimant under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Brownback v. King*, 592 U.S. 209 (2021). Thus, to recover, claimants must establish that the FBI owed a duty of care to claimants, victims of a third-party's criminal acts, under applicable state law. In general, "[t]here is no duty to control the conduct of a third person as to prevent him from causing physical harm to another," but that rule is subject to numerous exceptions. Restatement (Second) of Torts § 315. Because resolution of this question turns on which states law(s) apply to the claims at issue, including each state's choice of law rules, and recognizing that here may be various state laws that apply to the claims at issue, the United States reserves all right to rely on this argument if any claims survive a threshold motion. This reservation includes discovery on this defense.

nineteen Plaintiffs, sixteen are domiciled in and currently reside in New York. *See id*. ¶¶ 32-38, 40-44, 46, 48-50. The other three are domiciled in and reside in California and Florida. *Id*. ¶ 39 (alleging that Sandra Ward resides in California), ¶ 45 (alleging that Jane Doe 12 resides in Florida); ¶ 47 (alleging that Jane Doe 14 resides in California).[3]

As is relevant here, Plaintiffs aver that the FBI "ignored the victims and allowed Epstein and co-conspirators to get away with child rape and sex trafficking for years." Am. Compl. ¶ 1. Plaintiffs further contend that the "FBI had received credible tips as early as 1996 that Epstein sex trafficked young women and girls, yet failed to interview victims, respond to tips or arrest the pedophile billionaire." *Id*. ¶ 4. Plaintiffs further allege that between 1995 and 2005, the FBI continued to receive "direct reports, complaints, and tips" concerning the "illegal sex trafficking of women and underage minors, sex abuse, and human rights violations" committed by Epstein and his associates. *Id*. ¶ 64.

In March 2005, a woman contacted the Palm Beach County, Florida Police Department to report that a 14-year-old girl was "recruited" to Epstein's mansion for a sexual massage in exchange for money. Am. Compl. ¶ 70. From 2006 through 2008, the Palm Beach Police Department investigated Epstein, alerting the FBI to the complaint. *Id*. ¶ 71, 79. In July 2006, the FBI opened an investigation into Epstein. *Id*. ¶ 71. A copy of a memo excerpted into the Amended Complaint shows that on July 24, 2006, the Miami Field Office opened an investigation into Epstein for "child prostitution." Am. Compl. at 15. The memo notes that the Palm Beach County

---

[3]     The Amended Complaint alleges that Plaintiffs' counsel currently represents thirty-three women who have pending administrative claims against the FBI under the FTCA. Am. Compl. ¶¶ 2, 26. Of the thirty-three, the seventeen in this action (plus the additional 9 in Plaintiffs' Proposed Second Amended Complaint, ECF No. 25-1) have gone through the administrative exhaustion process by filing a Standard Form ("SF")-95 as is statutorily required under the FTCA and receiving a denial letter from the FBI. The remainder are going through that process, and thus not all are named parties in this action.

Police Department had been investigating. *Id*. Subsequently, the FBI closed its investigation on September 18, 2008, and did not re-open it until July 2019. Am. Compl. ¶ 82. Stemming from the "continued failures of the FBI, the Department of Justice and its affiliates" Plaintiffs bring this lawsuit in the District of Columbia because that is where the FBI and Department are "headquartered." *Id*. ¶ 6.

Epstein was arrested in July 2019 for sex trafficking of children. One month later, while in jail on the charges, Epstein died from an apparent suicide before the case could be prosecuted.

## II.   Administrative Exhaustion

The Jane Doe and named Plaintiffs began submitting their SF-95s with the FBI in May 2023, purportedly after certain information came to light in a lawsuit that was then-pending in the Southern District of New York brought by the United States Virgin Islands against J.P. Morgan Chase for "knowingly facilitate[ing], sustain[ing], and conceal[ing] the human trafficking network operated by Jeffrey Epstein from his home and base in the Virgin Islands, and financially benefit[ing] from this participation, directly or indirectly, by failing to comply with federal banking regulations." Compl. ¶ 6, *U.S. Virgin Islands v. J.P. Morgan Chase NA*, Civ. A. No. 22-10904 (S.D.N.Y. 2022), ECF No. 1; *see also* Am. Compl. ¶ 15. The action brought by the U.S. Virgin Islands is related to another lawsuit, Compl. ¶ 1, *Doe v. J.P. Morgan Chase & Co.*, Civ. A. No. 22-10019 (S.D.N.Y. Nov. 24, 2022), ECF No. 1, a class action complaint against J.P. Morgan alleging violations of the federal anti-sex trafficking statute, the Trafficking Victim Protection Act, and for intentional and negligent acts and omissions under the New York Adult Survivors Act. *Id*.

This action originated in the Southern District of New York. *See Does v. United States* ("*Does I*"), Civ. A. No. 24-1071 (S.D.N.Y. Feb. 14, 2024). There, Plaintiffs moved for leave to proceed pseudonymously (ECF No. 4). The United States took no position on the request with two caveats; first, it reserved the right to reopen down the road the issue of whether Plaintiffs could

continue proceeding anonymously, and second, asked that the court order Plaintiffs to provide privately to Government counsel the judicial districts where they reside. Mar. 30, 2024, Ltr., ECF No. 10. Subsequently, the district court declined to allow Plaintiffs to proceed under the "Jane Does" pseudonym. *See* April 30, 2024, Mem. Op., ECF No. 12. In denying Plaintiffs request without prejudice, the district court ordered Plaintiffs to file an amended complaint suing in the names of the individual Plaintiffs by a date certain. Plaintiffs then moved to stay the matter to extend the time for plaintiffs to file an amended complaint. ECF No. 16. The court granted the request. ECF No. 17. On August 8, 2024, the court denied Plaintiffs renewed motion to proceed anonymously and ordered Plaintiffs to file an amended complaint with their identifying information on or before August 30, 2024. Rather than continue the litigation in New York, on August 23, 2024, Plaintiffs voluntarily dismissed that action.

On September 25, 2024, Plaintiffs filed the instant action. ECF No. 1. That same day, Plaintiffs moved to proceed pseudonymously, which was granted by the Chief Judge on October 9, 2024, subject to "any further consideration" by the District Judge assigned to the matter. Oct. 9, 2024, Mem. Op., ECF No. 5. On October 18, 2024, Plaintiffs filed an Amended Complaint. Am. Compl., ECF No. 9. Subsequently, on January 10, 2025, the Court issued a Minute Order denying without prejudice Plaintiffs' motion to proceed pseudonymously. *See* Jan. 10, 2025, Min. Order.

On January 28, 2025, Plaintiffs moved for leave to file a Second Amended Complaint, to add nine additional "Jane Doe" plaintiffs to this action. Pls.' Mot., ECF No. 25.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Id*. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

Additionally, unlike when considering a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 366 (D.C. Cir. 2005) ("[G]iven the present posture of this case—a dismissal under Rule 12(b)(1) on ripeness grounds—the court may consider materials outside the pleadings."). Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

The issue of constitutional standing is a jurisdictional one, because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citation omitted). "The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 91 (D.D.C. 2000) (citation omitted).

## II.     Rule 12(b)(3)

"Under [Rule] 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the case in a venue that the law deems appropriate.'" *Black v. City of Newark*, 535 F. Supp. 2d 163, 166 (D.D.C. 2008) (citing *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C.

2006)). The plaintiff bears the burden of proving that venue is proper. *See Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 144 (D.D.C. 2013). "[Rule] 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum." *Hamilton v. Paulson*, Civ. A. No. 07-1365 (RBW), 2008 WL 4531781, at *2 (D.D.C. Oct. 10, 2008) (quoting *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008)).

### III.    Rule 12(b)(6)

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or a "formulaic" recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth."  *Id.* at 679.

Importantly, citation of materials outside of the complaint does not convert a Rule 12(b)(6) motion to dismiss into one for summary judgment if the cited materials were attached to the complaint, were incorporated by reference in the complaint, or concern matters of which the Court may take judicial notice. *See Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 117 (D.D.C. 2015) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)); *Ndondji v. Interpark Holdings, Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C.

2011); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (permitting consideration of documents "referred to in the complaint and [] integral to [the plaintiff's] claim").

## ARGUMENT

**I.      The Court Should Dismiss This Action for Lack of Proper Venue, or in the Alternative, Transfer this Case.**

Plaintiffs summarily assert that venue is proper in this judicial district because the "Federal Bureau of Investigation and the Department of Justice is headquartered in Washington, D.C., where the negligence occurred." Am. Compl. ¶ 30. Simply put, Plaintiffs conclusory statements are insufficient to confer venue here under the FTCA. None of the Plaintiffs reside in this judicial district. *See* Am. Compl. ¶¶ 32-50. The complaint is devoid of any plausible allegation that the "acts or omissions" giving rise to Plaintiffs' sole negligence claim occurred in this judicial district. Instead, Plaintiffs purport to manufacture venue in this district because the FBI, and its parent agency, the Department of Justice are headquartered here. Such an approach has been soundly rejected by this Court in analogous cases. Certainly, that is not the measure of compliance with the FTCA's specific venue provision. The Court should therefore dismiss this action. Alternatively, should the Court decline to dismiss under Rule 12(b)(3), the Court should transfer this action to either the Southern District of New York or Southern District of Florida where the acts or omissions are alleged to have occurred.

### A.      Venue Is Improper

Proper venue for an FTCA claim is "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b); *see also Wilson v. Obama*, 770 F. Supp. 2d 188, 192 (D.D.C. 2011); *Williams v. United States*, 932 F. Supp. 357, 363 (D.D.C. 1996); *Powell v. United States*, No. 22-5275, 2023 WL 4992816, at *1 (D.C. Cir. Aug. 3, 2023) (quoting 28 U.S.C. § 1402(b)).

Plaintiffs cannot be found in this District. *See* Am. Compl. ¶¶ 32-50 (noting that Plaintiffs are "domiciled" in California, Florida, New York). Of the nineteen Plaintiffs, sixteen are domiciled in and reside in New York. *Id*. Two reside in California, and one resides in Florida. *Id*. ¶¶ 39, 45, 47. Admittedly, none of the Plaintiffs reside in the District of Columbia. *Id*. Nothing in Plaintiffs proposed Second Amended Complaint changes this conclusion. *See* Pls.' Mot. Leave Am. Compl., Prop. 2d Am. Compl. (redline) ¶¶ 51-59 (noting that the nine additional "Jane Doe" plaintiffs are domiciled in the states of New York and California but alleging no connection to the District of Columbia), ECF No. 25-1 at 12-13. [4] Thus, that leaves only the second prong of the FTCA's venue statute as a possible avenue for venue in the District of Columbia: whether the "acts or omissions" giving rise to Plaintiffs' claims occurred in this District. As explained below, nothing in Plaintiffs' amended complaint suggests that the acts or omissions complained of occurred here, rendering venue in the District of Columbia improper.

Plaintiffs contend that in March 2005, a woman "contacted the Palm Beach County Police Department," to report that a "14-year-old girl" had been the victim of prostitution by Epstein. Am. Compl. ¶ 70. Subsequently, the Palm Beach County Police Department purportedly contacted the FBI's Miami Field Office to report the allegation. *See id*. ¶¶ 71-72. As excerpts of FBI memoranda contained within the operative complaint demonstrate, the report to the FBI came from "Miami" and was made to "Miami." Am. Compl. at 15. The subsequent allegations in the Amended Complaint refer repeatedly to the "FBI," but do not specify which branch or office of

---

[4]     For this reason, the Court can also dispense with Plaintiffs' motion for leave to file a Second Amended Complaint. *See* Pls.' Mot. Leave (ECF No. 25). As demonstrated herein, regardless of whether the Court grants leave to file, Plaintiffs' claims are subject to dismissal on numerous grounds, including improper venue. The Court can therefore allow the amendment to be filed and dismiss the Proposed Second Amended Complaint, given that Plaintiffs do not advance any new legal theories or claims, but rather seek to add additional Plaintiffs that do not reside here, to this action.

the FBI was supposedly involved. *See e.g.,* Am. Compl. ¶ 77 (noting that the "FBI" "received notices and tips of suspicious banking activity linking the accounts to funding sex trafficking. The FBI was notified that J.P. Morgan Chase handled more than $1.1 million in payments from Epstein to girls or women, many with Eastern European surnames."); *see also id.* ¶ 78 ("When the FBI seized the messages, the FBI failed to interview all the appropriate potential victims and did not contact all the victims even though the FBI had their names and telephone numbers."). Plaintiffs' other factual allegations suggest that it was the FBI's field office in Miami, and not Washington, D.C. (or Headquarters) that was involved in the underlying investigation and complaints received from the Palm Beach Police Department. *See* Am. Compl. at 15. This conclusion is further supported by the FBI's website, of which the Court may take judicial notice at this stage of the proceeding. *See United States ex rel. Groat v. Boston Heart Diagnostics Corp.*, 255 F. Supp. 3d 13, 24 n.7 (D.D.C. 2017) ("[C]ourts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." (quoting *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014)).

The FBI's Miami Field Office website's "About Us" page indicates that one of its "satellite offices" covers West Palm Beach (Palm Beach County). *See* https://www.fbi.gov/contact-us/field-offices/miami/about (last visited Feb. 3, 2025). "Palm Beach County" is comprised of approximately thirty-nine municipalities, including Palm Beach. *See* https://discover.pbc.gov/pages/municipalities.aspx (last visited Feb. 3, 2025). All of this to say, the more plausible inference to be drawn from Plaintiffs' complaint is that the FBI's Miami Field Office (or its Palm Beach satellite office) would have been receiving tips and investigation reports of criminal conduct within its jurisdiction. Thus, it certainly appears unlikely that the FBI's Washington Field Office would have any control or involvement into the purported investigation

of criminal activity almost a thousand miles away. *See e.g.,* https://www.fbi.gov/contact-us/field-offices/washingtondc (last visited Feb. 3, 2025) (noting its "territory: District of Columbia and several counties in Northern Virginia"). The Amended Complaint also lacks any plausible allegation that employees from FBI headquarters would have been involved in the investigation.

For example, Plaintiffs contend that in "August 2007, the United States Attorney's Office for the Southern District of Florida issued a subpoena to Bear Stearns regarding transactions out of Epstein's accounts in the amounts of either $1,000 or $100,000." *Id.* ¶ 76. The Amended Complaint also details extensively the purported investigation by the Palm Beach County Police Department, but there is no allegation, not even an overt one, that the FBI engaged its Washington Field Office or any other office within the District of Columbia in its investigation of Epstein. *See generally* Am. Compl. ¶¶ 79-81, 91-94, 97. Indeed, even viewing the facts of the Amended Complaint in the light most favorable to Plaintiffs, it fails to plausibly allege that officials in the District of Columbia were involved in any of the decision making with respect to the investigation that was ongoing in Florida. *See e.g.*, Am. Compl. ¶¶ 91-94, 103-104. There is no independent allegation against the Department of Justice, either. *Id.*

Plaintiffs seemingly recognize the purported gaps in their pleading. As the United States has previously recounted (*see* Def.'s Resp., ECF No. 23), this action originated in the Southern District of New York. *See Does I.* In *Does I*, Plaintiffs arguably set forth more than a conclusory recitation of venue. There, Plaintiffs alleged that the Southern District of New York was the appropriate venue based on several acts and omission which were alleged to have occurred in New York, as well as the residence of several Plaintiffs, namely: "(a) Epstein's sex-trafficking operation, sex with underage minors and sexual abuse was based, managed and operated out this District"; (b) "Financial and non-financial transactions of Epstein's sex trafficking operation

originated in this District"; (c) "The sexual abuse, committed by Epstein took place in Jeffrey Epstein's New York mansion, located within this District at 9 East 71st Street, New York City (among other locations). Epstein used his New York mansion to harbor his victims and as a base from which to transport them to other locations outside of New York which was reported to the FBI"; (d) "The transportation for the Epstein sex-trafficking ring was owned, stored, and maintained in New York State. In particular, Epstein's private jets and vehicles which were used to transport victims and Epstein's clients, or purchased, owned, stored, and were maintained in New York"; (e) "At the time of the events at issue, several of the Jane Does resided in this District"; (f) "Reports of sex crimes were made to the FBI in this District." *See Does I*, Compl. ¶ 31(a)-(f), ECF No. 1.[5] Comparing Plaintiffs' complaint in *Does I* with the Amended Complaint (or even Proposed Second Amended Complaint) in this action further underscores the deficiencies in Plaintiffs' pleadings; there is nothing more than a conclusory allegation that venue is proper here because the FBI and Department of Justice are headquartered here. Am. Compl. ¶ 6. That alone is not enough. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 664 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Indeed, unlike the complaint filed in New York, Plaintiffs do not allege that "reports of sex crimes" were made to the FBI "in this district." *Does I*, Compl. ¶ 31(f).

---

[5]     Indeed, Epstein was born in New York, subsequently incarcerated in New York, and died in New York while housed at the Metropolitan Correctional Center, New York, NY, while awaiting trial on sex trafficking charges. *See* https://abcnews.go.com/US/jeffrey-epsteins-suicide-new-details-revealed/story?id=100405667 (last visited Feb. 4, 2025).

"Under the prevailing interpretation of section 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to plaintiff's cause of action took place here." *Franz v. United States*, 591 F. Supp. 374, 378 (D.D.C. 1984). The location of the FBI's (or the Department's) headquarters office alone "cannot constitute a basis for concluding that venue is appropriate in this [d]istrict," *Bartel v. FAA*, 617 F. Supp. 190, 199 (D.D.C. 1985), and the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the question of venue. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002); *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013) (same); *see also Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) (cautioning that "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."). Further, "when conduct occurs in one district but has intended effects in another, 'the act 'occurs' in the jurisdiction where its effects are directed.'" *Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009); *Reuber v. United States*, 750 F.2d 1039, 1047 (D.C. Cir. 1985), *rev'd on other grounds, Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994); *Attkisson v. Holder*, 241 F. Supp. 3d 207, 212-213 (D.D.C. 2017).

Even were challenged decisions alleged to have occurred here (they are not), this Court has not hesitated to find venue improper in the District of Columbia in analogous cases where the intended effect was felt elsewhere. For example, even if officials at the FBI or the Department of Justice headquarters office may have participated in or made the decision to direct (or not) the contours of the FBI's investigation in Miami or New York (and there is no plausible allegation that this occurred), the effects of that decision plainly did not occur in this district. *See, e.g.*, *Zakiya v. United States*, 267 F. Supp. 2d 47, 58 (D.D.C. 2003) (finding that, where prisoner plaintiff

- 13 -

mounted "a specific attack on the implementation of [a Bureau of Prisons] policy to his particular situation, and as the actual implementation by the [Bureau of Prisons] officials occurred at the facilities where he was incarcerated and not in this district, venue is not appropriate" in the District of Columbia); *Spotts v. United States*, 562 F. Supp. 2d 46, 53 (D.D.C.2008) (rejecting argument for venue in this district that "while the alleged tortious conduct had its operative effect on inmates in USP Beaumont, the negligent acts or omissions that caused the inmates' injuries—i.e., the decisions to keep them at USP Beaumont during Hurricane Rita and regarding their care after the hurricane—occurred at the Central Office [in Washington, D.C.]"). Here, the effects of that hypothetical decision would have been felt in Palm Beach, where Epstein resided, as well as in the states and island territories where the victims allege that they suffered abuse, or in New York, where Epstein is alleged to have abused most Plaintiffs and where Epstein kept an apartment. *See Does I*, Compl. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, nothing aside from unsupported legal conclusions support venue in this judicial district. This renders the District of Columbia the improper venue for this action. The Court should accordingly dismiss this action under Rule 12(b)(3).

  **B.  The Court Should Dismiss, Rather Than Transfer This Action.**

  Ordinarily, upon a showing that venue in this district is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Under 28 U.S.C. § 1404(a), the Court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." *Id*.; *see SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978). "The decision whether a transfer or a dismissal is in the interest of justice. . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). The United States respectfully asserts that for the reasons set

- 14 -

forth below, the Court should dismiss this action outright rather than transfer this action to either proposed transferee districts. In the event the Court disagrees, it should transfer this action to the Southern District of New York or Southern District of Florida.[6]

The D.C. Circuit has recognized that "it is perhaps impossible to develop any fixed general rules on when cases should be transferred." *Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974) (addressing 28 U.S.C. § 1404(a), which permits transfer when "in the interest of justice"). Indeed, most cases "will involve factors both for and against transfer," and the Court's task is to "determine the correct action in light of all the factors." *Id*. at 933. Here, the relevant factors favor dismissal, rather than transfer.

To begin, the United States is mindful of the Supreme Court's discussion of § 1406(a) in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962). That decision "inferred a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles 'impede an expeditious and orderly adjudication. . . on the merits.'" *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983) (alteration in original) (quoting *Goldlawr*, 369 U.S. at 466-67). More, *Goldlawr* observed that Congress enacted § 1406(a) to "avoid[ ] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess" about proper venue. 369 U.S. at 466.

---

[6]    Notably, New York does not recognize a private analogue arising out of claims of a negligent investigation. *See Jones v. FBI*, Civ. A. No. 19-6752, 2019 WL 5550520 (W.D.N.Y. 2019) (dismissing  negligence claims against the FBI and CIA because there is no private analogue for negligent investigation under New York law); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."); *Liranzo v. United States*, 690 F.3d 78, 83 (2d Cir. 2012) (FTCA's a waiver of immunity is jurisdictional in nature and "extends only to claims for which a private analogue exists").

In assessing whether to transfer, the Court "can take a peek at the merits, since whether or not the suit has any possible merit bears significantly on whether the court should transfer or dismiss it." *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999); *see also Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 418-419 (D.D.C. 2020) (dismissing an action outright rather than transfer because it involved claims that "almost certainly will not succeed."). If a "limited review reveals that the case is a sure loser," the Court "should dismiss the case rather than waste the time of another court." *Phillips*, 173 F.3d at 611. Consistent with the Seventh Circuit's approach, the D.C. Circuit has affirmed dismissal under § 1406(a) when there are "substantive problems" with the plaintiff's claims. *Naartex*, 722 F.2d at 789; *Buchanan v. Manley*, 145 F.3d 386, 387, 389 n.6 (D.C. Cir. 1998) (affirming decision to dismiss rather than transfer a pro se case under § 1406(a)); *Cameron*, 983 F.2d at 257 n.5.

For the reasons explained herein, there are several "substantive problems" with Plaintiffs' claims. Consider first Plaintiffs' allegation that the FBI negligently failed to investigate or follow through with tips of criminal conduct by Epstein. *See generally* Am. Compl. As the FBI explains, these types of claims are squarely precluded under the FTCA's discretionary function exception, which operates as a complete bar to Plaintiffs' claims. *Infra* § II.

Moreover, Plaintiffs claims are untimely. *See infra* § III. FTCA claims are subject to two specific limitations periods. *See* 28 U.S.C. § 2401(b); *United States v. Kwai Fun Wong*, 575 U.S. 402, 405 (2015). Plaintiffs allege that the FBI failed to investigate Epstein's actions beginning in the 1990s and continuing until 2017. Yet there was significant media coverage relating to Epstein's abuse, purported investigations into his conduct, and his previous indictment in Florida. *See e.g.,* NY Magazine, The Fantasist, Dec. 7, 2007 https://nymag.com/news/features/41826/ (last visited Feb. 3, 2025) ("Jeffrey Epstein is under indictment for sex crimes in Palm Beach, Florida").

- 16 -

Indeed, Plaintiffs detail abuse covering time periods significantly more than two years ago. *See* Am. Compl. Plaintiffs contend that they were not aware of the Government's purported wrongdoing until "a recent case" involving JP Morgan in New York where JP Morgan purportedly contacted "the federal government on occasions between 2006-2008 regarding Epstein's suspicious transactions with the bank." Am. Compl. ¶ 75. As explained further below, the contention that Plaintiffs did not become aware of the Government's involvement until the JP Morgan case defies logic.

    **C.    If the Court Believes Transfer is Appropriate, It Should be to the Southern District of New York or the Southern District of Florida**

Nevertheless, should the Court exercise its discretion to transfer this action, it should be transferred to the Southern District of New York or the Southern District of Florida.

*Does I* demonstrates that the Southern District of New York may be a more appropriate venue for this action, given that most Plaintiffs reside in New York, Epstein is alleged to have committed his crimes in New York, and *Does I* alleged that "reports of sex crimes were made to the FBI" in the Southern District of New York. *Does I*, Compl. ¶ 31(f). *See e.g., Spotts*, 562 F. Supp. 2d at 55 (noting that FTCA venue was "clearly proper" in the Eastern District of Texas because over half of the plaintiffs resided in Beaumont, Texas). For the convenience of the parties, New York, and not the District of Columbia, appears to be a more suitable venue.

Likewise, reading the complaint in the light most favorable to Plaintiffs, it appears that the acts or omissions complained of here occurred in Florida, and specifically in and around Palm Beach. Thus, the Southern District of Florida may be a more appropriate venue. https://www.flsd.uscourts.gov/court-info/court-locations (noting West Palm Beach location). In the allegations in the Amended Complaint, Plaintiffs point the finger at the Palm Beach Police Department, its subsequent investigation, and its purported referrals and coordination with the FBI

- 17 -

and the FBI's Miami Field Office. An internal memorandum from the FBI (redacted in part) supports this theory. *See* Am. Compl. at 15. Based on the facts as alleged in the present complaint, it appears that the relevant "acts or omissions" may have occurred in the Southern District of Florida. Certainly, there may be witnesses and documentary evidence located in Florida, and several of the Plaintiffs allege that their abuse took place in Florida (among other locations).

Regardless of where the Court believes this action is more appropriate, the District of Columbia is not it. The Court should accordingly grant the United States's motion under Rule 12(b)(3).

**II.      This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims of Failure to Investigate Because the Discretionary Function Exception of the FTCA Bars Such <u>Claims</u>**

Plaintiffs allege in conclusory fashion that the FBI "failed to follow its own procedures and protocols to stop and prevent sex trafficking," Am. Compl. ¶ 100, and that the FBI had a "non-discretionary obligation, governed by established protocols, to handle and investigate tips concerning potential and ongoing underage child erotica[.]" *id*. ¶ 101. But how, when, and what the FBI chooses to investigate is a matter of discretion. Plaintiffs' claims run head-first into the FTCA's discretionary function exception, and as discussed further below, caselaw suggests that this is the very scenario that Congress envisioned when excepting conduct that is a matter of choice and discretion. The Court therefore lacks subject matter jurisdiction to hear these claims.

The discretionary function exception is a barrier to subject matter jurisdiction. *See Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995). A district court thus has no authority to address the merits of claims allegedly arising under the FTCA in cases in which the plaintiff is unable to overcome this jurisdictional barrier. The limited waiver of immunity provided by the FTCA is subject to several exceptions, including the "discretionary function exception." 28 U.S.C. § 2680(a). The

statute provides that the jurisdiction given to district courts under 28 U.S.C. § 1346(b)(1) does not

apply in cases where a claim is:

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The rationale behind the discretionary function exception, as the Supreme

Court explained in *United States v. Gaubert*, 499 U.S. 315, 324 (1991), is that "when established

governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows

a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded

in policy when exercising that discretion." In such cases, there is no waiver of sovereign

immunity, and the government is protected from suit.  By contrast, if there is no discretionary

function involved, the United States has waived its sovereign immunity and the federal district

courts have subject matter jurisdiction over the claim.

The Supreme Court has established a two–part test for determining whether the

government conduct challenged by a plaintiff falls under the FTCA discretionary function

exception. *See Gaubert,* 499 U.S. at 322–23 (elaborating on a test established in *Berkovitz v.

United States,* 486 U.S. 531, 536–37 (1988)).  First, a court must look to the nature of the act and

whether it involves an "element of judgment or choice."  *Gaubert,* 499 U.S. at 322, (citing

*Berkovitz,* 486 U.S. at 536); *Loumiet v. United States*, 828 F.3d 935, 941 (D.C. Cir. 2016). The

Court explained that when a "federal statute, regulation, or policy specifically prescribes a course

of action," there is no judgment or choice involved and the discretionary function exception

therefore does not apply because "the employee has no rightful option but to adhere to the

directive." *Gaubert,* 499 U.S. at 322 (quoting *Berkovitz,* 486 U.S. at 536). "[I]f the employee's

- 19 -

conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Id.*

Assuming the conduct at issue involves an element of judgment, the Court then must consider the second part of the test: whether that judgment is the kind of judgment that the discretionary function was designed to shield.  The Supreme Court explained:

> Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," when properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy."

*Gaubert,* 499 U.S. at 323; *see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814 (1984).  In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz,* 486 U.S. at 537. But if the government action is not grounded in public policy concerns, "it is not immunized by the discretionary function exception." *Shuler v. United States,* 448 F. Supp. 2d 13, 18 (D.D.C. 2006).

The D.C. Circuit has described a "discretionary" function shielded by sovereign immunity as "involv[ing] judgment, planning, or policy decisions," as distinguished from "ministerial functions," which are "not discretionary" and "involve[ ] enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required." *KiSKA Constr. Corp., U.S.A. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1159, n.9 (D.C. Cir. 2003) (evaluating tort liability of quasi-governmental entity using "two-part test culled from the FTCA's 'discretionary function' jurisprudence" (quoting *Beatty v. Wash. Metro. Area Trans. Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988))).

"For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in

the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324–25; *see also Lamb v. United States*, Civ. A. No. 21-3000 (RDM), 2022 WL 2966337, at *2 (D.D.C. Mar. 24, 2023) ("To survive a Rule 12(b)(1) motion to dismiss an FTCA claim, the plaintiff must plausibly allege facts sufficient to invoke the statute's waiver of sovereign immunity." (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003))).  Plaintiffs here have not done so.

### A.    The FBI's Law Enforcement and Investigative Activities Are Protected by the Discretionary Function Exception.

Before addressing whether the government's conduct violated a mandatory regulation or policy, the court first "must determine exactly what conduct is at issue." *Autery v. United States*, 992 F.2d 1523 (11th Cir. 1993); *see also Woodruff v. United States*, Civ. A. No. 16-1884 (RDM), 2020 WL 3297233, at *6 (D.D.C. June 18, 2020) (citing *Autery* for the proposition that "it is crucial to determine exactly what conduct is at issue"); *Gonzalez v. United States*, 851 F.3d 538, 545 (5th Cir. 2017); *Merando v. United States*, 517 F.3d 160, 165 (3d Cir. 2008); *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("[T]he discretionary function exception requires that an inquiring court focus on the specific conduct at issue.").

Here, the Amended Complaint alleges that the FBI negligently failed to follow mandatory investigatory procedures. Am. Compl. ¶¶ 21, 93, 101; Prop. 2d Am. Compl. ¶¶ 21, 102, 110. Whether the FBI negligently carried out preliminary mandatory actions, however, is not relevant to whether the Court has jurisdiction because the failure to follow any purportedly mandatory initial directives was not the actual cause of the injury. The Amended Complaint's implication that preliminary investigatory steps, including whether to forward information to the appropriate field office (Am. Compl. ¶ 22), were not followed is one thing. The ultimate decision of what steps to take that may have prevented Epstein from carrying out his crimes is quite another. The Amended

Complaint does not address the discretionary nature of decisions upon which any legal theory of liability depends and asks the Court to consider alleged failures of the FBI to follow purportedly mandatory investigatory procedures in isolation of the true context of their negligence claim. Such an inquiry cannot be reconciled with well-established precedent which holds that the discretionary function exception applies if the ultimate action that allegedly caused the injury was discretionary. *Gen. Dynamics Corp. v. United States*, 139 F. 3d 1280, 1285 (9th Cir. 1998) (discretionary function exception applies when "discretion intervenes between an alleged wrongdoer and the harm suffered by a plaintiff" even if the wrongdoer violated a mandatory requirement); *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995).

It is not clear from the Amended Complaint what ultimate action this lawsuit asserts that the FBI should have taken to prevent Epstein from committing abuse. Even had the Miami Field Office (or a satellite office) failed to take preliminary mandatory action, the Field Office ultimately would have had discretion in the manner it acted to attempt to prevent further abuse. As courts have held, a plaintiff cannot circumvent the discretionary function exception by relying on failures to follow mandatory directives when the harm was caused by or could have been prevented by a subsequent and intervening act of discretion. *See also Rosas v. Brock*, 826 F.2d 1004, 1010 (11th Cir. 1987) ("[I]f a discretionary decision is made without following mandated procedures, it is an abuse of discretion and, as such, protected from judicial review."); *Zelaya v. United States*, 781 F.3d 1315, 1332 (11th Cir. 2015) (citing *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 750-51 (9th Cir. 2013)). Moreover, "[t]he overwhelming consensus of federal case law establishes that criminal law enforcement decisions—investigative and prosecutorial alike—are discretionary in nature and, therefore, by Congressional mandate, immune from judicial

- 22 -

review." *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) (citing *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986)).

In *Zelaya*, 781 F.3d at 1332, for example, investors in a Ponzi scheme brought an action against the United States alleging that the Securities and Exchange Commission ("SEC") negligently approved the annual re-registration of a fraudulent company as an investment advisor and failed to investigate the company for fraudulent activity. The court, citing opinions from other circuit courts holding that the discretionary function exception precluded claims based on the SEC's failure to discover, investigate, and dissolve other Ponzi schemes, held that "investigatory decisions by the SEC are the types of decisions that the discretionary function exemption would be expected to shield." *Id.*; *see also United States v. Faneca*, 332 F.2d 872, 874-75 (5th Cir. 1964) (decisions regarding "modus operandi" of law enforcement operations and means of enforcing the law are protected by discretionary function exception); *Schmidt v. United States*, 198 F.2d 32, 36 (7th Cir. 1952) (holding that SEC's investigations are "clearly within the scope of its discretionary authority").

In *Martinez v. United States*, 587 F. Supp. 2d 245, 248-49 (D.D.C. 2008), another judge in this district found that the discretionary function applied to claims that the FBI was "derelict in its duty" when it failed to take plaintiff's complaints seriously and failed to help her when she made various calls to field offices. The Court concluded that "[t]he decision to allocate limited governmental resources to investigate a reported crime, like the decision to allocate limited resources to prosecute a crime, is a discretionary function." *Id.* at 248. Concluding that the discretionary function barred plaintiff's claims, the Court lacked subject matter jurisdiction. *Id.*; *see also Shuler v. United States*, 531 F.3d 930, 934 (D.C. Cir. 2008) (holding that, under the FTCA, a district court has subject-matter jurisdiction only if the plaintiff's complaint sets forth facts

- 23 -

sufficient to demonstrate that the government employee whose conduct caused him harm violated a specifically prescribed policy and that holding that law-enforcement official's decision on when to arrest a suspect is a discretionary function); *Gray v. Bell*, 712 F.2d 490, 513–14 (D.C. Cir. 1983) ("[D]ecisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception. . . The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy.").

In *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997), the plaintiff brought an FTCA suit alleging that Drug Enforcement Administration agents failed to properly identify the subject of an arrest warrant and mistakenly arrested the plaintiff. The court found that law enforcement agents' "decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice." *Id*. The court held that the "investigation of the whereabouts and identity of the subject of an arrest warrant" is conduct that falls within the discretionary function exception. *Id*.

Courts have been cautious about intervening in this area, aware that "imposing liability for such decisions would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) (holding that discretionary function exception applied to FBI's methods in undercover investigation); *see also O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001) ("how law enforcement agents conduct interrogations would appear to be a paradigmatic example of a discretionary function" involving "elements of judgment and choice—the central

- 24 -

ingredients of discretion"); *Mid-S. Holding Co., v. United States*, 225 F.3d 1201 (11th Cir. 2000) ("decisions of [federal agents] concerning the manner in which to search . . . fall within the scope of the discretionary function exception"); *Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (holding that FBI's decision to use an informant is discretionary because "[t]here is neither guideline nor law to cabin the decision as to which individual should be used as an informant"); *Terrell v. Lungren*, Civ. A. No. 98-00219, 1998 WL 574387, at *3 (N.D. Cal. Aug. 31, 1998) ("The court can find no binding authority requiring the FBI to investigate every complaint that it receives. To the contrary, courts have consistently described the FBI's mandate [to conduct an investigation] as a 'discretionary rather than mandatory authority.'"), *aff'd*, No. 98-17040, 1999 WL 637813, at *1 (9th Cir. Aug. 17, 1999); *Richards v. FBI*, Civ. A. No. 12-1027, 2012 WL 5386563, at *2 (W.D. Mich. Nov. 1, 2012) (dismissing claims that FBI failed to investigate and noting that FBI investigative decisions are discretionary and unreviewable).

### 1. There Are No Mandatory Statutes, Regulations, or Directives that Constrained the FBI's Discretion in the Conduct at Issue.

Application of the discretionary function exception first requires a court to "determine whether a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Macharia v. United States*, 334 F.3d 61, 65 (D.C. Cir. 2003). If no such directive exists, then the conduct involves the exercise of discretionary judgment. *Id*.

The first part of the *Gaubert* test is satisfied here, as there are no mandatory statutes, regulations, or directives that constrained the FBI's discretion as to the conduct at issue. Plaintiffs' Amended Complaint identifies no such applicable federal statutes, regulations, directives, or policies regarding the FBI's investigatory directive. *See* Am. Compl. ¶¶ 21, 93, 101 (noting in conclusory fashion, but failing to identify with specificity, any FBI regulation, mandate, or directive, alleging that the "FBI had non-discretionary obligations, governed by established

protocols, to handle and investigate tips concerning potential and ongoing underage child erotica, rape, sex with minors, and human sex trafficking in a reasonable manner and to act against Epstein and to prevent him from committing repeated crimes."); *see also id.* ¶ 101 (same); Prop. 2d Am. Compl. ¶¶ 21, 102, 110 (same). Plaintiffs do not because they cannot.

The Amended Complaint alleges that the FBI "failed to take appropriate action in light of complaints made regarding Epstein and subsequently botched and covered up investigations for years." Am. Compl. ¶ 101. But Plaintiffs point to no non-discretionary duty that governed the FBI's decision making. Absent such a mandatory directive, the FBI maintains discretion in how to follow-up on tips of criminal conduct. Courts have made it clear that decisions by FBI employees on whether to investigate and follow-up on information they received from the public are ones in which the FBI is afforded broad discretion. Law enforcement personnel's "failure to discover, investigate, and dissolve" crimes are "the types of decisions that the discretionary function exemption would be expected to shield." *Zelaya*, 781 F.3d at 1332. The FBI employees who received tips from the public were not constrained to take mandatory and specific steps during their assessment of the tips. FBI personnel retain discretion to determine whether a tip indicates a credible threat that is appropriate for FBI involvement. The decisions of how to analyze and assess the information gathered and whether to forward the tips to a Field Office were each imbued with discretion, without which the FBI could not perform its investigative and law enforcement functions.

Separate and distinct from the decision on how to follow-up on tips are the myriad of decisions that agents in the relevant field offices would have made, which demand the exercise of discretion throughout. As a preliminary matter, "FBI agents, like detectives and police officers must evaluate whether the information requires immediate action, deferred action, or no action at

- 26 -

all." *Gonzalez v. United States*, 814 F.3d 1022, 1029 (9th Cir. 2016). Regardless, the field office would have determined for itself, anew, whether the information revealed a credible threat that is appropriate for FBI involvement and whether to take any action. If FBI agents had decided to act, they would have had discretion to decide how to act, including the ultimate law enforcement decision of what steps to take to prevent potential criminal conduct. In exercising that discretion, considerations such as the feasibility of interviewing the complainant or the subject of the complaint, how to locate and identify the subject, the use and availability of potential witnesses, the value of any documentary evidence, whether the evidence was consistent or contradictory, and whether to refer the matter for possible prosecution may come into play. *See Mesa*, 123 F.3d at 1438; *Littell v. United States*, 191 F. Supp. 2d 1338, 1345 (M.D. Fl. 2002). Any other result "would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter*, 441 F.3d at 312.

> 2. Federal Agents' Decision on Whether and How to Investigate Are <u>Grounded in Public Policy</u>

If no mandatory directive controls the governmental conduct at issue, the second part of the discretionary function analysis requires the court to "determine whether the discretion involved in the governmental act 'is the kind that the discretionary function was designed to shield.'" *Gaubert*, 499 U.S. at 322-23.

The FBI must allocate limited time and resources in prioritizing what matters to undertake in view of the gravity and relative importance of the alleged offense and the credibility of the allegations, among many other considerations. *See Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991) (finding that the decision whether or not to investigate was "at the core of law enforcement activity" and involved the type of decision making that section 2680(a) was designed to protect); *Martinez*, 587 F. Supp. 2d at 249

(holding that "[t]he decision to allocate limited governmental resources to investigate a reported crime . . . is a discretionary function" and noting that "'[t]he federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy'" (quoting *Gray v. Bell*, 712 F.2d 490, 514 (D.C. Cir. 1983))).

The FBI's discretionary decisions in dealing with tips and purported decisions not to investigate are presumed to be grounded in public policy and thus protected from hindsight review. Here, how the FBI received information from the public, how it prioritized the information received, how it responded to that information, and how it allocated resources and personnel, were grounded in public policy. The second part of the *Gaubert* test is also met here because decisions of whether to investigate an individual "are at the core of law enforcement activity" that the discretionary function exception "was designed to safeguard." *Kelly*, 924 F.2d at 362; *see also McCloskey v. Mueller*, 385 F. Supp. 2d 74, 81 (D. Mass. 2005). After all, "the ability of an investigator to choose the way in which an investigation will proceed is undoubtedly grounded in considerations of public policy." *Littell*, 191 F. Supp. 2d at 1345; *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) ("Investigations . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation.").

Moreover, to the extent the Amended Complaint predicates liability on the assumption that, had the FBI followed up on tips then the FBI would have prevented Epstein from acting, such a claim falls within the discretionary function exception because it challenges policy-based decisions on whether and how to enforce statutes authorizing the FBI to investigate potential crimes. *McCloskey*, 385 F. Supp. 2d at 81; *see also Smith*, 375 F.2d at 247-48 ("The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national

policy."); *Flammia v. United States*, 739 F.2d 202, 205 (5th Cir. 1984) (decision to release immigration detainee who was a known violent felon protected by the discretionary function exception); *Shuler*, 531 F.3d at 934 ("Decisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary second-guessing.").

In sum, the second prong of *Gaubert* applies. Because both prongs of the discretionary function exception are met here, the United States has not waived its sovereign immunity over Plaintiffs' negligence claim, warranting its dismissal.

## III.     Plaintiffs' Claims Are Barred by the FTCA's Statute of Limitations

If somehow the Court finds that venue is proper and the discretionary function is not a bar to Plaintiffs' claims, those claims should nevertheless be dismissed because they are barred under the FTCA's two-year statute of limitations. Plaintiffs' allegations of abuse in this lawsuit go back to 2001, continue through the early 2000s, up until 2017. *See* Am. Compl. ¶¶ 32-50. But these claims are untimely. Under the FTCA, a claimant must present her tort claim administratively to the appropriate federal Agency "within two years after such claim accrues" or it "shall be forever barred."  28 U.S.C. § 2401(b).  As to accrual, although the general rule is that a FTCA claim accrues at the time of injury, *United States v. Kubrick*, 444 U.S. 111, 119-20 (1979), accrual is subject to the so-called "discovery rule," *see Dubose v. Kansas City S. R. Co.*, 729 F.2d 1026, 1030 (5th Cir. 1984) (explaining discovery rule applies to accrual under FTCA).  As to the period of limitations, the Supreme Court explained that the FTCA statute of limitations is not jurisdictional and is subject to equitable tolling.  *Kwai Fun*, 575 U.S. at 412. Notwithstanding *Kwai Fun Wong*, there exists no basis for this Court to find that equitable tolling applies in this case.

The statute of limitations provision of the FTCA is interpreted by reference to federal law. *See Sexton v. United States*, 832 F.2d 629, 633 n. 4 (D.C. Cir. 1987). In  *Kubrick*, 444 U.S. at 120,

the Supreme Court held that under the FTCA, "[a] claim accrues within the meaning of § 2401(b) when the plaintiff knows both the existence and the cause of his injury." The *Kubrick* court specifically rejected the theory that a cause of action accrues only when the plaintiff learns that his injury is legally actionable as malpractice:

> There is nothing in the language or the legislative history of the [FTCA] that provides a substantial basis for the Court of Appeals' construction of the accrual language of § 2401(b). Nor did the prevailing case law at the time the [FTCA] was passed lend support for the notion that tort claims in general or malpractice claims in particular do not accrue until a plaintiff learns that his injury was negligently inflicted.

*Kubrick*, 444 U.S. at 119. However, in certain circumstances, accrual is measured from when plaintiff knows or in the exercise of reasonable diligence should know of both the injury and its cause. Most claims, therefore, accrue at the time of the injury; however, "if…the injury is not of the sort that can readily be discovered when it occurs," accrual will be delayed until "the plaintiff has discovered, or with due diligence should have discovered, the injury." *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991). "'[T]he test for whether a plaintiff should have discovered necessary facts' for purposes of the discovery rule 'is an objective one.'" *Smith v. United States*, 518 F. Supp. 2d 139, 161 (D.D.C. 2007) (quoting *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004)).

Plaintiffs contend that "numerous tips and reports" were "concealed from the public" and that it was not until litigation in another proceeding in the Southern District of New York relating to JP Morgan Chase that they became aware that JP Morgan Chase had "contacted" the federal government several times between 2006 and 2008 regarding Epstein's "transactions with the bank." Am. Compl. ¶ 75. Relying on the purported disclosure in the JP Morgan Chase action, Plaintiffs contend that pursuant to the discovery rule, they did not become aware of "Defendant's culpability" until July 2024. *Id*. ¶ 31. This explanation finds no support in the law.

Once on inquiry notice, a plaintiff must exercise reasonable diligence to investigate her injury and its cause. *Gould v. Dep't of Health & Hum. Servs.*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc) ("The burden is on the plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable."). Or, put differently, "[u]nder this standard, accrual depends on when the plaintiff (or a reasonable person in the plaintiff's position) would have actually discovered that the government is responsible for her injuries." *E.Y. ex rel. Wallace v. United States*, 758 F.3d 861, 865 (7th Cir. 2014).

Numerous courts have recognized that extensive publicity can put claimants on inquiry notice for statute of limitations purposes. *See Rakes v. United States*, 352 F. Supp. 2d 47, 76 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (Whitey Bulger victim claimants on notice "[b]ased on the Boston press coverage from the summer of 1997 to the fall of 1998"); *see also Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (dismissing action where "well-publicized SEC action, which preceded the instant suit by more than two years, set forth in considerable detail many of the wrongs for which appellants now seek recovery"); *In re Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 801 (E.D. La. 2007) ("the highly publicized withdrawal of Vioxx from the market on September 30, 2004 and the immediate media blitz that followed linking Vioxx use to increased cardiovascular risks gave ample notice to potential claimants and triggered the applicable statutes of limitations in these cases"); *Blue Cross v. SmithKline Beecham Clinical Labs.*, 108 F. Supp. 2d 116, 124 (D. Conn. 2000) (notice triggered by "highly publicized, industry-wide information" concerning fraudulent billing practices); *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987) (notice triggered by "[e]xtensive press coverage of the ABSCAM trials and the ABSCAM controversy in general"). Further, for constructive knowledge, "ignorance of the

- 31 -

involvement of United States employees is irrelevant." *Dyniewicz v. United States*, 742 F.2d 484, 487 (9th Cir. 1984).

In this case, there is no question that there was "extensive" media coverage surrounding Epstein and his conduct for years, including long before the events at issue in the J.P. Morgan Chase litigation in New York. *See e.g.,* Andrew Marra, *Jeffrey Epstein Craved Big Homes, Elite Friends, and Investigators Say, Underage Girls*, The Palm Beach Post,  Aug. 14, 2006, https://web.archive.org/web/20110616194257/http://www.palmbeachpost.com/localnews/content/local_news/epaper/2006/08/14/m1a_EPSTEIN_0814.html (last visited Feb. 4, 2025) (noting that "The Palm Beach Police Department has asked the FBI to investigate the case."); Samuel Goldsmith, *Jeffrey Epstein Pleads Guilty to Prostitution Charges*, New York Post, June 30, 2008, https://nypost.com/2008/06/30/jeffrey-epstein-pleads-guilty-to-prostitution-charges/ (last visited Feb. 4, 2025); Paul Lewis & Jon Swaine, *Jeffrey Epstein: inside the decade of scandal entangling Prince Andrew*, The Guardian, Jan. 10, 2015, https://www.theguardian.com/world/2015/jan/10/jeffrey-epstein-decade-scandal-prince-andrew (last visited Feb. 4, 2025) (noting a "cascade of FBI investigations"); Jon Swaine, *Jeffrey Epstein Donations to Young Pupils Prompts U.S. Virgins Islands Review*, The Guardian, Jan. 13, 2015,  https://www.theguardian.com/us-news/2015/jan/13/jeffrey-epstein-donations-us-virgin-islands-review (last visited Feb. 4, 2025) (stating that the "The FBI is said to have identified about 40 potential victims of the former investment banker."); Julie K. Brown, *A Timeline of Jeffrey Epstein*, Miami Herald, Nov. 28, 2018, https://www.miamiherald.com/news/local/article221404845.html (last visited Feb. 4, 2025) (noting that in November 2006, the FBI began "interviewing potential witnesses and victims from Florida, New York and New Mexico."); Julie K. Brown, *Jeffrey Epstein Arrested on Sex Trafficking Charges*, Miami Herald,  July 11, 2019,  https://www.miamiherald.com/news/

state/florida/article232374872.html (last visited Feb. 4, 2025) (noting that "Sources said he was arrested by the FBI pursuant to a sealed indictment that will be unsealed on Monday."). A reporter with the Miami Herald ran a year-long investigation into Epstein, which resulted in a series titled, "Perversion of Justice." All of the corresponding reports on the results of her investigation and her reporting can be found here: https://www.miamiherald.com/topics/jeffrey-epstein (last visited Feb. 5, 2025). The Miami Herald's extensive coverage included details on the FBI's then-ongoing investigation in Florida into Epstein. *See e.g.,* Julie K. Brown, *FBI Raids Jeffrey Epstein's 'Pedophile Island,' Estate as Investigation Continues*, Miami Herald, Aug. 13, 2019, https://www.miamiherald.com/news/state/florida/article233798807.html (last visited Feb. 5, 2025). In May 2020, Netflix also released a documentary, titled "Jeffrey Epstein: Filthy Rich," which chronicled Epstein's abuse, the tip from Maria Farmers in 1996, as well as the non-prosecution agreement that Epstein struck with the prosecutors in Florida.  At least one of the Jane Does in this lawsuit has also spoken publicly regarding her abuse at the hands Epstein.

Further, in 2020, the Office of Professional Responsibility issued an "Executive Summary of Report" relating to its investigation into the U.S. Attorney's Office for the Southern District of Florida's resolution of its 2006-2008 federal investigation into Epstein. A copy of the summary is found here: https://www.justice.gov/opr/page/file/1336471/dl?inline and was published by the Department in November 2020. The report explains how the Palm Beach County Police Department referred the matter to the FBI in "West Palm Beach" for a "possible federal investigation." *See id.* at 2.  These are just a few examples of the extensive and prolific media coverage surrounding Epstein, which goes back far beyond the two year "discovery" period Plaintiffs allege in their complaint.

There were also lawsuits. *See* Mem. Op. at 2, *Doe v. United States*, Civ. A. No. 08-80736 (S.D. Fl. Feb. 21, 2019), ECF No. 435 (recounting that in 2006, at the request of the Palm Beach Police Department, the FBI "opened an investigation into allegations that Epstein and his personal assistants used the facilities of interstate commerce to induce girls between the ages of 14 and 17 to engage in illegal sexual activities. The FBI ultimately determined that Jane Doe 1 and Jane Doe 2 were victims of sexual abuse by Epstein while they were minors[.]").

And, there were Congressional hearings regarding the plea agreement that prosecutors in Florida entered into with Epstein following the 2008 investigation. *See* Nomination of Alexander Acosta of Florida to be Secretary of Labor, Hearing before the Comm. on Health, Education, Labor, and Pensions, 115th Cong. 268 (2017) available at: https://www.congress.gov/event/115th-congress/senate-event/LC57921/text (discussing Epstein); *see also* Calling For the Resignation of Labor Secretary Alexander Acosta, 165 Cong. 114 (2019) (statement of Rep. Payne); *see also* Dep't of Labor, Health and Human Servs., Ed., and Related Agencies Appropriations for 2020, 116th Cong., Hearing before Appropriations Comm. at 333, 375, 378, 392, 393, 394, 399 (Apr. 3, 2019), available at: https://www.govinfo.gov/content/pkg/CHRG-116hhrg37623/pdf/CHRG-116hhrg37623.pdf (Acosta testimony regarding Epstein).

Finally, even Plaintiffs' Amended Complaint suggests that the claims began to accrue far earlier than May 2023. *See* Am. Compl. ¶ 4 ("Epstein had a well-publicized reputation related to sex trafficking and abuse of children and young women, which began appearing in the press as early as March 2005 when he sexually abused and molested a 14-year-girl and countless more. During that police investigation in Palm Beach, child pornography was obtained and numerous interviews revealed Epstein's underage sex trafficking operation, which were turned over to the FBI.").

Given the vast media coverage of Epstein over the years, including in numerous jurisdictions, but particularly in New York (where sixteen of nineteen Plaintiffs are domiciled and currently reside), an "objective person" in Plaintiffs position would have become aware of their injury at the time it occurred, not more than twenty years later in some cases. Thus, even viewing the evidence in the light most favorable to Plaintiffs, Supreme Court precedent forecloses Plaintiffs' reliance on information learned years after the injury was apparent and renders May 2023 administrative claims untimely. Plaintiffs cannot simply allege that they were ignorant of the specific or precise involvement of the FBI or even the FBI's field or satellite offices in Florida. Even where the government's negligence takes the form of omission, a plaintiff's understanding of the basic nature of the act should suffice to begin the statute running. *Sexton*, 832 F.2d at 633. If the plaintiff knows these critical facts, he or she need only undertake a reasonably diligent investigation to determine whether a cause of action may lie. *Id.* Plaintiffs were aware that there was ongoing investigation into Epstein as it was widely reported in 2008 that Epstein plead guilty to solicitation of a minor. *See* Am. Compl. ¶ 17. To the extent Plaintiffs contend the statute of limitations should be tolled, they do not present any evidence to support that assertion, and the Court should decline to equitably toll the statute of limitations. *See, e.g.*, *Gable v. United States*, Civ. A. No. 12-1634 (GMH), 2017 WL 11592046, at *10 (D.D.C. Dec. 29, 2017) (declining to apply the "extraordinary remedy" of equitable tolling). Even if Plaintiffs could somehow toll the statute of limitations until the time they learned of the renewed investigation into Epstein in 2019, the subsequent reporting, the Netflix documentary in 2020, or the Department of Justice internal investigation into the non-prosecution agreement in November 2020, their claims filed in 2023 are still untimely.

The plain language of the Amended Complaint, as well as the extensive press coverage and publicity concerning Epstein and his crimes render it implausible that Plaintiffs' claims did not begin to accrue until 2021.

## IV.   The Court Should Exercise Its Discretion in Ruling on Plaintiffs' Motion for Leave to File a Second Amended Complaint

Currently pending with the Court is Plaintiffs' motion for leave to file a Second Amended Complaint. *See* Pls.' Mot., ECF No. 25. As noted above, Plaintiffs proposed second amended complaint does not change the legal theory upon which Plaintiffs' claims rest. Rather, as Plaintiffs explain (and as a copy of the redlined complaint demonstrates), Plaintiffs simply intend to amend their complaint to add nine more "Jane Doe" Plaintiffs who were victims of Epstein. Yet, as noted *infra* § I, none of these nine new Plaintiffs reside in the District of Columbia, and none of the acts or omissions relating to their claims are alleged to have occurred here. *Id*. at ECF No. 25-1.

Rule 15(a) allows a plaintiff to amend his complaint once as a matter of course within twenty-one days after serving it, or within twenty-one days of service of a responsive pleading or a Rule 12 motion to dismiss, for a more definite statement, or to strike.  Rule 15(a)(1).  Plaintiffs have already amended their complaint once (ECF No. 9), prior to service of a motion under Rule 12.[7] The United States took no position on Plaintiffs' motion for leave to file an amended

---

[7]      It is likely true that the time for Plaintiffs to amend as a matter of right under Rule 15 had not yet begun because the United States had not yet served a responsive pleading as contemplated under Rule 15. *See e.g., Savignac v. Jones Day*, 341 F.R.D. 120, 121-22 (D.D.C. 2022) (noting that Rule 15(a)(1)(A) and (B) are mutually exclusive; the time under Rule 15(a)(1)(B) begins when the pleading is served and ends 21 days after the response is served (citing *Hayes v. Buttigieg*, Civ. A. No. 20-2523 (RBW), 2021 WL 6619326, at *1 (D.D.C. May 3, 2021) (noting that under Rule 15(a)(1)(B) a party has "an absolute right" to amend its complaint, which is a pleading . . . to which a responsive pleading is required within the meaning of Rule 15(a)(1)(B)—at any time from the moment the complaint is filed until [twenty-one] days after the earlier of the filing of a responsive pleading or a motion under Rule 12(b), (e), or (f)) (cleaned up))); *see also Doe v. Syracuse Univ.*, 335 F.R.D. 356, 359 (N.D.N.Y. 2020) ("[W]hen a responsive pleading is required . . . there is no 'time gap' during which a party cannot amend as a matter of course when no responsive pleading

complaint, understanding that the United States was going to move to dismiss the operative pleading regardless of whether Plaintiffs were permitted to amend or not.

The Court, of course, "should freely give leave when justice so requires." *Id.* But "leave to amend should be denied when amendment would be futile," *Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including, most notably, when "the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Thus, if the proposed amended complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted), leave to amend should be denied. In making this assessment, the Court applies the same rules applicable to its consideration of a motion to dismiss. The Court must, accordingly, "accept all the well-pleaded factual allegations of the" proposed amended "complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor," but it need not "assume the truth of legal conclusions." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

In short, it is within the Court's discretion whether to allow amendment or not. Yet regardless of whether the Court allows the proposed Second Amended Complaint to be filed, the result is the same: Plaintiffs' claims should be dismissed for all the reasons discussed herein.

\*   \*   \*

---

or motion under Rule 12(b), (e), or (f) has been filed."). Nevertheless, amendment would be futile for the reasons explained herein.

**CONCLUSION**

For these reasons, the United States' motion to dismiss should be granted, and the Court

should dismiss this action.

Dated: February 6, 2025
Washington, D.C.

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: */s/ Brenda González Horowitz*
    BRENDA GONZÁLEZ HOROWITZ
    D.C. Bar No. 1017243
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2512

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE 1 et al.,

        Plaintiffs,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 24-2743 (RBW)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion to dismiss, and the entire record herein,

it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that this action is dismissed with prejudice.

This is a final, appealable order.

SO ORDERED:

_____

Date

_____

REGGIE B. WALTON
United States District Judge