UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:25-CV-80880 Leibowitz

JANE DOE 1, *et al.*,

     Plaintiffs,

vs.

UNITED STATES OF AMERICA,

     Defendant.

_____/

## UNITED STATES' MOTION TO DISMISS
## <u>PLAINTIFFS' THIRD AMENDED COMPLAINT</u>

i

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 3

    A.  Plaintiffs' Claims Are Barred by the FTCA's Statute of Limitations ............. 3

    B.  There Is No State Law Analogue for Plaintiffs' "Negligent Police
        Investigation" Cause of Action ........................................................................ 7

    C.  The FTCA's Discretionary Function Exception Bars Plaintiffs' Claims ........ 9

        1.  The Discretionary Function Exception, Generally ..................................... 10

        2.  Law Enforcement Investigations Are Protected by
            the Discretionary Function Exception ....................................................... 11

            i.  There Are No Mandatory Statutes, Regulations, or
                Directives That Constrained the FBI's Discretion in the
                Conduct at Issue ................................................................................. 13

            ii.  Federal Law Enforcement Officers' Decisions on Whether
                and How to Conduct Criminal Investigations Are Grounded
                in Public Policy ................................................................................. 15

    D.  The FTCA Does Not Permit Recovery for "Institutional"
        or "Systemic" Torts Like the One Alleged Here............................................. 16

    E.  The Third Amended Complaint Is Subject to Dismissal Under Rule
        12(b)(6) as a Shotgun Pleading That Fails to Plausibly Allege Causation..... 18

III. CONCLUSION ................................................................................................ 20

Defendant, the United States of America, moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.  INTRODUCTION

Plaintiffs Laura Newman, Sandra Ward, and Jane Does 1 through 32 bring this action against the United States, collectively alleging one count of negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Plaintiffs contend that at various times across a span of decades, and at various locations across the world, Jeffrey Epstein sexually abused them. *See* Third Amended Complaint ("TAC"), ECF 61 ¶¶ 7, 32 – 65. The gravamen of their claims is that Epstein's abuse would not have occurred but-for the FBI's systemic failure to properly investigate Epstein's criminal conduct during this decades-long time span. As Plaintiffs see it, the FBI, as an institution, breached a duty of care it owed the Plaintiffs by negligently conducting its criminal investigation into Epstein. *Id.* ¶¶ 25, 74, 98, 104, 110, 118. Plaintiffs theorize that had the FBI done a better job in investigating Epstein, some un-stated intervening action(s) would have occurred that would have prevented Epstein from abusing each of the thirty-four individual Plaintiffs on separate occasions between 1996 and 2017. *Id.* ¶¶ 115-116, 122.

Plaintiffs' negligent police investigation claim fails for five reasons. First, the Plaintiffs' claims are irredeemably stale. In order to bring a tort action against the United States, a plaintiff must present their claim in writing to the appropriate federal agency within two years after such claim accrues. 28 U.S.C. § 2401(b). The FTCA's statute of limitations generally commences when the injury is inflicted. Here, Plaintiffs allege that Epstein abused them between 1996 and 2017, yet they delayed the submission of their various administrative claims until May 2023 and beyond. Plaintiffs attribute their delay to their inability to discover the "true" cause of their injuries—the FBI's investigatory shortcomings—until learning of facts revealed by the filing of the action styled *U.S. Virgin Islands v. JP Morgan Chase Bank NA*, No. 22-cv-10904 (S.D.N.Y.) in December 2022. TAC, ¶¶ 31, 91. This fig-leaf of a justification does not survive even cursory scrutiny, given the decades-long inundation of media coverage regarding the FBI's investigation into Epstein's crimes.

Even if this Court were to apply the "diligence discovery rule of accrual" in a novel fashion to this FTCA action, Plaintiffs' claims would still be untimely, as their pleadings demonstrate they were aware of the existence of a connection between their injuries and the FBI's investigation as early as <u>November 28, 2018</u>, when the Miami Herald published *Perversion of Justice: Jeffrey Epstein*,[1] and certainly no later than <u>November 12, 2020</u>, when the Washington Post published the Office of Professional Responsibility's ("OPR") report titled *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of Its 2006–2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation*.[2] TAC ¶¶ 90, 113, 114.

Second, the Court must dismiss Plaintiffs' claims because the challenged conduct is not independently tortious under Florida law, regardless of the FBI's internal policies, procedures, or self-imposed duties. Here, Plaintiffs allege that "the FBI delayed and failed to timely investigate the abuse, failed to interview the victims, failed to investigate the crimes, and did not follow routine procedure or offer victim assistance notwithstanding credible reports and tips." *Id.* ¶ 14. However, under Florida law a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in investigating a crime, effecting an arrest, or initiating a prosecution. Plaintiffs have not—and cannot—allege a private analogue under state law necessary to invoke the FTCA's waiver of sovereign immunity, and therefore this Court lacks subject-matter jurisdiction.

---

[1] *Perversion of Justice: Jeffrey Epstein*, The Miami Herald, November 28, 2018, <u>https://www.miamiherald.com/news/local/article238237729.html</u> (last visited September 15, 2025).

[2] *Read the Report*, The Washington Post, November 12, 2020, <u>https://www.washingtonpost.com/context/read-the-report-investigation-into-the-u-s-attorney-s-office-for-the-southern-district-of-florida-s-resolution-of-its-2006-2008-federal-criminal-investigation-of-jeffrey-epstein-and-its-interactions-with-victims-during-the-investigation/db9373e8-22f8-4712-b4a7-be844d162de0/?itid=lk_inline_manual_4</u> (last visited September 15, 2025).

Third, Plaintiffs' claims are premised upon the FBI's failure to "investigate" and "prosecute" Epstein. *Id.* ¶¶ 7, 21, 97, 110, 112, 119. The choices the FBI makes in deciding how to assess complaints, devote resources, and prioritize investigative work are the quintessential duties of law enforcement's discretionary authority and should not be influenced by the threat of private suit. Therefore, the FTCA's discretionary function exception applies and preserves the United States' sovereign immunity.

Fourth, Plaintiffs' claims fail because the FTCA does not allow recovery for "institutional" or "systemic" torts, i.e. generalized theories of negligence asserted against an entire federal agency. Here, Plaintiffs do not identify a specific employee or investigative action (or non-action) that directly resulted in their injuries. Instead, Plaintiffs allege systemic neglect by the FBI through its "repeated and continued failures, delays, and inaction allowed Epstein and others to continue their sex trafficking conspiracy for twenty-five years." TAC ¶ 21. Plaintiffs' diffuse negligent investigation claim leveled against the FBI as a whole fails to clear the FTCA's bar on institutional torts and must be dismissed.

Finally, the Third Amended Complaint is a shotgun pleading, and should be dismissed on that basis alone. It is replete with conclusory, vague, and immaterial facts. Based on the pleading's scattershot allegations, it is impossible to logically and plausibly connect the FBI's alleged investigatory failures as the direct, proximate cause of Epstein's abuse of the thirty-four Plaintiffs on separate occasions across several decades.

## II. ARGUMENT

### A. Plaintiffs' Claims Are Barred by the FTCA's Statute of Limitations

Plaintiffs each had two years from the date of their respective injuries to file an administrative claim with the appropriate federal agency. 28 U.S.C. §§ 2675(a), 2401(b)). Here, Plaintiffs' claims accrued at the various times Epstein abused them

between 1996 – 2017 (TAC ¶¶ 32 – 50),[3] yet they delayed the submission of their administrative claims until May 2023 and beyond.[4] Therefore, Plaintiffs' claims are time-barred and must be dismissed. "The failure to timely present an administrative grievance to the appropriate federal agency within two years is a jurisdictional bar to litigation in federal court." *Chasteen v. United States*, 334 F. App'x 271, 274 (11th Cir. 2009). "Dismissal . . . on statute of limitations grounds is appropriate . . . if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (cleaned up).

Plaintiffs argue that they were unable to discover the cause of their injuries— and therefore their claims did not accrue—until December 2022, when they learned through the filing of the action styled *U.S. Virgin Islands v. JP Morgan Chase Bank NA*, Case No. 22-cv-10904 (S.D.N.Y.) that "JP Morgan Chase contacted the federal government on occasions between 2006-2008 regarding Epstein's suspicious transactions with the bank." TAC, ¶¶ 31, 91. Plaintiffs' misapplication of the diligence-discovery accrual rule is wrong for two reasons.

First, a FTCA claim generally accrues when a plaintiff suffers injury. *See* 28 U.S.C. § 2401(b); *Chamness v. United States*, 835 F.2d 1350, 1352 (11th Cir. 1988). The Eleventh Circuit has carved out two exceptions to this general rule of claim accrual: medical malpractice and wrongful death claims. For these two exceptions, such claims accrue "when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999) ("diligence-discovery accrual rule"). In either case, accrual does not "await awareness by the plaintiff that his injury was negligently inflicted." *United States v. Kubrick*, 444 U.S. 111, 123 (1979).

---

[3] The TAC omits the purported dates of abuse of fifteen of the Jane Does (Nos. 18 through 32). *See* TAC ¶¶ 51 – 65. However, no Plaintiff could have been injured subsequent to Epstein's arrest on July 6, 2019. *Id.* ¶ 103.

[4] *See* <u>Exhibit 1</u>: affidavit of Deborah A. Edwards, Unit Chief – Discovery, Oversight, and Coordination Section, FBI Office of the General Counsel.

The Eleventh Circuit has reiterated the narrow applicability of the diligence-discovery rule. *See Auger v. United States*, 382 F. App'x 901, 902 (11th Cir. 2010) (citing *Diaz* and declining to apply the diligence-discovery rule to FTCA action arising from passport denial because "[t]his case is not a medical malpractice case, and so the exception does not apply."); *see also Castelluccio v. United States*, No. 13-cv-2426, 2014 U.S. Dist. LEXIS 55930 (M.D. Fla. Mar. 19, 2014) adopted by, dismissed by *Castelluccio v. United States*, 2014 U.S. Dist. LEXIS 54976 (M.D. Fla., Apr. 21, 2014) (declining to extend discovery rule to new context of government's negligent disclosure of medical records). This Court should reject Plaintiffs' invitation to expand the rule into the novel realm of police investigations. *See Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001) ("[I]n construing the FTCA's statute of limitations, 'we should not take it upon ourselves to extend the waiver beyond that which Congress intended.'") (citing *Kubrick*, 444 U.S. at 117-18).

Second, even if this Court were to apply the diligence-discovery rule, Plaintiffs' claims would still be untimely, because a plaintiff "need not know that she has a legally cognizable claim for the claim to accrue, and may not bury her head in the sand once she is put on notice that the government may have caused an injury." *Diaz*, 165 F.3d at 1339. Nor does a plaintiff need to know "the particular acts that resulted in her injury" for her claim to accrue. *Price v. United States*, 775 F.2d 1491, 1493-94 (11th Cir. 1985). Further, "the plaintiff need not be aware that the connection indicates some kind of negligence; rather, he or she must simply be aware of the existence of a connection." *Chasteen*, 334 F. App'x at 273 (citing *Kubrick*, 444 U.S. at 123). Indeed, "the two-year statute of limitations allows the plaintiff to investigate, confer with . . . professionals to assess whether there has been negligence, and decide whether to sue." *Id.* "This period is not simply for the plaintiff to decide whether to sue after having collected all relevant evidence." *Id.*

What is relevant for these Plaintiffs' claims is when they first became "aware of the existence of a connection" between Epstein's actions and the FBI's investigation. *Chasteen*, 334 F. App'x at 273. The decades of innumerable news stories, court cases, and congressional hearings covering the FBI's investigation into

- 5 -

Epstein are common knowledge.[5] For example, in April 2020 the Eleventh Circuit discussed how "[f]ollowing a tip in 2005, the Palm Beach Police Department and the FBI conducted a two-year investigation of Epstein's conduct." *In re Wild*, 955 F.3d 1196, 1227 (11th Cir. 2020).

Therefore, even if this Court sets aside the decades of cultural saturation concerning the FBI's investigation, it cannot overlook that the Plaintiffs—by their own admission—possessed all of the requisite knowledge to file an administrative claim as early as the Miami Herald's November 28, 2018 publication of its investigation *Perversion of Justice: Jeffrey Epstein*, and certainly no later than November 12, 2020, when the Washington Post published the OPR report titled *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of Its 2006–2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation*. TAC ¶¶ 90, 113, 114. Therein, the Justice Department's OPR exhaustively detailed the FBI's investigation into Epstein, from its inception in May 2006 to its conclusion in September 2007. *Id.*, p. 16–84. OPR faulted the U.S. Attorney Alex Acosta for having "resolved the federal investigation before significant investigative steps were completed." *Id.*, p. x, 2 84. OPR also concluded that "Acosta's decision to resolve the federal investigation through the [non-prosecution agreement] constitutes poor judgment." *Id.*, pp. x, 284. Clearly, either the Miami Herald's investigation or the OPR report was sufficient to put Plaintiffs on notice that "the government may have caused" their injuries. *Diaz*, 165 F.3d at 1339. Nevertheless, Plaintiffs did not present their administrative claims until May 2023 at the earliest, well beyond the FTCA's two-year statute of

---

[5] Circuits which (unlike the Eleventh Circuit) have extended the discovery rule of accrual beyond the medical malpractice / wrongful death contexts recognize that extensive publicity can put claimants on inquiry notice for statute of limitations purposes. *See Rakes v. United States*, 352 F. Supp. 2d 47, 76 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (Whitey Bulger victim claimants on notice "[b]ased on the Boston press coverage"); *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (dismissing action where "well-publicized SEC action, which preceded the instant suit by more than two years, set forth in considerable detail many of the wrongs for which appellants now seek recovery").

limitations. Plaintiffs' claims are time-barred, and this action should be dismissed without leave to refile pursuant to Fed. R. Civ. P. 12(b)(1).

### B. There Is No State Law Analogue for Plaintiffs' "Negligent Police Investigation" Cause of Action

"If a plaintiff fails to establish [a] state-law duty . . . the United States retains its sovereign immunity and the suit cannot go forward." *Smith v. United States*, 14 F.4th 1228, 1232 (11th Cir. 2021). Plaintiffs allege that "Southern District of Florida is where the negligence continually occurred, where the FBI Field Office was located and where the suspicious non-prosecution agreement occurred." TAC ¶ 30. Regardless of how they style their claim, the circumstances Plaintiffs describe and the behavior they allege fit the mold of a negligent police investigation claim. Fatally for their sole cause of action, Florida law does not recognize such a tort, and so the Court must dismiss the Third Amended Complaint with prejudice.[6]

In Florida, "there has never been a common law duty to individual citizens for the enforcement of police power functions." *Irving v. St. John*, No. 21-cv-01002, 2022 U.S. Dist. LEXIS 141741, 2022 WL 3213422, at *3 (M.D. Fla. Aug. 9, 2022); *cf. Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another.") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Vinyard v. Wilson*, 311

---

[6] The Third Amended Complaint tangentially references portions of the FBI's investigation that occurred in New York. *See id.* at ¶¶ 76, 79. Notably, New York also does not recognize a private analogue arising out of claims of a negligent investigation. *See Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."); *Jones v. FBI*, No. 19-cv-6752, 2019 WL 5550520 (W.D.N.Y. 2019) (dismissing negligent investigation claims against the FBI and CIA for lack of state-law analogue); *King v. United States*, No. 16-cv-2565, 2020 U.S. Dist. LEXIS 44537, 2020 WL 1234236, at *2-3 (E.D.N.Y. Mar. 13, 2020) (explaining that FTCA claims that FBI agents failed to exercise due diligence in their investigation amounted to claims for negligent investigation, which were barred under *Watson*); *Johnson v. United States,* 759 F. Supp. 3d 425 (S.D.N.Y. 2024) (dismissing FTCA negligence claim arising out of investigatory errors made by FBI agents during the criminal investigation into the assassination of Malcom X).

F.3d 1340, 1356 (11th Cir. 2002) (noting that plaintiff had "no substantive right of any kind" in a criminal investigation, "much less one created by the Constitution.")

For over forty years, Florida jurisprudence has rested on the bedrock principle that mishandled police investigations cannot give rise to a cause of action for negligence. *See Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. 3d DCA 2003) ("Beginning with *Trianon Park Condominium Ass'n v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985) and *Everton v. Willard*, 468 So. 2d 936 (Fla. 1985) it has been recognized that the negligent conduct of police investigations does not give rise to a cause of action because the duty to protect citizens and enforce the law is one owed generally to the public."). This holds true whether the claim is framed as a negligent investigation into a crime, *see Bob's Pawn Shop, Inc. v. City of Largo,* 488 So.2d 922 (Fla. 2d DCA 1986), or as a decision to decline to arrest or take a suspect into custody. *See Rodriguez v. City of Cape Coral,* 468 So.2d 963 (Fla. 1985). As a result, "even if [a] law enforcement officer negligently failed to proceed with an investigation . . ., this would still not give rise to a cause of action in light of the present case law . . . ." *J.B. By & Through Spivak v. Dep't of Health & Rehab. Servs.*, 591 So. 2d 317, 318 (Fla. 4th DCA 1991). The Eleventh Circuit has repeatedly reaffirmed this principle. *See Albra v. City of Ft. Lauderdale*, 232 F. App'x 885 (11th Cir. 2007) (finding "negligent investigation" claim "fails because no duty was owed to [plaintiff] to investigate his criminal claim"); *Saunders v. City of Lakeland*, No. 24-12091, 2025 U.S. App. LEXIS 9045, 2025 WL 1124984 at *5 (11th Cir. Apr. 16, 2025) (affirming dismissal of negligence claim because "the conduct of police investigations does not give rise to a cause of action for negligence.") (citing *Fernander v. Bonis*, 947 So. 2d 584, 589-90 (Fla. 4th DCA 2007).[7]

---

[7] Florida district courts routinely dismiss negligent investigation actions brought against federal and state law enforcement. *See Lippman v. City of Miami*, 622 F. Supp. 2d 1337, 1342 (S.D. Fla. 2008) (*Marra, J.*) (dismissing FCTA negligence claim against FBI because "Florida law is clear that the negligent conduct of police investigations does not give rise to a cause of action for negligence under Florida law[.]"); *Brock v. City of Zephyrhills*, No. 06-cv-058, 2006 U.S. Dist. LEXIS 108386, at *5-6 (N.D. Fla. May 18, 2006) ("It is clear, then, that Plaintiff's complaints about

Here, rather than articulate a duty under Florida law, Plaintiffs assert vague descriptions of FBI "standard[s] of conduct," and "established policies, procedures, rules, and protocols," to manufacture the duties they claim the United States owed to Plaintiffs. TAC, ¶¶ 110, 119, 121, 122. Plaintiffs' reliance on the FBI's internal policies does not salvage their claims. It is well-settled that violations of internal policies alone do not "trigger liability under the [FTCA]" unless the federal employee's conduct is "independently tortious under applicable state law." *See Smith*, 14 F.4th at 1233 (citing *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006)); *Hill v. United States*, No. 23-11970, 2024 U.S. App. LEXIS 7295, at *6 (11th Cir. Mar. 28, 2024) (affirming dismissal of negligence claims based on United States' sovereign immunity where alleged breach of duty arose from a military oath and code of conduct, but was not independently tortious under applicable Florida law).

## C. The FTCA's Discretionary Function Exception Bars Plaintiffs' Claims

Plaintiffs allege in conclusory fashion that the FBI "failed to follow its own procedures and protocols to stop and prevent sex trafficking," TAC, ¶ 118, and that the FBI had a "non-discretionary obligation, governed by established protocols, to handle and investigate tips concerning potential and ongoing underage child erotica, rape, sex with minors, and human sex trafficking in a reasonable manner and to act against Epstein and to prevent him from committing repeated crimes." *Id.* ¶ 119. This allegation is categorically incorrect: what, when, and how the FBI chooses to investigate is a matter of discretion. Plaintiffs' sole claim runs head-first into the FTCA's discretionary function exception. The Court therefore lacks subject matter jurisdiction over Plaintiffs' claims.

---

the various law enforcement entities' failures to establish probable cause, to conduct a reasonable investigation . . . do not constitute a cause of action for negligence under Florida law, and these claims are subject to dismissal."); *Taylor v. Levy Cty. Sheriff's Office*, No. 25-cv-77, 2025 U.S. Dist. LEXIS 116572 (N.D. Fla. May 29, 2025) (dismissing negligence claim arising from sheriff's refusal to arrest plaintiff's assailant).

### 1.  The Discretionary Function Exception, Generally

The limited waiver of sovereign immunity provided by the FTCA is subject to several exceptions, including the "discretionary function exception." 28 U.S.C. § 2680(a). The statute provides that the jurisdiction given to district courts under 28 U.S.C. § 1346(b)(1) does not apply in cases where a claim is:

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*.

28 U.S.C. § 2680(a) (emphasis added). The rationale behind the discretionary function exception, as the Supreme Court explained in *United States v. Gaubert*, 499 U.S. 315, 324 (1991), is that "when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."

*Gaubert* established a two-step test to determine if the discretionary function exception applies. First, a court must look to the nature of the act and whether it involves an "element of judgment or choice." *Id.* at 322. So long as the course of action is not specifically prescribed by a federal statute, regulation, or policy, the conduct at issue will meet this first step. *Id.* The court then must consider the second part of the test: whether that judgment is the kind of judgment that the discretionary function was designed to shield. *Id.* at 323. In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz v. United States,* 486 U.S. 531, 537 (1988).

The discretionary function exception applies to all acts and omissions that are susceptible to policy analysis, whether or not that analysis has been performed on a given occasion. *See Gaubert*, 499 U.S. at 324-25. While the Plaintiffs condemn the FBI's "reckless and negligent abuse of authority" in its handling of the Epstein

criminal investigation, TAC ¶ 7, this is ultimately irrelevant. Once it is established that the challenged conduct is of the kind that Congress intended to protect, the discretionary function exception attaches, regardless of whether the decisionmaker acted negligently or manifestly abused the granted discretion. *See* 28 U.S.C. § 2680(a).

### 2. Law Enforcement Investigations Are Protected by the Discretionary Function Exception

Before addressing whether the government's conduct violated a mandatory regulation or policy, the court first "must determine exactly what conduct is at issue." *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993). Here, the conduct at issue is the manner and method by which the FBI pursued its investigation into Epstein. As explained below, all relevant investigatory decisions by federal law enforcement officers are covered by the FTCA's discretionary function exception.

"The Executive Branch has absolute discretion to decide whether to investigate and its decisions are not subject to judicial review." *Engel v. FBI*, No. 25-cv-00937, 2025 U.S. Dist. LEXIS 80266, at *2 (D.D.C. Apr. 28, 2025) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Law enforcement personnel's "failure to discover, investigate, and dissolve" crimes are "the types of decisions that the discretionary function exemption would be expected to shield." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). "The overwhelming consensus of federal case law establishes that criminal law enforcement decisions— investigative and prosecutorial alike—are discretionary in nature and, therefore, by congressional mandate, immune from judicial review." *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) (*Marcus, J.*), affirmed 123 F.3d 1435 (11th Cir. 1997). In *Mesa*, the plaintiff brought an FTCA suit alleging that DEA agents failed to properly identify the subject of an arrest warrant and mistakenly arrested the plaintiff. The Eleventh Circuit "readily conclude[ed]" that law enforcement officers'

"decisions regarding how to investigate the subject of an arrest warrant . . . are discretionary in nature and involve an element of judgment or choice" and "grounded in considerations of public policy," thus falling within the FTCA's discretionary function exception. *Mesa*, 123 F.3d at 1438. *See also Martinez v. United States*, 587 F. Supp. 2d 245, 248-49 (D.D.C. 2008) (finding that discretionary function applied to claims that the FBI was "derelict in its duty" when it failed to take plaintiff's complaints seriously and failed to help her when she made various calls to field offices); *Gray v. Bell*, 712 F.2d 490, 513–14 (D.C. Cir. 1983) ("[D]ecisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception. . . The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy.").

Courts have been cautious about intervening in this area, aware that "imposing liability for such decisions would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) (holding that discretionary function exception applied to FBI's methods in undercover investigation); *see also O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001) ("how law enforcement agents conduct interrogations would appear to be a paradigmatic example of a discretionary function" involving "elements of judgment and choice—the central ingredients of discretion"); *Mid-S. Holding Co. v. United States*, 225 F.3d 1201 (11th Cir. 2000) ("decisions of [federal law enforcement officers] concerning the manner in which to search . . . fall within the scope of the discretionary function exception"); *Gonzalez v. United States*, 814 F.3d 1022, 1025 (9th Cir. 2016) (discretionary function exception applied to FBI's failure to disclose information to local law enforcement regarding a threatened home invasion); *Gordo-González v. United States*, 873 F.3d 32, 37 (1st Cir. 2017) (affirming dismissal of FTCA action arising from FBI's negligent investigation because "[i]t follows inexorably, as night follows day, that the challenged conduct is discretionary."); *Shuler v. United States*,

531 F.3d 930 (D.C. Cir. 2008) ("Decisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary second-guessing.").

### i. There Are No Mandatory Statutes, Regulations, or Directives that Constrained the FBI's Discretion in the Conduct at Issue.

The first part of the *Gaubert* test is satisfied here, as Plaintiffs do not identify any specific mandatory statutes, regulations, or directives, or policies that constrained the FBI's discretion on how it conducted its criminal investigation into Epstein. *See* TAC ¶¶ 21, 110, 119, 121 (conclusory allegations of the "non-discretionary" obligations and duties). Plaintiffs do not because they cannot. Plaintiffs' vaguely allege that the FBI "failed to take appropriate action in light of complaints made regarding Epstein and subsequently botched and covered up investigations for years." *Id.* ¶¶ 21, 110, 119. This broadside misses the mark of identifying a specific directive that governed the FBI's decision making. Absent such a mandatory directive, the FBI maintains discretion in how to conduct its investigations. This extends from the inception of an investigation (i.e. whether to follow up on a tip from the public), through its middle (i.e. determining which leads to pursue and devote investigatory resources), and to its conclusion (i.e. arresting a suspect).

Courts uniformly agree that law enforcement must be afforded broad discretion on whether and how to investigate and follow-up on information they received from the public. *See Thacker v. United States*, No. 06-cv-145, 2006 U.S. Dist. LEXIS 69046, at *9 (N.D. Fla. Aug. 15, 2006) (dismissing FTCA claim where plaintiff "failed to identify a specific and binding directive that addresses the investigation of complaints of perjury or the use of false information by local law enforcement and prosecutors in state criminal prosecutions and requires FBI or DOJ employees to investigate such complaints."); *Manchanda v. Reardon*, No. 23-cv-9292, 2024 U.S. Dist. LEXIS 18025, 2024 WL 382116, at *7 (S.D.N.Y. Feb. 1, 2024) ("[A] federal law enforcement agency's decision to conduct an investigation in response to reports of criminal activity is a discretionary function that is not cognizable under the FTCA.)

(citing, *inter alia*, § 2680(a)). Any other result "would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter*, 441 F.3d at 312.

The FBI employees who received tips from the public were not constrained to take mandatory and specific steps during their assessment of the tips. FBI personnel retain discretion to determine whether a tip indicates a credible threat that is appropriate for FBI involvement. The decisions of how to analyze and assess the information gathered and whether to forward the tips to a Field Office were each imbued with discretion, without which the FBI could not perform its investigative and law enforcement functions. *Rosas v. Brock*, 826 F.2d 1004, 1010 (11th Cir. 1987) (finding that "if a discretionary decision is made without following mandated procedures, it is an abuse of discretion and, as such, protected from judicial review.")

Separate and distinct from the decision on how to follow-up on tips are the myriad of subsequent investigatory decisions that FBI agents in the relevant field offices would have made, which demand the exercise of discretion throughout. "FBI agents, like detectives and police officers must evaluate whether the information requires immediate action, deferred action, or no action at all." *Gonzalez*, 814 F.3d at 1029. The FBI field office would have determined for itself whether any specific fact revealed a credible threat that was appropriate for FBI involvement and whether to take any action. If FBI agents had decided to act, they would have had discretion to decide how to act, including the ultimate law enforcement decision of what steps to take to prevent potential criminal conduct. In exercising that discretion, considerations such as the feasibility of interviewing the complainant or the subject of the complaint, how to locate and identify the subject, the use and availability of potential witnesses, the value of any documentary evidence, whether the evidence was consistent or contradictory, and whether to refer the matter for possible prosecution may come into play. And even if the FBI had failed to take some preliminary mandatory action (such ignoring a tip in 1996, TAC ¶ 79), the FBI ultimately would have had discretion in all remaining steps of its investigatory decision tree.

### ii. Federal Law Enforcement Officers' Decisions on Whether and How to Conduct Criminal Investigations Are Grounded in Public Policy

If no mandatory directive controls the governmental conduct at issue, the second part of the discretionary function analysis requires the court to "determine whether the discretion involved in the governmental act 'is the kind that the discretionary function was designed to shield.'" *Gaubert*, 499 U.S. at 322-23. The FBI's discretionary decisions on how to conduct a criminal investigation are grounded in public policy and thus protected from hindsight review. *See Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991) (finding that the decision whether or not to investigate was "at the core of law enforcement activity" and involved the type of decision making that section 2680(a) was designed to protect); *Martinez*, 587 F. Supp. 2d at 249 (holding that "[t]he decision to allocate limited governmental resources to investigate a reported crime . . . is a discretionary function" and noting that "'[t]he federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy'" (quoting *Gray*, 712 F.2d at 514)).

When the FBI analyzes which matters to undertake, it engages in a complex balancing act between the allocation of limited investigatory resources, the gravity of the alleged offenses, and the credibility of the allegations (among many other considerations). Indeed, the FBI "is not required to investigate every complaint filed." *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010). Here, how the FBI received information from the public, how it evaluated the information received and how it responded to that information via allocating resources and personnel, were grounded in public policy. The second part of the *Gaubert* test is also met here because decisions of whether to investigate an individual "are at the core of law enforcement activity" that the discretionary function exception "was designed to safeguard." *Kelly*, 924 F.2d at 362. After all, "the ability of an investigator to choose the way in which an investigation will proceed is undoubtedly grounded in considerations of public policy." *Littell v. United States*, 191 F. Supp. 2d 1338, 1345 (M.D. Fl. 2002); *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) ("Investigations . . . clearly

require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation.").

Moreover, to the extent Plaintiffs' claims predicate liability on the assumption that, had the FBI followed up on tips then the FBI would have prevented Epstein from acting, such a claim falls within the discretionary function exception because it challenges policy-based decisions on whether and how to enforce statutes authorizing the FBI to investigate potential crimes. *McCloskey*, 385 F. Supp. 2d at 81; *see also Smith*, 375 F.2d at 247-48 ("The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy."); *Shuler*, 531 F.3d at 934 (FBI's decision on when to arrest drug-trafficking boss fell within discretionary function exception); *cf. Flammia v. United States*, 739 F.2d 202, 205 (5th Cir. 1984) (decision to release immigration detainee who was a known violent felon protected by the discretionary function exception).

In sum, the second prong of *Gaubert* applies. Because both prongs of the discretionary function exception are met here, the United States has not waived its sovereign immunity over Plaintiffs' negligence claim, warranting its dismissal.

### D. The FTCA Does Not Permit Recovery for "Institutional" or "Systemic" Torts Like the One Alleged Here

The Court must dismiss this action because it relies entirely on generalized allegations of a decades long institutional failure by the FBI as an entire agency, rather than specific acts of negligence by individual FBI employees. The FTCA's limited waiver of the United States' sovereign immunity makes the United States liable only "to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674. The FTCA defines "employee of the government" to include "officers and employees of any federal agency," as well as "persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. The terms "person" and "employee of the government" as used in 28 U.S.C. § 2671 do not include institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1054 (2005). Instead, the term "employee" is meant to be limited to individuals, and the term "persons" is to be limited to natural persons. *Id.* at 1053-55. *Cf. Mohamad v. Palestinian Authority*, 566

U.S. 449, 454 (finding that in "everyday parlance," the word "individual" typically refers "unmistakably to a natural person."). Hence, a plaintiff cannot assert "systemic" or "institutional" tort claims under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability under the FTCA.

Recently, in *Lee v. United States*, No. 19-8051, 2020 U.S. Dist. LEXIS 211198, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), a district court applied *Adams* in an FTCA action based on the "generalized negligence" of various government employees, contractors, and agents responsible for operating a prison facility. *Id.* at *6. The court dismissed plaintiff's FTCA claims, holding that the FTCA did not apply to "generalized theories of negligence asserted against the staff and employees of federal institutions as a whole." *Id.*

Here, as in *Lee*, Plaintiffs broad-brush allegations amount to "systemic" or "institutional" claims based on tortious conduct of the FBI as an entire agency. Throughout the Third Amended Complaint, Plaintiffs complain of generalized tortious conduct by the FBI writ large, rather than specific tortious conduct on the part of specific federal employees. *See, e.g.,* TAC ¶ 9 ("Plaintiffs seek to finally hold the FBI accountable"), ¶ 21 ("The FBI's repeated and continued failures, delays, and inaction allowed Epstein and others to continue their sex trafficking conspiracy for twenty-five years."), *and* ¶ 110 (alleging that the FBI "breached its duty, failed to take appropriate action and botched and covered up investigations for two decades."). To that extent, the Court lacks subject-matter jurisdiction and must dismiss this action, as the FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6; *see also Boyle v. United States*, 605 F. Supp. 3d 653, 659 (E.D. Pa. 2022) ("Because the tort must arise from an 'act or omission of any *employee* of the Government,' the FTCA does not waive sovereign immunity for claims based on corporate negligence.") (emphasis in original); *Daniels v. United States*, No. 20-cv-3893, 2021 WL 2327856, at *2 (E.D. Pa. June 1, 2021) ("The corporate negligence

claim is outside the Court's jurisdiction as created by the United States' waiver of sovereign immunity in § 1346(b) of the FTCA.").

### E. The Third Amended Complaint Is Subject to Dismissal Under Rule 12(b)(6) as a Shotgun Pleading That Fails to Plausibly Allege Causation

Finally, the Court should dismiss the Third Amended Complaint because is a classic "shotgun pleading" that violates Rules 8(a) and 10(b). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach City Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Here, Plaintiffs assert a vaguely defined claim of "negligent investigation," yet fail to directly link any specific FBI employee, investigative action (or non-action), or policy to their injuries. *See generally* TAC ¶¶ 116, 121. Threadbare allegations and recitations of the elements of a cause of action will not suffice to defeat a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "The simple allegation that a 'policy or custom' existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*." *Doe v. Harris County*, 751 F. App'x 545, 550 (5th Cir. 2018).

The Eleventh Circuit recently affirmed the dismissal of a negligence action with similar pleading deficiencies to those found here. In *Govan v. U.S. Dep't of Veterans Affs.*, 787 F. App'x 599 (11th Cir. 2019), the plaintiff sued the United States Department of Veterans Affairs ("VA") under the FTCA, alleging that VA lab personnel "were negligent in failing to follow VA policies and procedures." *Id.* at 601. The Eleventh Circuit agreed that the district court properly dismissed the complaint for failure to state a claim because "for the most part, [the complaint] does not identify what specific VA policies were violated, who violated them, or how exactly they were violated." *Id.* at 602-03. The court noted that the plaintiff did "identify with some particularity" an alleged VA policy that was violated by disclosing confidential information over the phone. *Id.* at 603. However, that was not enough to save the negligence claim because the plaintiff did not "specify which VA personnel allegedly

violated that policy[.]" *Id.* Here, Plaintiffs' Third Amended Complaint is similarly devoid of specifics on what FBI policies were violated, who violated them, and when or how exactly they were violated.

Further, Plaintiffs' claims are premised upon the FBI's alleged failure to "intervene" or "prosecute" Epstein. TAC at ¶¶ 21, 110, 112, 119. To show causation, a plaintiff must establish "a cause-and-effect relationship . . . between the alleged tortious conduct and the injury"—that is, cause in fact (or "actual" or "but-for causation")—as well as the "foreseeab[ility]" of the "conduct in question" producing the alleged harm—i.e., "proximate causation." *Smith v. United States*, 497 F.2d 500, 506 (5th Cir. 1974)). While the pleadings are murky as to what specific ultimate actions Plaintiffs' believe the FBI should have taken, what is clear is that Plaintiffs' claims rest on the unstated implication that their injuries could have been avoided if the Palm Beach Police Department had conducted its investigation differently, or if state or federal prosecutors had criminally charged Epstein earlier than state authorities did on July 19, 2006 (or imposed a harsher plea agreement). *See* TAC ¶¶ 86-89 (referencing the criminal investigation conducted by the Palm Beach Police Department), ¶¶ 17-19, 30 (referencing the "suspicious" and "unusual" plea deal Epstein reached with federal prosecutors in September 2008) *and* ¶¶ 100-102 (referencing Epstein's plea deal with the Palm Beach County State Attorney's Office that resulted in a thirteen month jail sentence which concluded on July 22, 2009).

The FBI does not "prosecute" criminal defendants—prosecutors do. Nor does the FBI control the investigatory decisions of state police departments, the sentencing decisions of judges, or the detention decisions of prison officials. In other words, the consequences of the FBI's conduct are inextricably tied to the subsequent independent, discretionary decisions of various state and federal law enforcement agencies, prosecutors' offices, judges, prison officials, and private citizens. Plaintiffs conspicuously omit this *Palsgraf*esque[8] sequence of intervening third-party actors, any of whom would sever any cause-and-effect relationship between the FBI's

---

[8] *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339 (1928).

allegedly tortious conduct and Plaintiffs' injuries. This Court may draw on its "judicial experience and common sense," at the motion-to-dismiss stage to conclude here that Plaintiffs' theory of causation is implausible, in that Plaintiffs' allegations do not raise the reasonable inference of either actual or proximate causation. *See Iqbal*, 556 U.S. at 682. Accordingly, the Third Amended Complaint is an impermissible shotgun pleading and should be dismissed.

## III.     CONCLUSION

For these reasons, the United States' motion to dismiss should be granted, and the Court should dismiss this action.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:     *John S. Leinicke*
JOHN S. LEINICKE
ASSISTANT UNITED STATES ATTORNEY
Fla. Bar No. 64927
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9212
E-mail: john.leinicke@usdoj.gov

By:     *Steven R. Petri*
STEVEN R. PETRI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. A5500048
United States Attorney's Office
Southern District of Florida
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 660-5799
E-mail: steve.petri@usdoj.gov

*Counsel for United States of America*