**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 9:25-CV-80880 LEIBOWITZ**

**JANE DOE 1, et al.,**

              *Plaintiffs*,

**vs.**

**UNITED STATES OF AMERICA,**

              *Defendant*.

_____/

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT UNITED STATES OF AMERICA'S**
**MOTION TO DISMISS**

## <u>Table of Contents</u>

INTRODUCTION .............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 3

FACTUAL BACKGROUND ............................................................................................ 4

LEGAL ARGUMENT ...................................................................................................... 4

   I.    Legal Precedent and the FBI's Prior Actions Support Denial of Defendant's Motion. ..... 5

   II.   The Discretionary Function Exception Does Not Bar the Present Case............................. 6

      A.   The Discretionary Function Exception Does Not Bar Claims When Plaintiffs Have Alleged Violations of a Mandatory Policy. .............................................................. 6

      B.   The Conduct at Issue is the Failure to Follow Mandatory Policies. ............................... 6

      C.   Refusal to Follow Internal Policies is Not Discretionary. .............................................. 7

      D.   There is no Public Policy of Failing to Investigate Credible Threats of Sex Trafficking and Child Abuse............................................................................................. 11

      E.   The FTCA Does Not Grant the FBI Blanket Immunity From Suit. ............................. 12

      F.   In the Alternative, Jurisdictional Discovery Would Provide Further Information About Mandatory Policies and Procedures that the FBI Violated.................................... 13

   III.   The Statute of Limitations Does Not Bar these Claims Because Plaintiffs Plausibly Alleged They Did Not Discover Their Injury Due to the FBI's Negligence Until 2023.......... 13

   IV.   Defendant Improperly Narrows Plaintiffs' Negligence Claim by Arguing that a Specific "Negligent Investigation" cause of action does not exist under Florida Law. ........... 15

   V.   Defendant's Argument Regarding Liability For "Institutional" or "Systemic" Liability is Entirely Unfounded and Nonsensical. ................................................................... 16

   VI.   Plaintiffs Adequately Pleaded Proximate Cause........................................................... 17

CONCLUSION.................................................................................................................. 19

## INTRODUCTION

Plaintiffs Jane Does 1-32, Sandra Ward, and Laura Newman bring this action seeking accountability from the FBI for its failure to adequately investigate Jeffrey Epstein's sex trafficking ring, despite numerous credible tips and complaints, resulting in Plaintiffs' sexual abuse. Defendant, in turn, seeks to curtail Plaintiffs' claims before any discovery, in contradiction to well-established precedent. Specifically, this Court has already adjudicated the precise issues that are the subject of this motion – whether Defendant can choose to violate its own rules requiring investigation of credible tips with impunity – in Plaintiffs' favor, warranting denial of Defendant's motion.

In an analogous case, *In re Marjory Stoneman Douglas High Sch. Shooting FTCA Litig.*, 482 F. Supp. 3d 1273, 1277 (S.D. Fla. 2020)(hereinafter "*Marjory Stoneman Douglas*"), this Court twice denied the Government's motion to dismiss on the grounds that failure to properly investigate a credible tip in advance of the Parkland school shooting was not a discretionary function or, at the very least, warranted discovery before the issue could be adjudicated at summary judgment. *See* Merson Decl., Exhibit 1 (citing *In re Marjory Stoneman Douglas High Sch. Shooting FTCA Litig.*, 482 F. Supp. 3d 1273, 1277 (S.D. Fla. 2020)). The same is true here, requiring denial of Defendant's motion.

Similarly, in the analogous matter of Larry Nassar's serial sexual abuse of children, the FBI was confronted with its failure to investigate Larry Nassar's sexual abuse of children after it received one tip about it. Yet, rather than move to dismiss or dispute liability, as has occurred here, the FBI confirmed that "these allegations should have been taken seriously from the outset," and accepted responsibility for its negligence by settling with the plaintiffs pre-suit. Merson Decl., Exhibit 2 (*citing Justice Department Reaches Civil Settlement with Victims Abused by Nassar*, DEP'T. OF JUST. (Apr. 23, 2024, last visited October 15, 2025) https://www.justice.gov/archives/opa/pr/justice-department-reaches-civil-settlement-victims-abused-lawrence-nassar). The FBI would not pay $140 million for claims that could be summarily dismissed due to the discretionary function.

These two matters demonstrate conclusively that when the FBI failed to adequately investigate the numerous complaints and tips regarding the Epstein sex trafficking ring in violation of its own protocols, its motion to dismiss should be denied in the same manner as in *Marjory Stoneman Douglas*.

This is further confirmed by Defendant's admission that if it did not follow its policies or procedures, its actions were not discretionary and the case should not be dismissed. (*See* Def. Br. at p. 13). Indeed, Kash Patel, the current head of the FBI, criticized the prior FBI Epstein investigation and announced, "The original case involved a very limited search warrant or set of search warrants, and didn't take as much investigatory materials as it should have seized." Rebecca Beitsch, *Lawmakers interview Acosta amid accusations he mishandled Epstein case*, THE HILL, (Sept. 19, 2025, last visited Oct 15, 2025) https://thehill.com/homenews/house/5513222-acosta-testimony-house-oversight/. [1]

That Defendant violated its own rules is evidence, even at this pre-discovery stage, based on publicly available documents that provide the FBI's policies and procedures requiring immediate evaluation and investigation of complaints of child sex trafficking, rape or erotica, including an FBI guidebook requiring all tips to be taken seriously and thoroughly evaluated. Given that there was a complete failure by the FBI to interview victims from Epstein's seized telephone messages, the FBI violated its own policies by ignoring reports of child erotica, rape, sex with minors and human trafficking.

For instance, here, Maria Farmer complained to the FBI in 1996 that Jeffery Epstein was sexually abusing children. The FBI policies, attached as Exhibit 3 to the Merson Decl., require specific investigative steps to be taken, including procuring a signed witness statement from the victim, evidence, documents, and additional information set forth in Exhibit 3. The steps were not followed. The FBI violated its own policies and procedures, establishing that this is not discretionary, and the FBI's motion to dismiss should be denied. The same is true for tips received in 2001, 2005, 2006, and thereafter.

Moreover, Defendant's argument that it is bad policy to review the FBI's failure to investigate reports of child sex trafficking turns public policy on its head, as public policy favors protecting children from sexual abuse.

---

[1] Elizabeth Elkind, *House Democrats open probe into FBI's handling of Epstein documents*, FOX NEWS (Sept. 11, 2025, last visited Oct. 15, 2025) https://www.foxnews.com/politics/house-democrats-open-probe-fbis-handling-epstein-documents?msockid=0854519b534f6a6c0ee1458b52e76b25. To add insult to injury, the House Judiciary Committee announced they are probing the FBI over whether Director Kash Patel is willfully refusing to disclose information related to Jeffrey Epstein. *See id.*

Defendant's other arguments are no better. Defendant's statute of limitations argument is based on it being well-known that the FBI investigated Epstein, but the issue here is the negligent manner in which the FBI investigated Epstein, which only came to light within the last two years.

Defendant next argues that there is no Florida law for failure to appropriately investigate a crime, as if Plaintiffs are trying to create a new cause of action with that title; yet, this is a negligence action based on the FBI's violation of its own policies and protocols in the same manner as in *Marjory Stoneman Douglas*. Similarly, Defendant relies on a single Arizona District case to argue that it cannot be held liable for systemic neglect, yet ignores case law from courts in the Eleventh Circuit.

Finally, Defendant argues that Plaintiffs' twenty-seven-page Complaint is somehow a "shotgun pleading" because Plaintiffs cannot identify what policies were violated. While this is untrue, any vagueness about the FBI's violation of its policies is a byproduct of that information being exclusively within the FBI's control, providing further support for denial of the motion to dismiss so that discovery can commence.

Accordingly, Defendant's motion to dismiss should be denied in this case or, alternatively, jurisdictional discovery should be permitted, in accord with this Court's decision in *Marjory Stoneman Douglas*.

### STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), a court must presume that the complaint's factual allegations are true and construe them liberally in favor of the plaintiffs. *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 847 (11th Cir. 2022); *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 8-9 (11th Cir. 2025). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Little v. City of N. Miami*, 805 F.2d 962, 965 (11th Cir. 1986).

Courts follow a similar standard for motions brought pursuant to Rule 12(b)(1). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or

testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc*., 524 F.3d 1229, 1233 (11th Cir. 2008)(internal citations and quotations omitted).

## FACTUAL BACKGROUND[2]

This case concerns the FBI's decades-long violation of its policies and procedures to investigate Jeffrey Epstein's notorious sex trafficking, child abuse, and rape, even though it received repeat credible information warning of these actions. Due to the FBI's negligence, Plaintiffs were sexually abused, raped, penetrated by sex objects, and otherwise sex trafficked.

Plaintiffs have provided examples of the FBI's failure to follow these policies, including: failing to properly respond to a sex-abuse report received from Maria Farmer in 1996; failing to properly respond to tips and reports regarding sex trafficking of minors and sexual abuse of minors from 1996 until 2005; failing to investigate reports of a 14-year-old being sexually abused in Epstein's Palm Beach mansion; failing to interview the victims whose names were on a list of "Important Messages" from 2001 to 2005; prematurely closing an FBI file in the face of evidence of sex trafficking and minor sexual abuse; ignoring reports of suspicious banking; and failing to follow up on federal passport fraud. *See generally* TAC ¶¶ 77-116.

In allowing all this to happen, the FBI violated its own internal policies governing investigations, including a requirement to thoroughly investigate credible tips and communicate information to local law enforcement as set forth in the FBI guidebook. TAC ¶¶ 80, 119, 121. But ultimately the full picture of the FBI's negligence and the extent to which it deviated from mandatory internal policies remains within the exclusive control of Defendant. The FBI continues to hide this information from the public and from the Attorney General herself, who has publicly stated her frustration with the FBI's refusal to release this information and on February 27, 2025, by writing to FBI Director Patel, "[D]espite my repeated requests, the FBI never disclosed the existence of these files." Merson Decl., Exhibit 4 (*citing* Letter from Pamela Bondi, Attorney General of the United States to Kash Patel, Director of the Fed. Bureau of Investigation (Feb. 27, 2025, last visited Oct. 15, 2025) https://www.justice.gov/ag/media/1391331/dl?inline).

## LEGAL ARGUMENT

---

[2] This section (and memorandum) refers to the Third Amended Complaint ("TAC"). Plaintiffs amended this Complaint with consent from Defendant and leave of court upon transfer of venue from Washington, D.C. to add plaintiffs whose administrative exhaustion period had expired.

I.      **Legal Precedent and the FBI's Prior Actions Support Denial of Defendant's Motion.**

In a litigation arising from the Parkland school shooting, this Court denied this same Defendant's motion to dismiss. *Marjory Stoneman Douglas*, 482 F. Supp. 3d 1273, 1277 (S.D. Fla. 2020). The claim there was that the FBI had received a complaint about the shooter, but failed to timely act or investigate. *Id*. After the government moved to dismiss that case on discretionary function grounds, this Court denied the motion and ordered discovery. *Id*. When the government failed to comply with its discovery requirements, this Court again denied the government's motion to dismiss on discretionary function grounds.[3] *Id*. Given two opportunities to dismiss that Complaint on discretionary function grounds, this Court twice declined to do so. Plaintiffs request the same relief here.

In the similar Larry Nassar cases, the government settled those claims before a Complaint was filed. Those cases were filed after it was discovered many years after the sexual abuse that the FBI's Indianapolis field office had received a Complaint that Larry Nassar was molesting female gymnasts that he treated, including children. Merson Decl., Ex. 2. Rather than move to dismiss, however, the FBI accepted accountability for its negligence by settling the claims, and admitted, publicly, "these allegations should have been taken seriously from the outset." *Id*. The same is true here, but to greater effect, given that there is a lot more notice to the FBI in this case. As such, Defendant has admitted that in situations like the present one, where the Defendant fails to investigate despite allegations, it failed in its duty to take the "allegations…seriously from the outset," by investigating.

Defendant's motion to dismiss did not address either of these cases even though they are the two cases most closely analogous to this one and Defendant was an active participant in both actions. Instead, the government focused on cases that have nothing to do with the present case, as none cited by Defendant alleged that the FBI failed to follow its policies and procedures, as claimed here.

---

[3] The government ultimately settled that case before further discovery occurred. Merson Decl., Exhibit 5 (citing *Justice Department Announces Civil Settlement in Cases Arising from 2018 School Shooting in Parkland, Florida*, DEP'T. OF JUST. (Mar. 16, 2022, last visited Oct. 15, 2025) https://www.justice.gov/archives/opa/pr/justice-department-announces-civil-settlement-cases-arising-2018-school-shooting-parkland).

As such, Defendant's motion should be denied because it failed to provide this Court with any on-point case law. Moreover, in accordance with the relevant precedent – *Marjory Stoneman Douglas* and the Nassar settlements – the discretionary function defense should not bar Plaintiffs' claims.

## II.     The Discretionary Function Exception Does Not Bar the Present Case.

### A.  The Discretionary Function Exception Does Not Bar Claims When Plaintiffs Have Alleged Violations of a Mandatory Policy.

Defendant acknowledged (Def. Br. at p. 13) that the failure to follow policies or procedures is not discretionary. Given that those are Plaintiffs' claims, Defendant's motion should be denied.

Defendant's lengthy discussion of the Federal Tort Claims Act ("FTCA") outlines that (1) this Court must focus on the specific conduct at issue; and (2) the Supreme Court has outlined a two-step analysis to determine whether the discretionary function exception applies. Yet, Defendant ignores the specific conduct at issue and argues that the FBI's actions always fit within the discretionary function exception. That is wrong. Plaintiffs have alleged undisputed, injurious violations of non-discretionary obligations, which is what matters at this point. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(complaints should proceed "even if it strikes a savvy judge that actual proof of the [alleged] facts is improbable, and that a recovery is very remote and unlikely.")(internal quotation marks omitted).

### B.  The Conduct at Issue is the Failure to Follow Mandatory Policies.

Plaintiffs allege that between 1996 and 2005, the FBI continuously received direct reports, complaints, and tips concerning the illegal sex trafficking of women and underage minors committed by Epstein and his associates. In response, the FBI failed to act upon and investigate the complaints and tips and failed to comply with protocol and guidelines. (TAC ¶ 80). For example:

- The FBI deviated from its policies (set forth in detail in Plaintiffs' Exhibits 3 and 6) by failing to timely investigate reports, tips, and evidence of sexual abuse and sex trafficking by Epstein and others. (TAC ¶ 8).
- When the FBI seized Epstein's telephone messages, the FBI failed to contact or interview the victims despite having their names and telephone numbers, and labeling them. A comprehensive investigation was not conducted in violation of FBI protocols despite phone numbers listed on the seized "important messages." (TAC ¶ 94).
- The FBI's guidebook requires that tips "must all be taken seriously and thoroughly evaluated." (TAC ¶ 107).

6

- The FBI had non-discretionary obligations, governed by established protocols, to handle and investigate tips concerning underage child erotica, rape, sex with minors, and sex trafficking in a reasonable manner and to act against Epstein to prevent him from committing repeated crimes. Yet, contrary to its own rules, the FBI breached its duty by failing to take appropriate action and covered up the investigations for two decades. (TAC ¶ 110).
- The FBI was negligent when it did not respond nor appropriately investigate the allegations, failed to notify the appropriate FBI field office or state or local authorities of the allegations, and failed to take other steps to mitigate the ongoing threat posed by Epstein and associates. (TAC ¶ 112).
- Speaker of the House Mike Johnson stated that President Trump was an FBI informant; if President Trump informed the FBI, then the FBI knew that Epstein was sex trafficking young women and children but failed to act. (TAC ¶ 4).

Even Kash Patel, the head of the FBI, admitted "The original case involved a very limited search warrant or set of search warrants, and didn't take as much investigatory materials as it should have seized." *See* Rebecca Beitsch, *Lawmakers interview Acosta amid accusations he mishandled Epstein case*, THE HILL, (Sept. 19, 2025, last visited Oct 15, 2025) https://thehill.com/homenews/house/5513222-acosta-testimony-house-oversight.        Defendant acknowledges on the first page of its brief that the conduct at issue is the FBI's failure to follow its mandatory policies of investigating credible tips of criminal sex trafficking. Since that is what Plaintiffs have alleged, these allegations must be deemed true for the purpose of this motion. *Stephens v. HHS*, 901 F.2d 1571, 1573 (11th Cir. 1990). Since Defendant acknowledges that a failure to follow its own policies is not subject to the discretionary function exception (*see* Def. Br. at p. 13), this, in and of itself, requires denial of Defendant's motion.

### C. Refusal to Follow Internal Policies is Not Discretionary.

At step one of the *Gaubert* analysis, courts consider whether the challenged conduct "involves an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The discretionary function exception does not apply when the government actor failed to "perform its clear duty" or "act in accord with a specific mandatory directive." *Id.* at 545.

Here, Plaintiffs alleged that Defendant failed to follow a mandatory directive investigate Epstein's crimes. *See* TAC at ¶¶ 21, 110, 119, 121. That is the kind of non-discretionary conduct covered by the FTCA. *See McMichael v. United States*, 856 F.2d 1026, 1033 (8th Cir. 1988)(denying motion to dismiss FTCA claim where defendant did not follow mandatory policy directive); *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003)(defendant did not

7

meet its burden of demonstrating that the discretionary function exception applied); *Fleming v. United States*, 69 F. Supp. 2d 837, 841 (W.D. Va. 1999)(denying motion to dismiss FTCA claim where Plaintiffs pointed to internal memo as evidence of mandatory policy).

Defendant attempts to counter the allegations by arguing that Plaintiffs "do not [cite any specific policies] because they cannot." Def. Br. at 13. Yet, even with Plaintiffs' limited access to information held by the FBI, there exists publicly available information demonstrating the existence of policies violated by the FBI. For example, the Attorney General's Guidelines for Domestic FBI Operations provide: "[w]hen credible information is received by an FBI field office concerning serious criminal activity not within the FBI's investigative jurisdiction, the field office *shall* promptly transmit the information or refer the complainant to a law enforcement agency having jurisdiction." Merson Decl., Exhibit 6, Fed. Bureau of Investigation Guidelines, § VI(C)(2))(emphasis added).

Sex trafficking is specifically addressed in the FBI manual under Section 31, which sets forth steps that must be taken in sex trafficking cases. Merson Decl., Ex. 3 (citing Fed. Bureau of Investigation Manual, § 31 et. seq.). They use mandatory language such as "any" and "all." These policies explicitly state:

> "Agents should bear in mind that the Department's instructions to the USAs do not change the Bureau's position in any manner with regard to the necessity for **thoroughly handling all** [sex-trafficking] cases. These instructions **increase our responsibility** of developing and bringing to the attention of the USA all facts which indicate that prosecution is warranted."

*Id*. at § 31-3.1 (emphasis added). Specifically, Maria Famer complained that she was sex trafficked as a child by Jeffrey Epstein in 1996. TAC ¶¶ 79, 108. The procedures for handling her case as of 1996 was set forth on page 5 and top of page 6 is as follows:

**31-4 INVESTIGATIVE PROCEDURES**

(1) The primary step in any WSTA investigation is to secure a signed statement from the victim, showing the interstate transportation for prostitution or any sexual activity for which any person can be charged with a criminal offense. In prostitution cases care should be taken not to create any basis for a charge of intimidation or inducement in obtaining statements from the victim, since the courts have held that the individual may be found guilty of conspiracy to violate the act although the conspiracy involved that person's own transportation.

8

(2) Secure all possible evidence to corroborate the statement of the victim by interviewing that individual's relatives and associates and other persons in a position to give pertinent
-information.

(3) Secure all possible documentary evidence to corroborate the statement
 of the victim. [REDACTED FROM PUBLIC RECORD]

(4) Interviews with victims of this type of case or with informants or others involved in alleged law violations are at all times to be conducted in a completely businesslike manner.
Precautions should be taken to prevent the interviewing employee becoming involved in  compromising situation. Where such interviews are to be conducted in hotel rooms or other places out of the presence of witnesses, every effort should be made to have present a second Bureau employee.

**31-4.1 Essential Facts to Obtain**
As to persons involved:

(1) The names (with aliases), descriptions, brief personal histories, reputation, marital status, and identification records of subject and victim.

(2) Previous acquaintances and attendant relations between subject and victim.

(3) The facts as to the places of residence of victim when that individual is an alien, as well as the probable immoral purposes connected with that individual's immigration; and the place of birth, citizenship, naturalization status, date of last entry into the U.S., port of entry, and means of travel to the U.S. of any subject or victim who might be an alien.

Merson Decl., Ex. 3, §§31-4, 31-4.1. None of this was done. TAC ¶¶ 79, 108.

Similarly, in 2001 and 2005, again the FBI was informed that Jeffrey Epstein was sex trafficking young women and children. Again nothing was done. TAC ¶ 86. Further, in a 2024 hearing before Congress, the Director of the FBI testified, "how we handle evidence recovered in a criminal investigation *has all kinds of rules that apply to it.*" *Oversight of the Federal Bureau of Investigation Before the H. Comm. on the Judiciary*, 118th Cong. 38 (July 24, 2024)(statement of Christopher A. Wray, FBI Director)(emphasis added).

Moreover, if Defendant seeks to imply that there are *no* policies the FBI must follow, not only is this patently false, based on the above, but it is also factually unsupported, as the FBI, who, unlike Plaintiffs, have unfettered access to their own policies and information, fail to provide any evidence, including certifications or declarations, demonstrating a lack of such policies. Further,

any such argument constitutes a factual dispute that should be made after discovery at summary judgment. Indeed, that is exactly how this Court resolved this same issue when private parties brought FTCA claims against the FBI for a failure to investigate credible tips about Nikolas Cruz before he murdered 17 people in the Parkland school shooting. *Marjory Stoneman Douglas*, 482 F. Supp. 3d 1273, 1277 (S.D. Fla. 2020). There, too, the plaintiffs alleged that the FBI breached its mandatory policies in failing to follow up on credible tips, leading to a preventable and horrifying national tragedy. *Id.* This court twice denied motions to dismiss the case based on the discretionary function exception due to the existence of factual disputes as to the scope of those internal policies. *Id.* As in that case, what matters now are Plaintiffs' well-pleaded allegations that the FBI did violate its mandatory policies.

Defendant also claims that all law enforcement actions are discretionary by relying on cases that do not allege the conduct at issue here – failure to follow mandatory obligations. Deft. Br. at 11-13; citing *Engel v. FBI*, U.S. Dist. LEXIS 80266, at *2 (D.D.C. Apr. 28, 2025)(dismissing complaint with "confused and rambling narrative of charges and conclusions [that] does not comply with the requirements of Rule 8" and sought to compel the FBI to arrest individuals not charged with a crime); *Zelaya v. United States*, 781 F.3d 1315, 1319-20 (11th Cir. 2015)(did not allege that the SEC violated any internal policies); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)("FDA clearly has significant discretion to choose which alleged violations of the Act to prosecute"); *Mesa v. United States*, 837 F. Supp. 1210, 1212 (S.D. Fla. 1993)(not allege violation of policies in exercising an arrest warrant against the wrong person); *Martinez v. United States*, 587 F. Supp. 2d 245, 246 (D.D.C. 2008)(*pro se* complainant sought damages because FBI did not take unspecified action in response to her calls about unspecified threats that were not alleged to be credible. The plaintiff also did not allege that any internal policies were violated.); *Gray v. Bell*, 712 F.2d 490, 510 (D.C. Cir. 1983)(applying the discretionary action function to a malicious prosecution claim and declining to reach issues of investigation); *Suter v. United States*, 441 F.3d 306, 312 ("there is no statute, regulation, or policy directive that mandates that the FBI choose to employ[] any particular investigative technique in carrying out [fraud and money laundering] investigations"); *O'Ferrell v. United States*, 253 F.3d 1257, 1266 (11th Cir. 2001)(summary judgment for mandatory policy against physical violence was not violated when interrogating officers threatened the plaintiffs with the death penalty); *Mid-S. Holding Co. v. United States*, 225 F.3d 1201, 1205 (11th Cir. 2000)(customs agents to search boats contains discretionary language);

*Gordo-González v. United States*, 873 F.3d 32, 36 (1st Cir. 2017)("no federal statute, regulation, or policy that dictates any specific supervisory actions that her ex-husband's superiors were required to take"); *Shuler v. United States*, 531 F.3d 930, 935 (D.C. Cir. 2008)(non-specific personal promise from a government agent to an individual citizen to protect the citizen is not a mandatory objective).

None of those cases support dismissal on a motion to dismiss when it is alleged that a policy, procedure or duty was violated. In fact, the decisions most on point from this Court have denied the exact relief that the defendant seeks here. *See Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1277.

> **D. There is no Public Policy of Failing to Investigate Credible Threats of Sex Trafficking and Child Abuse.**

Defendant contends that "The FBI's discretionary decisions on how to conduct a criminal investigation is grounded in public policy and thus protected from hindsight review." Yet this argument fails because (i) Defendant fails to identify any public policy that would serve as the basis for ignoring multiple specific complaints of child sex trafficking, and (ii) public policy supports protecting children from sex crimes.

While Defendant claims broadly that its decisions are based on public policy, Defendant makes no effort to explain what public policy favors ignoring threats to children or the existence of a child sex trafficking ring. Consequently, if one were to accept Defendant's blanket statement that its decision to ignore the complaints of child sexual abuse is "grounded in public policy," merely because Defendant says so, it would eviscerate the *Gaubert* test, as any defendant can simply state that their decision was grounded in public policy, regardless of the legitimacy of such a claim or the existence of any such public policy. *Cope v. Scott*, 45 F.3d 445, 448-49 (D.C. Cir. 1995).

In stark contrast, and as should be obvious, there is a strong public policy in protecting children, especially from sex crimes. This is seen in the nation-wide laws protecting children, by, among other things, creating a minimum age for consent and prescribing strong penalties and punishments for child sexual abuse and sex trafficking. [4]

---

[4] "Particular attention should be paid to any situation or report that a pedophile may have transported a minor in interstate or foreign commerce to engage in any sexual activity for which any person can be charged with a criminal offense. These amendments to the Mann Act (Public Law 99-628, 11/7/86) provide the Bureau with excellent criminal statutes to investigate those

If the defense is encouraging this Court to make a public policy decision, that clearly favors not dismissing this case brought by 34 women who were sex trafficked and sexually abused by Jeffery Epstein when they were young adults or children because the FBI did not properly investigate the many reports that it had received about this conduct.

**E.  The FTCA Does Not Grant the FBI Blanket Immunity From Suit.**

As Defendant concedes, the second prong of *Gaubert* only applies "[i]f no mandatory directive controls the governmental conduct at issue" Def. Br. at p. 15 (emphasis added). As discussed above, Plaintiffs adequately alleged that the conduct at issue was the failure to follow policies and directives, making analysis under this prong irrelevant. But even if that were not true, Defendant also failed to establish entitlement to relief at the second step as well.

Not all discretionary functions are exempt from FTCA liability. Even if the conduct does involve some element of judgment or choice, a court must still consider whether the "judgment is of the kind that the discretionary function exception was designed to shield," *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)(quoting *Berkovitz*, 486 U.S. at 536). "Were the discretionary function to encompass all actions for which the actor had some choice, it would fully eclipse the FTCA's general waiver of immunity. The courts must exercise restraint in insulating the government from nearly all tort liability because to do so would frustrate Congress's purpose in enacting the FTCA." *Sexton v. United States*, 132 F. Supp. 2d 967, 972 (M. D. Fla. 2000); *see Alvarez v. United States*, 23-24130-CIV-MORENO, 2024 U.S. LEXIS 144448, at *12 (S.D. Fla., Aug. 8, 2024).

Defendant quotes *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010), omitting context crucial to its holding, to argue that all FBI investigative decisions are discretionary. However, the full sentence reads "Under 28 U.S.C. § 535(a), the FBI '*may* investigate' certain crimes involving a Government official or employee; but it is not required to investigate every complaint filed." *Id.* At 81 (emphasis in original). Therefore, *Wightman-Cervantes* merely determines whether one statute, unrelated to the matter at hand, is mandatory or permissive in nature. It does not provide blanket immunity for all FBI behavior. Their reliance on

---

individuals who take children across state lines or out of the country and then sexually abuse them. Violations of Title 18, USC, Sections 2421, 2422 and 2423 are to be investigated by the FBI." Merson Decl., Ex. 3, § 31-3.1.1.

this case is wrong, as it thankfully does not extend this statutory discretion to matters of child sex-trafficking.

Even if this Court were to ignore Plaintiffs' well-pleaded allegations, it should not accept Defendant's unsupported claims that the second prong of *Gaubert* applies to the present case.

### F. In the Alternative, Jurisdictional Discovery Would Provide Further Information About Mandatory Policies and Procedures that the FBI Violated.

Even though Plaintiffs have overcome the discretionary function exception, if the Court determines they have not, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery in lieu of dismissal. Courts within the Eleventh Circuit liberally grant jurisdictional discovery, because plaintiffs are entitled to evidence that would allow them to establish jurisdiction when in dispute. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729-730 (11th Cir. 1982)("jurisdictional discovery is not entirely discretionary, and this appears to be the better view."); *Alvarez v. United States*, 207 F. Supp. 3d 1291, 1300, fn. 13 (M.D. Fla. 2016)(allowed extensive jurisdictional discovery before the motion to dismiss was determined); *Frederic v. United States*, Omnibus Order, No. 18-62758-civ-dimitrouleas, Docket No. 27 (S.D. Fla. April 15, 2019)(permitting jurisdictional discovery to determine whether the discretionary function applies to the FBI's failure to investigate a credible tip); *Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1277.

### III.    The Statute of Limitations Does Not Bar these Claims Because Plaintiffs Plausibly Alleged They Did Not Discover Their Injury Due to the FBI's Negligence Until 2023.

Defendant takes several pages to outline a straightforward legal standard: the statute of limitations for FTCA claims can be equitably tolled if the Plaintiffs could not have discovered the tortious conduct through reasonable diligence. *United States v. Kwai-Fun Wong*, 575 U.S. 402, 420 (2015)("FTCA's time bars are nonjurisdictional and subject to equitable tolling").

Plaintiffs have plausibly alleged that they were not able to discover the cause of their injury – the FBI's failure to follow its policies and procedures – until recently, which Defendant acknowledge on page 3 of its brief. *See* TAC ¶ 31; Def. Br. at pp. 3-4. At this stage, that suffices. "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). A fact-dependent statute of limitations dispute "cannot be resolved at this stage of the litigation [when] such resolution would depend either on facts not yet

in evidence or on construing factual ambiguities in the complaint in Defendant's favor, which would be inappropriate." *Omar v. Lindsey*, 243 F. Supp. 2d 1339, 1347 (M.D. Fla. 2003) *aff'd on the same grounds by Omar v. Lindsay*, 334 F.3d 1246 (11th Cir. 2003). There is nothing on the face of this complaint which demonstrates that this action is time-barred.

Whether this Court applies the discovery rule or the equitable tolling standard, the result is the same; Plaintiffs could not reasonably have discovered the extent of the FBI's tortious failures until recently, when the JP Morgan litigation revealed the causal link between the FBI investigation and the Epstein sex-trafficking ring in 2023, thereby tolling the statute of limitations. TAC ¶ 15. Indeed, Plaintiffs could not discover the tortious conduct because no one knew about it until 2023 as the FBI would not, and still will not, release its file. As such, Defendant cannot rely on its own refusal to disclose information as the basis for its claim that the statute of limitations has expired.

Defendant relies upon two sources that they allege should have given Plaintiffs' notice of the connection between the FBI and their injuries, yet neither of these sources mention that the FBI received a credible tip in 1996. Def. Br. at p. 2, fn. 1-2. Both of these sources focus on the actions of U.S. Attorneys, such as Alex Acosta, not FBI agents. Both of these sources predate the House Committee on Oversight and Government Reform investigation related to the FBI's mishandling of the Epstein investigation, which was known only in 2025.

As recent events have made clear, the FBI's role in the Epstein sex trafficking ring remains shrouded in mystery. This year, the Attorney General demanded that the FBI reveal evidence that it refused to disclose. Attorney General Bondi wrote in February of 2025 that she "learned from a source that the FBI Field Office in New York was in possession of thousands of pages of documents related to the investigation and indictment of Epstein. Despite my repeated requests, the FBI never disclosed the existence of these files." Merson Decl., Ex. 4 at 1. It is implausible to expect that Plaintiffs could have been more diligent and successful in unearthing this information than the Attorney General herself.

Defendant argues that such tolling does not apply to Courts in the Eleventh Circuit. However, Defendant only cites cases that pre-date the Supreme Court's decision in *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). *Kwai Fun Wong* set a nationwide standard that courts within the Eleventh Circuit may not ignore: that equitable tolls are applicable to cases involving sovereign immunity just as they apply in private litigation. *United Id.* at 408. This decision explicitly states, "Our old 'ad hoc,' law-by-law approach to determining the availability of tolling

14

in those suits, we reasoned, had produced inconsistency and 'unpredictability' without the offsetting virtue of enhanced 'fidelity to the intent of Congress.'" *Id.*

Courts within the Eleventh Circuit adhere to the *Kwai Fun Wong* standard, as courts no longer refuse to consider tolling under the FTCA. *See e.g. Hernandez v. United States*, 771 F. Supp. 3d 1306, 1321 (S.D. Fla. 2025)(a case arising from a collision with a postal truck); *Cole v. United States*, No. 1:21-CV-4436-LMM-JSA, 2023 U.S. Dist. LEXIS 170684, at *6 (N.D. Ga. Feb. 22, 2023)(unhealthy prison conditions); *Labmd, Inc. v. United States*, 2023 U.S. Dist. LEXIS 34553, at *9, fn. 2 (N.D. Ga. Mar. 2, 2023, No. 1:21-cv-3525-MLB)(criminal cyber-attack); *McGuire-Mollica v. Fed. Bur. of Prisons*, No. 7:20-cv-01768-RDP-SGC, 2022 U.S. Dist. LEXIS 139854, at *9, fn. 1 (N.D. Ala. June 3, 2022)(unhealthy prison conditions).

The case law is clear that the statute of limitations should not bar Plaintiffs' claims. Here, the FBI has gone to great pains to conceal its negligence in the Epstein sex trafficking ring and it was not until 2023 that there was even an inkling that Plaintiffs' injuries were caused by the FBI's negligence. *See Omar v. Lindsay*, 334 F.3d 1246 (11th Cir. 2003). The Plaintiffs' SF-95 forms were served a short time later, well within the two-year statute of limitations.

## IV. Defendant Improperly Narrows Plaintiffs' Negligence Claim by Arguing that a Specific "Negligent Investigation" cause of action does not exist under Florida Law.

Defendant argues that there is no specific "negligent investigation" cause of action under Florida law, but such an argument misses the point entirely and is a strawman argument. In Plaintiffs' complaint, there is no cause of action for "negligent investigation," but there is one for negligence. Moreover, the same claim – negligence arising from failing to properly follow policies or procedures and investigate tips – was not dismissed in *Marjory Stoneman Douglas. See Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1277. Accordingly, Defendant's argument regarding the absence of a cause of action called "negligent investigation," is a strawman argument designed to avoid that failure to adequately investigate can support a "negligence" cause of action, which does exist.

The FTCA mandates that Courts establish duty through a private person analogue by finding a duty through like circumstances, not necessarily identical circumstances. *Indian Towing Co.*, 350 U.S. 61, 65 (1955). Under Florida law, the duty element is a "minimal threshold legal requirement for opening the courthouse doors" that "focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain*

*v. Florida Power Corp*., 593 So. 2d 500, 501 (Fla. 1992). Plaintiffs have met this threshold, as follows:

> The FBI instructs the public to report information about crimes. For example, on the "Contact Us" page of the FBI's website, the FBI instructs concerned citizens to "submit a tip" to report suspected criminal activity. The website tells the public, "If you see something, say something." The FBI website says, "We protect the American people and uphold the U.S. Constitution."

TAC ¶ 105. The FBI further induced reliance in the public by reassuring the public of their training, "world class training, tactics, science and technology and intelligence." TAC ¶ 106.

Here, identifying a private person analogue is straightforward. Florida law imposes liability on private parties who voluntarily undertake to provide services necessary for the protection of others and then perform negligently, even when those persons are not known to the undertaker at the time. *See, e.g., Vazquez v. Lago Grande Homeowners Ass'n*, 900 So. 2d 587, 593 (Fla. 3d D.C.A. 2004)("duty to guard against crime in this case is founded upon particular undertakings and hence obligations of the defendants to do so.")(collecting cases); *Dent v. Dennis Pharm., Inc*., 924 So. 2d 927, 929 (Fla. 3d D.C. 2006)("voluntary undertaking doctrine simply stands for the proposition that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. The undertaking of such an act foreseeably broadens the zone of risk to include unidentified third parties."); *accord Indian Towing Co.*, 350 U.S. at 65 (holding that the Coast Guard's operation of a lighthouse had a private analogue in the "good Samaritan" doctrine because the government undertook to provide a service and induced reliance).

Likewise, here, the FBI undertook a duty by soliciting tips and reports of criminal activity from the general public. The purpose of soliciting said tips and reports is public protection. By failing to take action when faced with credible tips, the FBI induced the public to rely upon them for their safety from crime. This is the same exact argument that was made in *Marjory Stoneman Douglas* and the same result should follow.

Accordingly, Plaintiffs have established a duty under Florida state law, along with a private person analogue exists under which duty can be established.

### V.     Defendant's Argument Regarding Liability For "Institutional" or "Systemic" Liability is Entirely Unfounded and Nonsensical.

In another strawman argument, Defendant concludes that Plaintiffs' claims amount to allegations of systemic negligence. However, Plaintiffs do not allege systemic negligence, they

allege negligence by individuals employed by Defendant. The notion that the FTCA mandates that a government agency's liability decreases when more employees act tortiously is absurd and should not be accepted by this Court.

In making its argument, Defendant relies entirely upon misapplied foreign case law. In *Lee v. United States*, an Arizona District Court case, the negligence alleged was failure to adopt and implement policies and procedures that would have prevented harm. *See Lee v. United States,* 2020 U.S. Dist. LEXIS 211198, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020); *but see Eduardo I.T. v. United States*, No. 22-cv-05333-DMR, 2023 U.S. Dist. LEXIS 236212, at *26 (N.D. Cal. Feb. 24, 2023)(Distinguishing *Lee* on the grounds that Plaintiffs alleged that unknown government employees committed tortious conduct). *Adams v. United States*, a Ninth Circuit decision, decided that the FTCA does not apply when an agency contracts with a <u>private</u> corporation that acts tortiously in fulfilling its government contract. *Adams v. United States*, 420 F.3d 1049, 1050-1051 (9th Cir. 2005). Defendant also cites two cases from the Eastern District of Pennsylvania that interpret a cause of action unique to Pennsylvania, making them irrelevant to the present case. *Boyle v. United States*, 605 F. Supp. 3d 653, 658-59 (E.D. Pa. 2022); *Daniels v. United States*, No. 20-3893, 2021 U.S. Dist. LEXIS 108492, at *2 (E.D. Pa. June 1, 2021). Even *Mohammed v. Palestinian Auth.*, the case cited by Defendant for the definition of "individual," explicitly states the opposite of what Defendant asserts. *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455 (2012)("This is not to say that the word 'individual' invariably means 'natural person' when used in a statute").

Courts within the Eleventh Circuit have declined to dismiss claims under the FTCA where the claims were based upon negligence of multiple or unspecified employees within an agency. *See e.g. Marjory Stoneman Douglas*, 482 F. Supp. 3d 1273 (S.D. Fla. 2020)(alleging a system-wide failure to investigate credible tips); *Starnes v. United States*, 2006 US Dist. LEXIS 94348 (S.D. Fla. Dec. 29, 2006)(alleging); *see also Wimberly v. Selent*, 2024 U.S. App. LEXIS 13557, at *10 (11th Cir. June 5, 2024)(holding that the FTCA is the proper legal claim when agents with different positions and operations within a single agency act tortiously).

Accordingly, Defendant's argument that Plaintiffs' claim falls outside of the scope of the FTCA is not only unsupported by law, but by simple logic.

**VI.    Plaintiffs Adequately Pleaded Proximate Cause.**

Defendant argues that Plaintiffs' Complaint is a "shotgun pleading" because Plaintiffs do not "directly link any specific FBI employee, investigative action (or non-action), or policy to their injuries." Def. Br. at p. 3. That is untrue as set forth repeatedly in this response. *See* pp. 1-10 herein. herein. Defendant's claim that Plaintiffs did not cite any investigative action or non-action in their complaint is patently false:

> In 2006, the FBI opened its own "investigation" into Epstein's child prostitution and sex trafficking operation, which went nowhere despite hard evidence of underage sex trafficking, child pornography, sexual assault and rape. The FBI and its agents deviated from its own rules and regulations required: to timely investigate the reports, tips, and evidence it had of rampant sexual abuse and sex trafficking by Epstein and others and to protect the young women and children who fell victim to him for 20+ years. TAC, ¶ 8.

Here, Plaintiffs have alleged that the FBI ignored its mandatory policies to investigate credible tips of sex trafficking, rape, and child abuse. TAC ¶¶ 1-2, 21, 79-80, 110, 119, 121-22. While the FBI has all this information, Plaintiffs do not because discovery has not commenced. Plaintiffs pleaded allegations in the Complaint based on what is publicly available. Defendant does not provide *any* evidence disputing those allegations. Instead, Defendant asks this Court to ignore those allegations and counters by denigrating Plaintiffs' claims as "shotgun pleadings." Def. Br. at p. 18.

Defendant heavily relies upon *Govan v. United States VA*, 787 F. App'x. 599 (11th Cir. 2019), a case that does not even mention shotgun pleadings. It is also entirely distinguishable from the present case, because in *Govan*, the *pro se* plaintiff alleged that the defendant agency violated policy and procedures, but failed to allege that said violation caused "**any injury**." *Id*. at 603 (emphasis added). Conversely here, Plaintiffs explicitly pleaded damages. TAC, ¶ 123. Moreover, *Govan* was determined on an abuse of discretion standard of review. *Govan*, 787 F. App'x. at 601, fn. 1. This holding accordingly does not constitute a legal standard for information that must be pleaded in every FTCA action within the circuit.

Defendant also makes a misplaced comparison between this case and *Palsgraf v. LIRR* to assert that there are too many intervening factors to establish proximate cause (despite the fact that the opinion expressly does not reach the issue of proximate cause). The facts underlying *Palsgraf* concern a train employee jostling a passenger, causing the passenger's suitcase of fireworks to fall

and explode, causing a suspended weight further down the train platform to dislodge and fall, injuring a bystander. Conversely here, Plaintiffs bring suit against the FBI for the FBI's direct failures, along with a much more proximate connection, that the organization responsible for investigating interstate sex trafficking rings failed to follow mandatory directives to investigate an interstate sex trafficking ring, causing Plaintiffs to be sex trafficked by that very sex trafficking ring.

**CONCLUSION**

Accordingly, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety or in the alternative, order jurisdictional discovery.

Date: October 15, 2025

By: /s/Jordan K. Merson
Jordan Merson, Esq.
Jennifer Plotkin, Esq.
Merson Law, PLLC
*Attorneys for Plaintiffs*
950 Third Avenue, 18th Floor
New York, New York 10022
Telephone:(212)-603-9100
Facsimile : (347) 441-4171
Email : jmerson@mersonlaw.com
Email : jplotkin@mersonlaw.com


By: /s/Todd J. Michaels, Esq
Todd J. Michaels, Esq.
The Haggard Law Firm
*Attorneys for Plaintiffs*
330 Alhambra Circle
Coral Gables, FL. 33134
Office: (305) 446-5700
Cell: (305) 775-0339
Facsimile: (305) 446-1154
Email: tmichaels@haggardlawfirm.com

19