UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:25-CV-80880 Leibowitz / McCabe

JANE DOE 1, *et al.*,

    Plaintiffs,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

I. ARGUMENT ................................................................................................................. 1

    A. The "Diligence-Discovery Rule" Is Inapplicable Here, and There Is No Basis to Equitably Toll the FTCA's Two Year Statute of Limitations ...................... 1

    B. The FBI Owed No Legal Duty to Plaintiffs (1) to Conduct Its Investigations In a Non-Negligent Manner, or (2) to Protect Plaintiffs From Epstein ......... 4

    C. The FBI Policies Identified by Plaintiffs Are Discretionary, and Irrelevant ........................................................................................................ 8

    D. The Third Amended Complaint Is Most Fairly Read As Alleging an Institutional Tort ....................................................................................................... 9

    E. Plaintiffs Do Not Plausibly Allege Proximate Cause ....................................... 10

II. CONCLUSION ............................................................................................................ 11

The United States of America files the following reply in support of its Motion to Dismiss the Third Amended Complaint ("TAC").

## I. ARGUMENT

### A. The "Diligence-Discovery Rule" Is Inapplicable Here, and There Is No Basis to Equitably Toll the FTCA's Two Year Statute of Limitations

For each Plaintiff, their individual cause of action accrued on the date(s) that Epstein abused them between 1996 and 2017. *See* 28 U.S.C. § 2401(b). Plaintiffs each had two years from then to file an administrative claim with the appropriate federal agency. 28 U.S.C. §§ 2675(a), 2401(b)). They did not do so until May 2023 at the earliest. The TAC alleges that under the "discovery rule," Plaintiffs' administrative claims were still timely because "the information regarding Defendant's culpability—which is the predicate for Plaintiffs' timely claims…has only been partially revealed to the public." TAC, ¶ 31. The United States argued that the "diligence-discovery rule" does not apply because Plaintiffs' claims do not arise out of wrongful death or medical malpractice. *See* Motion, p. 3-7.

The Response does not rebut the government's argument. Instead, Plaintiffs pivot to argue that their claims are timely because the statute of limitations was equitably tolled. Response, p. 13-15 (citing *United States v. Wong*, 575 U.S. 402 (2015)). "Equitable tolling" and the "diligence-discovery rule" are two different doctrines. "'Equitable tolling' is a doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. Unlike the 'diligence-discovery rule,' which postpones accrual of a claim, the doctrine of equitable tolling suspends the statute of limitations once a claim has accrued." *Julin v. Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1305 (S.D. Fla. 2010) (*Marra, J.*) (citations omitted). Under either rubric, Plaintiffs fail to escape the FTCA's statute of limitations.

The FTCA's time limits are not jurisdictional, and thus a court can toll them on equitable grounds. *Dotson v. United States*, 30 F.4th 1259, 1268 (11th Cir. 2022) (citing *Wong*, 575 U.S. at 412). But, equitable tolling does not extend to "a garden

- 1 -

variety claim of excusable neglect." *Id*. at 1269. Rather, equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Id.* at 1268. "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Id*. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Id.* "[R]easonable diligence and extraordinary circumstance requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling." *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1225 (11th Cir. 2017).

To warrant the application of this extreme remedy, plaintiffs bear the heavy burden of proving (1) that they pursued their rights diligently, and (2) that some extraordinary circumstance stood in their way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649, (2010); *see also Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004) (noting the "difficult burden" of demonstrating entitlement to equitable tolling). The supporting allegations must be "specific and not conclusory." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014).

It is apparent from the face of the TAC that Plaintiffs' claims are time barred, and equitable tolling does not apply. Plaintiffs plead neither extraordinary circumstances nor their own reasonable diligence, apart from conclusory allegations that the United States "willfully suppres[ed]" and "conceal[ed]" its "culpability" TAC, ¶ 31, in that the FBI "concealed reports of a sex trafficking venture." *Id.*, ¶ 115. However, Plaintiffs provide no support of this claim, nor do they allege that they exerted even a modicum of diligence in investigating their claims.[1]

Importantly, Plaintiffs misinterpret *Wong* and its progeny to mean that the statute of limitation is equitably tolled until a plaintiff, in the exercise of

---

[1] For example, by filing a FOIA request (as others have successfully done). *See Radar Online, LLC v. Federal Bureau of Investigation*, No. 17-cv-3956 (S.D.N.Y.). Therein, the FBI produced "all documents relating to the FBI's investigation and prosecution of Jeffery Edward Epstein." ECF 17. The FBI published these documents on a rolling basis between May 22, 2018 and February 20, 2020. *See* https://vault.fbi.gov/jeffrey-epstein (last visited 10/20/2025).

reasonable diligence, discovers both the <u>exact</u> cause in fact of their injury and the specific party whose negligent acts or omissions brought about their injuries. These cases do not support this interpretation. All that is required to trigger the injured party's duty to diligently inquire is information sufficient to alert a reasonable person to the possibility she has been injured and in general terms, the possible cause of the injury.[2] "A plaintiff…may not bury her head in the sand once she is put on notice that the government may have caused an injury." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999). In short, the FBI's investigation into Epstein has been public knowledge for decades, which is clearly sufficient to put Plaintiffs on notice "of the existence of a connection" between the FBI's actions and Plaintiffs' injuries. *Chasteen v. United States*, 334 F. App'x. 271, 273 (11th Cir. 2009). "Waiting nearly two decades to investigate her claims reflects a lack of diligence, not circumstances beyond her control." *Everson v. Coca-Cola Co.*, No. 24-11058, 2024 U.S. App. LEXIS 31807, at *4 (11th Cir. Dec. 16, 2024) (finding equitable tolling did not apply due to plaintiff's lack of diligence in investigating her claim). *See also Diaz v. Sec'y for the Dep't of Corr.*, 362 F.3d 698, 700 (11th Cir. 2004) (finding that attorney error, miscalculation, and

---

[2] Plaintiffs argue that neither the Miami Herald investigation nor the OPR report were sufficient to give Plaintiffs' "notice of the connection between the FBI and their injuries" because "neither of those sources mention that the FBI received a credible tip in 1996." Response, p. 14. This is flatly untrue. *See New Jeffrey Epstein Accuser Goes Public*, The Miami Herald, April 16, 2019 (https://www.miamiherald.com/news/nation-world/article229277874.html) (last visited 10/20/2025) (Maria Farmer "reported her assault to New York police and the FBI in 1996. FBI documents released April 1[, 2019] make a reference to Farmer having been interviewed in 2006 or 2007. However, Farmer, now 49, said the FBI did not take any action against Epstein and Maxwell."). Farmer's affidavit was attached to a defamation complaint filed by Epstein victim Virginia Roberts Guiffre. *See Guiffre v. Dershowitz*, S.D.N.Y Case No. 19-cv-03377 (ECF 1-12 at ¶ 7, filed April 16, 2019) ("[In 1996] I called the FBI and made the report but to my knowledge, the FBI did not take any action against Epstein or Maxwell. To my knowledge I was the first person to report Maxwell and Epstein to the FBI.")

inadequate research do not rise to the "extraordinary" circumstances required for equitable tolling.) Thus, dismissal is appropriate pursuant to Rule 12(b)(1).[3]

### B. The FBI Owed No Legal Duty to Plaintiffs (1) to Conduct Its Investigations In a Non-Negligent Manner, or (2) to Protect Plaintiffs From Epstein

A negligence claim requires the plaintiff to "demonstrate that the defendant owed a duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (citation and internal quotation marks omitted). Under Florida law, the duty analysis is the same whether the defendant is a governmental entity or a private individual.[4]

The Third Amended Complaint does not allege—and cannot establish—the existence of a "legal duty" owed by the FBI (and thereby the United States) to Plaintiffs to conduct its investigations in a non-negligent manner, or to protect them from the criminal conduct of Epstein, a third party, because:

> "[T]here is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons."

*Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) (citing Restatement (Second) of Torts § 315). Under black-letter Florida law, the FBI owed no legal duty to the Plaintiffs (as suggested in their pleadings), because there is no underlying common law duty upon which to establish tort liability.

Plaintiffs argue that characterizing their claim as a "negligent investigation" "misses the point entirely and is a strawman argument." Response at 15. This ignores Plaintiffs' own words:

---

[3] The Response cites four cases for the proposition that equitable tolling is appropriate. Response, p. 15. In each case, the district court rejected the plaintiff's equitable tolling argument and granted the United States' motion to dismiss.

[4] *See* Fla. Stat. § 768.28(5)(a) ("The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances[.]")

> "It was the duty of the…United States and/or FBI…to investigate reports of sex crimes[,]…to prevent the crimes from repeatedly occurring, and protect Plaintiffs…from being repeatedly sexually abused, in addition to enforcing anti-sex trafficking laws[.]"

TAC, ¶ 74; *see also* ¶ 110 (alleging that "the FBI breached its duty, failed to take appropriate action and botched and covered up investigations for two decades.").

Plaintiffs argue they have established the FBI's duty towards them due to the "zone of risk" and "undertaking" doctrines. Response, p. 15-16. Each is a red herring. The zone of risk analysis is inapplicable because a special tort duty only arises "when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." *Pollock v. Fla. Dep't of Hwy. Pat.*, 882 So. 2d 928, 935 (Fla. 2004). "The premise underlying [the zone of risk] theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care." *Id.* Consequently, "[w]here police officers…have not arrived on the scene or assumed any degree of control over the situation, the 'zone of risk' analysis has no application." *Id.* at 935-36.

The undertaking doctrine is similarly inapplicable. Florida courts have determined that a special duty is established when a police officer makes a direct representation to a plaintiff, or one so closely involved with the plaintiff that their interests cannot be separated, that he or she will take a specified law enforcement action. The assumption of a special duty guided the First District Court of Appeal's conclusion in *Hartley v. Floyd*, 512 So. 2d 1022 (Fla. 1st DCA 1987), a wrenching case where a wife called 911 to report her missing husband. Although the sheriff assured the wife that he would undertake a safety check for signs of her missing husband, he failed to take any action. As a consequence of the sheriff's false promise, the wife paused her own search. *Id.* at 1023-24. Based on those facts, the district court held that "notwithstanding the absence of any preexisting special duty to Mrs. Floyd, the

sheriff's office…having assumed the undertaking…had an obligation to carry it out with reasonable care." *Id.* at 1024.[5]

The facts in *Hartley* and *St. George* stand in contrast to those in *Dario v. Roth*, 756 So. 2d 262 (Fla. 3d DCA 2000), where the district court held that a sheriff who had informed a caller that he would respond to reports of a loose deer had no duty to a different motorist who was subsequently injured in an automobile collision with the deer. *See id.* at 264-65. In other words, courts reserve a special relationship for instances where the government actor unquestionably fails to provide the requested assistance after agreeing to do so and where there is a clear causal connection between the government actor's failure and the harm caused. Neither of which is present here: the FBI made no representation to any Plaintiff, and the Plaintiffs' injuries occurred years (or decades) after the FBI's actions and numerous intervening causes. Like the defendant in *Dario*, the FBI did not, by word or deed, create a duty of care toward Plaintiffs to prevent Epstein from harming them. *See Wallace v. Dean*, 3 So. 3d 1035, 1040 (Fla. 2009) (holding "the undertaker's doctrine applies when law-enforcement officers respond, actually engage an injured party, and then undertake a safety check, which places the injured party in a "zone of risk."')

Plaintiffs futilely attempt to impose liability on the United States for the criminal acts of Epstein, without establishing a "special relationship" between the parties. *See Estate of Rotell ex re. Rotell v. Kuehnle*, 38 So. 3d 783, 790-91 (Fla. 2d DCA 2010) (observing that in a negligence action, it is a "relationship" that justifies "the creation of a legal duty"). "Florida courts have been especially sensitive in finding the requisite special relationship to exist." *Gross v. Fam. Servs. Ag.*, 716 So. 2d 337, 339 (Fla. 4th DCA 1998).

Plaintiffs must plead three elements to establish a special relationship between law enforcement and the tort victim: an express promise or assurance of

---

[5] *See also St. George v. City of Deerfield Beach*, 568 So.2d 931, 932 (Fla. 4th DCA 1990) (concluding a special relationship existed between decedent's ex-wife and municipality where the 911 operator mishandled the ex-wife's emergency call and failed to dispatch police to the scene and decedent was found dead the next morning).

assistance; justifiable reliance on the express promise; and harm suffered because of the reliance upon the express promise. *Pierre v. Jenne*, 795 So. 2d 1062, 1064 (Fla. 4th DCA 2001) Absent a special relationship between a defendant and a plaintiff, "a duty to protect an unknown plaintiff from the conduct of a third party may also arise if the defendant is in actual or constructive control of: (1) the instrumentality of the harm, (2) the premises upon which the tort is committed, or (3) the person who committed the tort." *Aguila v. Hilton, Inc.*, 878 So. 2d 392 (Fla. 1st DCA 2004). Accordingly, "where plaintiffs seek to impose liability upon defendants for the criminal acts of a third party…the imposition of a legal duty is tied to either a special relationship between the plaintiff and defendant or the defendant's control over…the person causing the injury." *Knight v. Merhige*, 133 So. 3d 1140, 1144 (Fla. 4th DCA 2014). *See also Michael & Phillip, Inc. v. Sierra,* 776 So. 2d 294, 297-298 (Fla. 4th DCA 2000) ("Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party.")

The above exceptions are easily eliminated. In this case, there was no special relationship between the FBI and Plaintiffs which gave rise to a legal duty to protect Plaintiffs from Epstein's conduct. Thus, dismissal is proper pursuant to Rule 12(b)(6).

Plaintiff's comparison to the Marjory Stoneman Douglas case is specious, as that complaint alleged sufficient facts to establish a special relationship.[6] That action arose out of the horrific school shooting perpetrated by Nikolas Cruz in Parkland, Florida. Plaintiffs comprised injured victims and the estates of victims killed during the tragic event. *In re Marjory Stoneman Douglas High Sch. Shooting*, 482 F. Supp. 3d 1273, 1276 (S.D. Fla. 2020). The complaint presented one count of negligence, alleging that the FBI failed to properly handle tips concerning Cruz prior to the shooting. It averred that, several weeks prior to the shooting, a person close to Cruz

---

[6] Plaintiffs' argument that the government's pre-suit settlement of administrative claims arising from abuse perpetrated by Larry Nassar somehow "demonstrates conclusively" that the government's "motion to dismiss should be denied" is similarly nonsensical. Response at pp. 1, 5. Plaintiffs cite no case law for this proposition. Generally, evidence of furnishing, promising, or offering a settlement is not admissible either to prove or disprove the validity of a claim. *See* Fed. R. Evid. 408.

telephoned the FBI's Public Access Line to report concerns about Cruz's behavior. *Id.* at 1278. The complaint alleged that an FBI employee represented the agency would follow up on the information provided and yet failed to do so. *Id.* at 1278-79. In reliance on the representation that an investigation would be undertaken, the caller forewent contacting other law enforcement agencies and the high school itself. *Id.* Unfortunately, the caller's information was not forwarded to the FBI Miami Field Office, Marjory Stoneman Douglas High School, or local law enforcement agencies. *Id.* Plaintiffs alleged that had the FBI properly acted upon the tip, the school shooting would not have occurred. *Id.*

The United States moved to dismiss the complaint on two bases: the FTCA's discretionary function exception and lack of legal duty towards the Plaintiffs under Florida law. *Id.* at 1279. On the discretionary function argument, the Court denied the motion without prejudice as a sanction for the government's discovery violations which occurred during jurisdictional discovery. *Id.* at 1277. As the Court did not reach the merits of this defense, it has no persuasive value here.[7]

Otherwise, *Douglas* is entirely distinguishable from the allegations of the TAC, in that the *Douglas* plaintiffs alleged the factual basis for a special relationship based upon allegations of the FBI's express assurance that an investigation would be undertaken. Here, even if the "voluntary undertaking" doctrine was applicable (which it isn't), Plaintiffs have not alleged an undertaking (such as the Public Assistance Line), a direct representation by the FBI to the Plaintiffs, or Plaintiffs' adverse reliance on the FBI's specific representations.

### C. The FBI Policies Identified by Plaintiffs Are Discretionary, and Irrelevant

Plaintiffs put forth several allegedly "non-discretionary" FBI policies which they claim the FBI violated during its criminal investigation into Epstein. Response, p. 6-8. But these policies, which require tips to "be taken seriously and thoroughly investigated" and recommend "thoroughly handling all cases," *id.*, are themselves

---

[7] The Court also found that the FBI's internal protocols, policies, and procedures did not create an independent duty of care under Florida negligence law. *Id.* at 1303-04.

discretionary; although these policies <u>recommend</u> certain investigatory procedures, they do not <u>mandate</u> any specific course of action for agents to follow.

Even if Plaintiffs' interpretation is correct, it ignores the fundamental problem with their case theory: there is no federal statute, regulation, or policy specifically requiring the FBI to initiate an investigation, or for a federal prosecutor to initiate a grand jury investigation, or take any other step towards prosecution. The initiation of an investigation by the FBI is, itself, a discretionary act. *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982); *see also McLeod v. Crews*, No. 14-cv-359, 2014 WL 12696528, at *1 (N.D. Fla. Sept. 24, 2014) ("The decision of whether or not to investigate a suspected criminal violation is left to the discretion of the agencies charged with that duty.") (citing 28 U.S.C. § 535). In short, Plaintiffs' claims fail, whether framed as a failure to timely begin its investigation into Epstein, or as mistakes made during the investigation, or as a failure to criminally prosecute Epstein.

### D. The Third Amended Complaint Is Most Fairly Read As Alleging an Institutional Tort

Plaintiffs do not identify any specific FBI employee or any specific act, outside of (1) receiving "tips" between 1996 and 2005; and (2) running an investigation between 2006-2008. TAC, ¶¶ 108-09. A fair reading of the Plaintiffs' claims is that they are based upon acts (or lack thereof) of the FBI as an institution. One need only look at Plaintiffs' summary of the TAC, which alleges institutional failures at the FBI as opposed to acts of negligence by an ascertainable FBI employee. Response, p. 6-7. "[T]o the extent Plaintiffs intend to sue the United States for the alleged tortious misconduct of the relevant agencies writ large, the Court lacks subject-matter jurisdiction." *F.R. v. United States*, No. 21-cv-00339, 2022 WL 2905040, at *4 (D. Ariz. July 22, 2022).

The cases relied upon by Plaintiffs for the assertion that an institutional tort is cognizable under the FTCA are unavailing. Response, p. 17. As discussed *supra, Douglas* involved allegations of specific negligence in not following up on a 911 call as promised to the caller by ascertainable FBI employees, which did not implicate an institutional tort analysis. 482 F. Supp. 3d at 1278-79. *Accord Wimberly v. Selent*,

- 9 -

2024 U.S. App. LEXIS 13557 (11th Cir. June 5, 2024) (plaintiff shot at a traffic stop by two named Dept. of Homeland Security agents); *Starnes v. United States*, 2006 US Dist. LEXIS 94348 (S.D. Fla. Dec. 29, 2006) (sexual assault of minor occurred while under the care of a named employee at a federal facility). Neither case stands for the proposition that an institutional tort is cognizable under the FTCA.

### E. Plaintiffs Do Not Plausibly Allege Proximate Cause

Under Florida law, negligence is not actionable unless the tortfeasor is the proximate cause of the alleged injuries. *Palma v. BP Pros. N. Am., Inc.*, 347 F. App'x 526, 527 (11th Cir. 2009). A cause is "proximate" where "prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *Id.* Florida courts recognize that foreseeability in the duty context is not unlimited. *See, e.g., Fla. Power & Light Co. v. Macias*, 507 So. 2d 1113, 1115 (Fla. 3d DCA 1987) ("It is incumbent upon the courts to place limits on foreseeability, lest all remote possibilities be interpreted as foreseeable in the legal sense."); *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1231 (Fla. 2010) ("Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed."). "[A] negligent party is not liable for another's injuries when a separate force or action is the active and efficient intervening cause, the sole proximate cause, or an independent cause." *Dep't of Transp. v. Anglin*, 502 So. 2d 896, 898 (Fla. 1987).

The legal question here is: do Plaintiffs survive the *Iqbal* plausibility inquiry by alleging sufficient facts to show a causal connection between the FBI's conduct and their alleged harms? They do not. Plaintiffs simply do not have a plausible theory that their injuries were the foreseeable result of the FBI's actions. Other than conclusory statements, Plaintiffs have not plead a single fact which creates a causal chain, nor do they offer any explanation on why the numerous intervening events identified by the United States would not snap their speculative causal chain as a matter of law—rupturing any arguable link between the FBI's actions and Plaintiffs' injuries. Motion, p. 19. Further, Plaintiffs argue that "Defendant does not provide *any* evidence disputing those allegations." Response, p. 18. It is not Defendant's burden to provide evidence disputing Plaintiffs' allegations in a motion to dismiss.

## II.  CONCLUSION

For these reasons, the United States' motion to dismiss should be granted, and the Court should dismiss this action pursuant to Rule 12(b)(1) and/or Rule 12(b)(6).

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:  *John S. Leinicke*
JOHN S. LEINICKE
ASSISTANT UNITED STATES ATTORNEY
Fla. Bar No. 64927
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9212
E-mail: john.leinicke@usdoj.gov

By:  *Steven R. Petri*
STEVEN R. PETRI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. A5500048
United States Attorney's Office
Southern District of Florida
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 660-5799
E-mail: steve.petri@usdoj.gov

*Counsel for United States of America*