UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:25-CV-80880 LEIBOWITZ

JANE DOE 1, et al.,

       *Plaintiffs*,

vs.

UNITED STATES OF AMERICA,

       *Defendant*.

_____/

**PLAINTIFFS' MOTION TO DENY
THE UNITED STATES OF AMERICA'S
MOTION TO DISMISS, STRIKE
IMPROPER STATEMENTS WITHIN
THE UNITED STATES OF AMERICA'S
REPLY BRIEF OR FOR LEAVE
<u>TO FILE SUR-REPLY</u>**

**Introduction and History**

Plaintiffs Jane Does 1-32, Sandra Ward, and Laura Newman brought this action arising from the FBI's negligence in failing to follow its mandatory policies and procedures, causing the notorious Epstein sex-trafficking ring to continue to operate, causing Plaintiffs to be sexually trafficked and abused. *See* Plaintiffs' Third Amended Complaint (ECF #61). The present motion was made necessary after Defendant introduced new arguments and evidence and made material misrepresentations of law and fact for the first time in Reply (ECF #73) to its motion seeking to dismiss the Complaint (ECF # 62). The new arguments, new evidence, and misrepresentations include:

- Defendant falsely claimed that Plaintiffs made a "patently untrue" statement about a publication by citing to an entirely different article than the one Defendant originally cited to in its initial motion papers and Plaintiff commented on in their opposition papers, in a "bait and switch" maneuver to make it appear that Plaintiffs were discussing the new article and not the original article;

- Defendant presented new arguments regarding Plaintiffs' exercise of reasonable diligence;

- Defendant attempted to distinguish the decision in *In re Marjory Stoneman Douglas High Sch. Shooting*, 482 F. Supp. 3d 1273, 1276 (S.D. Fla. 2020)(hereinafter "*Marjory Stoneman Douglas*"), which Plaintiffs attached to their Response in its entirety as Exhibit 1, by misrepresenting the holding in that decision. Whereas Defendant falsely claimed that this Court in *Marjory Stoneman Douglas* held that a special relationship established a duty of care, the case explicitly found the exact opposite;

- Defendant falsely claimed that the FBI's internal policies, of which Plaintiffs attached to their Response as Exhibit 3, contained specific, permissive language that does not actually appear within the policy.

Given the dispositive nature of its motion, Defendant's improper, misleading arguments and evidence raised for the first time on reply should not be considered by this Court. As such, the within motion respectfully requests that this Court deny Defendant's motion to dismiss, strike the arguments and evidence brought for the first time in Defendant's Reply brief, or, alternatively,

1

grant Plaintiffs leave to file a sur-reply to address the new arguments and Defendants' misrepresentations.

## I.        Legal Standards For Striking Improper Arguments and Evidence On Reply.

Local Rule 7.1(c) states that reply memoranda should be "limited to rebuttal of matters raised in the memorandum." Local R. 7.1(c); *see also FDIC v Prop. Transfer Servs.*, 2013 U.S. Dist. LX 190787, at *4 (S.D. Fla, Aug. 9, 2013). Therefore, "[a] reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015), aff'd, 839 F.3d 1003 (11th Cir. 2016). Courts in the Eleventh Circuit generally disfavor the granting of dispositive motions "based on arguments or evidence to which the nonmoving party has not had a reasonable and meaningful opportunity to respond with contrary argument or evidence."*Atl. Specialty Ins. Co. A.S. v. Digit Dirt Worx, Inc.*, 793 F. App'x. 896, 901 (11th Cir. 2019).

Remedies available when new arguments and/or evidence are presented for the first time in a reply brief is to: (i) deny the motion in its entirety or (ii) strike the portions of the reply to which the non-movant had no reasonable opportunity to respond. *Atl. Specialty Ins. Co. A.S.*, 793 F. App'x at 901-902; *see also Baez v. MSC Cruises, S.A.*, 2022 U.S. Dist. LX 109512 at fn. 4 (S.D. Fla., June 20, 2022).

## II.       Defendant's Reply Contains Improper Arguments and Evidence That Warrant Denying Its Motion or Striking That Material.

In its Reply, Defendant made, for the first time, material misrepresentations of fact and law that Plaintiffs did not have a reasonable opportunity to address. This Court should not accept these arguments on the bases that: (1) they were raised for the first time on reply, and (2) they were so inaccurate that there is no plausible legitimate explanation for the misrepresentations that Defendant made in its Reply.

### a.   Defendant Presented a Different Miami Herald Article On Reply Than the One it Cited in Its Initial Motion Papers And Misrepresented that It was The Same Article to Support Defendant's Argument that Plaintiffs Were Untruthful About the Original Article's Content.

Among the new arguments and misrepresentations made by Defendant in its Reply,

Defendant (in a footnote) presented a new article as if it were the article Defendant previously disclosed and Plaintiffs previously commented on in Plaintiffs' opposition papers, to falsely claim that Plaintiffs had misrepresented the content of the original article. Specifically, as to its statute of limitations argument, Defendant initially claimed that the Plaintiffs first learned that the FBI received a credible tip in 1996 from a November 28, 2018 Miami Herald article series titled, "*Perversion of Justice: Jeffrey Epstein*." In its motion, Defendant emphasized the date of publication by underlining it.

> fashion to this FTCA action, Plaintiffs' claims would still be untimely, as their pleadings demonstrate they were aware of the existence of a connection between their injuries and the FBI's investigation as early as November 28, 2018, when the Miami Herald published *Perversion of Justice: Jeffrey Epstein*,[1] and certainly no later than

In response, Plaintiffs, in their opposition papers, accurately pointed out the flaw in Defendant's argument, namely that the November 28, 2018 *Perversion of Justice* article did not even mention that the FBI received a credible tip in 1996, and therefore could not have provided Plaintiffs notice of the tip. However, Defendant, in its reply, argued that Plaintiffs' statement was "flatly untrue" and then quoted a *completely different article* from April 16, 2019 titled "*New Jeffrey Epstein Accuser Goes Public*" as if it were the article referenced by Plaintiffs and Defendant. This new article is clearly distinct as the article itself cites *Perversion of Justice* as a previous work. The difference is made obvious by the date of publication, which differs from the date emphasized by Defendant in its original brief.

> tip in 1996." Response, p. 14. This is flatly untrue. *See New Jeffrey Epstein Accuser Goes Public*, The Miami Herald, April 16, 2019 (https://www.miamiherald.com/news/

As such, Defendant's claim that Plaintiffs were making "flatly untrue" statements to this Court is not only untrue but also predicated on a bait-and-switch by Defendant regarding the article referenced, at a time when Plaintiffs have no opportunity to alert this court of Defendant's duplicitous tactic. Moreover, it was Defendant, not Plaintiffs, who presented "flatly untrue" statements to this Court.

Ultimately, it does not matter whether it was revealed that a complaint was made to the FBI in 2018 or 2019; the salient issue is when Plaintiffs first learned that the FBI *caused their injury* through the FBI's by failing to follow its own policies and procedures. This did not occur until

3

2023, shortly before the SF-95s were served.

Regardless, Defendant's attempt to paint Plaintiffs as presenting "flatly untrue" statements to this Court by switching the articles that the parties were discussing at a time when Plaintiffs had no opportunity to expose Defendant's misrepresentation, warrants denial of Defendant's motion to dismiss and/or striking of the portions of the reply set forth herein.

**b.  Additional False Claims Regarding Reasonable Diligence.**

In the same footnote, Defendant additionally presented, for the first time on Reply, the defamation case of another Epstein victim, Virginia Giuffre, as substantive evidence in favor of their argument for disposition rather than a rebuttal of Plaintiffs' Response. (Def. Reply, fn. 2). Defendant could have included this evidence in their original motion but failed to do so. Defendant claims in footnote 2, that the two sources cited in their original motion established that Plaintiffs had notice of the connection between the FBI and their injuries. Had Defendant included this argument in their original motion, Plaintiffs would have provided a response to this evidence, including that the argument proposed by the FBI would require victims of sex trafficking to know of all litigation involving other victims of the sex-trafficking ring, as well as monitor PACER for any evidence that might establish a case against the Government, an absurd notion. Yet, by making this argument for the first time in Reply, Defendant has created for itself an undue advantage, allowing it to take indefensible positions without concern for a response.

Defendant also argues for the first time (in yet another footnote) that Plaintiffs was  not sufficiently diligent for the statute of limitations to toll because they did not submit FOIA requests to investigate whether the FBI was negligent prior to the revelations in the JP Morgan case (Def. Reply, fn. 1). Yet, Defendant, in its original motion, did not assert that the filing of a FOIA request is necessary to establish a plaintiff's reasonable diligence, and therefore Plaintiffs had no opportunity to respond to this argument. Had Defendant done so, Plaintiffs would have responded that FOIA requests, such as the one cited by Defendant, are regularly redacted to protect law enforcement records pursuant to 5 U.S.C. § 552(b)(7)(A), And that the FBI has made regular headlines by refusing to disclose documents to the Attorney General. *See* Letter from Pamela Bondi, Attorney General of the United States to Kash Patel, Director of the Fed. Bureau of Investigation (Feb. 27, 2025, last visited Oct. 15, 2025) https://www.justice.gov/ag/media/1391331/dl?inline), attached to Plaintiff's Response as Exhibit

4 ("Despite my repeated requests, the FBI never disclosed the existence of these files"). To think that the FBI would have turned over documents to Plaintiffs that they would not disclose to the Attorney General is truly absurd. However, by making this argument for the first time on Reply, Defendant prevented Plaintiffs from exposing the absurdity of Defendant's argument.

### c.   Public Duty Doctrine and *Marjory Stoneman Douglas.*

Likewise, Defendant misrepresented the holding in *Marjory Stoneman Douglas* in its Reply papers to influence this Court at a time when Defendant knew Plaintiffs had no opportunity to expose its misrepresentations. Moreover, Defendants did this despite having access to the decision, which was attached to Plaintiff's Response. Specifically, whereas this Court in *Marjory Stoneman Douglas* denied dismissal despite explicitly stating that there was no special relationship (at p. 1288), Defendant falsely stated in its Reply (at p. 7) that in the *Marjory Stoneman Douglas* decision, the "complaint alleged sufficient facts to establish a special relationship." Yet, this complete fiction is the literal opposite of what the decision holds. As explained by this Court in the *Marjory Stoneman Douglas* case:

The Government, presumably disagreeing with the proposition that binding Supreme Court precedent mandates that courts must find private person analogs for government tasks for purposes of conducting the duty analysis in FTCA cases, has continued since *Olson* -- and continues in the instant case -- to argue legal positions which are foreclosed by *Indian Towing, Rayonier,* and *Olson.* In particular, the Government attempts to distract the Court from engaging in the required private person analog analysis and obfuscate the relevant issues by (1) relying extensively on cases that apply state law "public duty doctrine" which shields state governmental entities from tort liability [3]; (2) focusing such reliance on

and do not owe under Florida public duty doctrine [4]; and (3) advancing the general what duties law enforcement officers owe proposition that the law rarely imposes a duty to take affirmative action to protect others, in the absence of a "special relationship" between the defendant and the injured party, and no special relationship exists here.[5] These arguments all fail. *See,*

*e.g., Lumsden v. U.S.,* 555 F. Supp. 2d 580, 594–95 (E.D.N.C. 2008) ("The 'public duty' doctrine has no application to an FTCA action, however. Whether or not state or local law enforcement officers would be liable under state law on the same or analogous facts is irrelevant under the Federal Tort Claims Act."); *White v. U.S.,* 2014 WL 4782855, at *25 (D.S.D. Sept. 24, 2014) ("The government asserts that, under South Dakota state law, police officers are not liable for negligence because they generally have a duty to the public at large, and not to particular individuals.... However, as discussed at length above, the appropriate inquiry under the FTCA is not whether state law would hold a police officer liable under the facts presented. Rather, the question is whether state law would hold a private person liable under the facts presented."). The United States again makes these arguments in the instant case; they are rejected. The Court will not analyze them further, as they are foreclosed by Supreme Court precedent and thus are simply irrelevant to the duty question that is presently before the Court. *See, e.g., Indian Towing,* 350 U.S. at 65, 76 S.Ct. 122 (the FTCA is "not self-defeating by covertly embedding the casuistries of municipal liability for torts"). Here, the Court

*Marjory Stoneman Douglas*, pp. 1286-88. The Court also stated that the complaint did not even attempt to allege that there was a special relationship but the United States of America still spent three pages arguing it (similar to here), as follows:

> 5. The "special relationship" argument is particularly puzzling in the instant case. The United States' brief states on the first page of its argument section: "Here, no special relationship existed between the FBI and either Cruz or his victims that created a duty. In fact, the Complaint does not allege that the Government's duty derived from a special relationship. Rather, the Complaint asserts four grounds upon which the duty may be found." *See* [DE 206] at p. 5: The United States then proceeds to devote three pages to arguing that no special relationship existed. *See* [DE 206] at pp. 8-11.

*Marjory Stoneman Douglas*, fn. 5. In other words, Defendant here represents (at p. 7) that in *Marjory Stoneman Douglas* the "Complaint alleged sufficient facts to establish a special relationship." Where the reality is that the court admonished this issue in *Marjory Stoneman Douglas* the complaint did not even allege that there was a special relationship. It is deeply disturbing that the Government of the United States would misrepresent the law to such an extent to this District Court in an effort to silence victims of sex-trafficking and abuse.

Although Defendant is entitled on Reply to rebut Plaintiffs' arguments and cited cases, they were not entitled to rewrite the contents of those cases to misrepresent a more convenient outcome to this Court.

Defendant made additional misrepresentations of the crucial *Marjory Stoneman Douglas* decision. Although Defendant attempts to claim that the public duty doctrine set forth in *Trianon* is more applicable to the present case than the FTCA private person standard set forth in *Marjory Stoneman Douglas*, Defendant fails to apprise this Court that *Marjory Stoneman Douglas* explicitly stated: "Florida's *Trianon* analysis -- which pervades the United States' analysis at every turn -- differs fundamentally from federal courts' duty analysis under the FTCA." The Court further held that Defendant's reliance on Trianon was "disingenuous," as follows:

3. Florida's public duty doctrine limits the tort duties of state governmental entities, not private ones. *See Wallace v. Dean*, 3 So. 3d 1035, 1045 (Fla. 2009) ("[T]he public-duty doctrine expressed in *Trianon Park Condominium Association v. City of Hialeah*, 468 So.2d 912, 919–21 (Fla. 1985), and its exceptions, relate *exclusively* to the question of whether the government owes a duty of care to the individual plaintiff or group of plaintiffs as opposed to the general public."). The United States nonetheless relies extensively on this doctrine throughout its Motion. *See* [DE 206]. Florida's *Trianon* analysis – which pervades the United States' analysis at every turn -- differs fundamentally from federal courts' duty analysis under the FTCA. Under the FTCA, courts are required to analyze the government's duty using a private person analog. *See Indian Towing*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48; *Rayonier*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354; *Olson*, 546 U.S. 43, 126 S.Ct. 510, 163 L.Ed.2d 306. By contrast, under *Trianon*, Florida courts generally first sort the government's activity into one of the four categories, and then, only if necessary, engage in a private-person analysis. If the activity falls into Category I (legislative and executive officer functions) or Category II (law enforcement and protection of public safety), Florida courts do not conduct any private-person analysis at all. Therefore, to the limited extent that Florida's *Trianon* analysis resembles an FTCA analysis, it is only in cases falling under Categories III (capital improvements and property control) and Category IV (services for health and welfare of citizens). *See id.* The United States' attempt to justify its mostly inapposite arguments based on the similarity of the language used in the FTCA and in Florida's Tort Claims Act, *see* Fla. Stat. § 768.28, is not persuasive. This is because, under *Trianon*, courts need not reach a private-person analysis in many cases. The United States reliance on *Trianon* Category II cases to argue there is no duty under Florida law using a private person analog is disingenuous. *See* fn. 4.

*Marjory Stoneman Douglas*, fn. 3.

The reality is that the present case is not distinguishable from this Court's decision in *Marjory Stoneman Douglas*, and the Defendant's attempt to differentiate the cases by misrepresenting the findings and facts behind the *Marjory Stoneman Douglas* decision at a time when Plaintiffs have no opportunity to expose this falsehood warrants denying Defendant's Motion to Dismiss in its entirety or striking these arguments on reply.

If Defendant's arguments are stricken on Reply, Defendant has then provided this Court no basis to distinguish Marjory Stoneman Douglas from the present case and that is because when fairly assessing this case with that one, the result should be the same and Defendant's motion to dismiss should be denied.

### d. Defendant Misleadingly Misstates FBI Policy.

Finally, Defendant shockingly argues (at p. 8) that the FBI policies concerning investigations into sex-trafficking are "discretionary, and irrelevant" by claiming (at p. 9) that "these policies recommend certain investigatory procedures, they do not mandate any specific course of action for agents to follow." (Emphasis in Defendant's reply). However, the word "recommend" does not appear in the FBI's policies cited by Plaintiffs (that were not disclosed to the Court by the FBI), nor does Defendant cite any portion of the Manual that supposedly designates the polies as recommendations rather than mandates. *See* Pltfs. Resp. at Exhibit 3.

In contrast, Plaintiffs quoted policies that are mandatory, *none of which* are

recommendations:

> Sex trafficking is specifically addressed in the FBI manual under Section 31, which sets forth steps that must be taken in sex trafficking cases. Merson Decl., Ex. 3 (citing Fed. Bureau of Investigation Manual, § 31 et. seq.). They use mandatory language such as "any" and "all." These policies explicitly state:
>
>> "Agents should bear in mind that the Department's instructions to the USAs do not change the Bureau's position in any manner with regard to the necessity for thoroughly handling all [sex-trafficking] cases. These instructions increase our responsibility of developing and bringing to the attention of the USA all facts which indicate that prosecution is warranted."
>
> **31-4 INVESTIGATIVE PROCEDURES**
>
> (1) The primary step in any WSTA investigation is to secure a signed statement from the victim, showing the interstate transportation for prostitution or any sexual activity for which any person can be charged with a criminal offense. In prostitution cases care should be taken not to create any basis for a charge of intimidation or inducement in obtaining statements from the victim, since the courts have held that the individual may be found guilty of conspiracy to violate the act although the conspiracy involved that person's own transportation.
>
> (2) Secure all possible evidence to corroborate the statement of the victim by interviewing that individual's relatives and associates and other persons in a position to give pertinent -information.
>
> (3) Secure all possible documentary evidence to corroborate the statement of the victim. [REDACTED FROM PUBLIC RECORD]
>
> (4) Interviews with victims of this type of case or with informants or others involved in alleged law violations are at all times to be conducted in a completely businesslike manner.
> Precautions should be taken to prevent the interviewing employee becoming involved in compromising situation. Where such interviews are to be conducted in hotel rooms or other places out of the presence of witnesses, every effort should be made to have present a second Bureau employee.
>
> **31-4.1 Essential Facts to Obtain**
> As to persons involved:
>
> (1) The names (with aliases), descriptions, brief personal histories, reputation, marital status, and identification records of subject and victim.
>
> (2) Previous acquaintances and attendant relations between subject and victim.
>
> (3) The facts as to the places of residence of victim when that individual is an alien, as well as the probable immoral purposes connected with that individual's immigration; and the place of birth, citizenship, naturalization status, date of last entry into the U.S., port of entry, and means of travel to the U.S. of any subject or victim who might be an alien.

Pltf. Resp., pp. 8-9, citing Plaintiffs' Exhibit 3, §§ 31.3.1, 31-4, 31-4.1. Clearly, these policies do not use the phrase "recommend." Guideline §31.3.1, cited above and on page 8 of Plaintiffs'

response, even describes the thorough handling of all sex-trafficking cases as a "necessity."

Therefore, Defendant's emphasis on the word "recommend," despite "recommend" not appearing anywhere in the actual document, is another attempt by Defendant to misrepresent the facts at a time when Defendant knew Plaintiffs had no opportunity to respond. The defense emphasizes a word to the Court that is not reality.

Collectively, Defendant's reply is replete with misrepresentations made when Defendant knew Plaintiffs had no opportunity to expose Defendant's falsehoods. Moreover, Defendant's misrepresentations all serve the same goal, to wrongly convince this Court to dismiss Plaintiffs' claims, even though the issues here are the same as those in the *Marjory Stoneman Douglas* decision or the Larry Nassar cases, both of which favor denial of the motion. That is why the defense only deals with these cases on the bottom of page seven in one paragraph despite that they are the first point in Plaintiffs' opposition; Defendant downplays them, because if they are fully considered by this Court, Defendant's motion must be denied. Similar to *Marjory Stoneman Douglas*, Defendant's conduct above in and of itself warrants denial of its Motion to Dismiss.

### III.    Alternatively, Plaintiffs Should Be Granted Sur-Reply.

Another remedy recognized by Courts in this Circuit is permitting the non-movant to file a surreply addressing the new arguments and evidence. *Atl. Specialty Ins. Co. A.S. v Digit Dirt Worx, Inc.*, 793 F. App'x, at 901-02; *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 695 n.1 (S.D. Fla. 2001)("Because [movant] presented new arguments and a new theory . . . in her Reply the Court will grant [non-movant's] Motion for Leave to File a Sur-Reply. . . ."); *FDIC v Prop. Transfer Servs.*, 2013 US Dist. LX 190787, at *4 (S.D. Fla, Aug. 9, 2013).

For the same reasons stated above, should this Court opt not to deny Defendant's motion to dismiss or strike the portions of Defendant's reply containing new arguments and evidence, this Court should grant Plaintiffs leave to file a surreply in response to the additional arguments, evidence, and misrepresentations described above.

This will afford Plaintiffs an opportunity to respond to the aforementioned statements made by Defendant in Reply, so that Defendant's misrepresentations and new arguments do not proceed unchallenged.

Should this Court agree and permit a sur-reply, the content of Plaintiffs' sur-reply is

attached hereto as Exhibit 1.

**CONCLUSION**

This Court should not allow Defendant to set a dangerous precedent: that a Reply can be used as an opportunity for a movant to attempt to win their case by engaging in extreme misrepresentations to the Court. Accordingly, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss, or, alternatively, strike the portions of Defendant's Reply addressed in this Memorandum, or, alternatively, grant Plaintiffs leave to file a surreply in the form annexed as Ex. 1 to address Defendant's new arguments and misrepresentations.

**LOCAL RULE 7.1 CERTIFICATE**

Pursuant to Local Rule 7.1, I hereby certify that counsel for Plaintiffs conferred with counsel for Defendant, who objected to the relief requested.

Date: October 29, 2025

By:
/s/ Jordan K. Merson
Jordan Merson, Esq.
Jennifer Plotkin, Esq.
Merson Law, PLLC
*Attorneys for Plaintiffs*
950 Third Avenue, 18th Floor
New York, New York 10022
Telephone:(212)-603-9100
Facsimile : (347) 441-4171
Email : jmerson@mersonlaw.com
Email : jplotkin@mersonlaw.com

By: /s/Todd J. Michaels, Esq
Todd J. Michaels, Esq.
The Haggard Law Firm
*Attorneys for Plaintiffs*
330 Alhambra Circle
Coral Gables, FL. 33134
Office: (305) 446-5700
Cell: (305) 775-0339
Facsimile: (305) 446-1154
Email: tmichaels@haggardlawfirm.com