UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:25-CV-80880 Leibowitz / McCabe

JANE DOE 1, *et al.*,

    Plaintiffs,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

UNITED STATES' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO DENY THE UNITED STATES' MOTION TO
DISMISS, TO STRIKE PORTIONS OF THE UNITED STATES' REPLY BRIEF,
<u>OR FOR LEAVE TO FILE SUR-REPLY</u>

i

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    a.  Plaintiffs' Request to Strike the United States' Reply is Procedurally
       Deficient ................................................................................................................ 2

    b.  Plaintiff's Request to Deny the United States' Motion to Dismiss
       is Meritless ........................................................................................................... 3

    c.  Plaintiffs Have Not Shown Either a Valid Reason or an Exceptional
       Circumstance to Justify a Sur-reply ............................................................. 4

       1.  Both the Third Amended Complaint and Plaintiffs' Response to the
          Motion to Dismiss Reference the Very Article Reporting on the Farmer
          Affidavit That the United States Cited in Its Reply ................................. 5

       2.  The United States Was Required to Respond to Plaintiffs' Equitable
          Tolling Legal Theory, First Asserted in Their Response .......................... 8

       3.  The United States Accurately Represented the *Stoneman Douglas*
          Holding ................................................................................................................ 9

       4.  The Reply's Underlining of the Words "Recommend" and "Mandate" Is
          Clearly for Emphasis ..................................................................................... 11

III. CONCLUSION ................................................................................................. 12

## I. INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC," ECF 61) is devoid of factual and legal merit, necessitating dismissal. The United States' Motion to Dismiss (ECF 62) is fully briefed and ripe for ruling. The Court, after taking a "preliminary peek" at the merits of the United States' motion, has stayed discovery in this action until such time as it has issued a ruling. *See* Order Granting Defendant's Expedited Motion to Stay Discovery and Scheduling Report, ECF 67.

Plaintiffs now seek to re-open briefing on the merits of the pending motion to dismiss, in a filing styled "Motion to Deny the United States of America's Motion to Dismiss, to Strike Improper Statements Within the United States of America's Reply Brief, or for Leave to File Sur-Reply" ("Motion," ECF 74). Therein, Plaintiffs accuse the United States of making four material misrepresentations in its Reply in Support of its Motion to Dismiss (ECF 73): (1) engaging in a "bait and switch" with facts by citing to a different *Miami Herald* article than the one cited in the Motion to Dismiss (ECF 62); (2) presenting new arguments regarding Plaintiffs' reasonable exercise of diligence; (3) misrepresenting the holding of *In re Marjory Stoneman Douglas High Sch. Shooting*, 482 F. Supp. 3d 1273 (S.D. Fla. 2020); and (4) "falsely" attributing the word "recommend" to the FBI's internal policies by underlining it. *See* Motion, p. 1.

As relief, Plaintiffs demand that the Court strike the Reply, or grant Plaintiffs leave to file a sur-reply. *Id.*, p. 1-2. Alternatively, Plaintiffs seek the outright denial of the United States' Motion to Dismiss as a sanction for the United States' "conduct," citing in support Judge Dimitrouleas's decision in *Stoneman Douglas* to deny without prejudice the United States' motion to dismiss as to the FTCA's discretionary function exception. *Id.*, p. 9, citing *Stoneman Douglas*, 482 F. Supp. 3d at 1277.

The Motion is wholly meritless, and should be denied. A sober reading of the United States' moving papers shows that there simply is no basis for concluding that they present misleading argument, either purposefully or unintentionally. Plaintiffs' farfetched characterization of the United States' arguments and factual citations is not valid grounds to grant the extreme relief they seek.

- 1 -

## II. ARGUMENT

### a. Plaintiffs' Request to Strike the United States' Reply is Procedurally Deficient

Here, Plaintiffs seek to strike the United States' Reply. Motion at p. 1, 9, and 10. The standard for striking a filing is "exceedingly high." *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999) (*Middlebrooks, J.*). As such, courts in this circuit "generally view motions to strike with disfavor." *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014) (*Rosenbaum, J.*) (quotation omitted); *accord Vineland Pointe Owner, LLC v. First Bank*, No. 24-cv-81217, 2025 U.S. Dist. LEXIS 53131, at *4 (S.D. Fla. Feb. 20, 2025) (*Leibowitz, J.*) (characterizing motions to strike as "time wasters" and observing that such motions "will usually be denied") (citation omitted).

At the outset, Plaintiffs rely upon an incorrect procedural framework in support of their requested relief. Specifically, Plaintiffs cite to *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896 (11th Cir. 2019):

> Remedies available when new arguments and/or evidence are presented for the first time in a reply brief is to: (i) deny the motion in its entirety or (ii) strike the portions of the reply to which the non-movant had no reasonable opportunity to respond. *Atl. Specialty Ins. Co. A.S.*, 793 F. App'x at 901-902; *see also Baez v. MSC Cruises, S.A.*, 2022 U.S. Dist. LX 109512 at fn. 4 (S.D. Fla., June 20, 2022).

Motion, p. 2. The actual holding of *Atl. Specialty Ins. Co.* differs substantially from Plaintiffs' representation in two crucial aspects. First, the unpublished opinion dealt with the submission of new evidence in the context of motions for <u>summary judgment</u> reply briefs, not <u>motions to dismiss</u>. *Id.* at 901. Second, the word "<u>strike</u>" does not appear in the *Atl. Specialty Ins. Co.* opinion. The actual holding states:

> When faced with a reply brief that offers new evidence, we, like the Tenth Circuit, conclude that the district court has two permissible courses of action. It can either (1) permit the nonmoving party to file a surreply or (2) refrain from relying on any new material contained in the reply brief.

Case 9:25-cv-80880-DSL   Document 76   Entered on FLSD Docket 11/12/2025   Page 5 of 15

*Id.* at 901-02.[1]

Other procedural methods to strike a reply are similarly inapplicable. For example, under Rule 12(f), courts "may strike from a <u>pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" (emphasis added). However, "motions" and "pleadings" are independent categories of papers,[2] and therefore Rule 12(f) is unhelpful. *See Polite v. Dougherty Cty. Sch. Sys.*, 314 F. App'x 180, 184 n.7 (11th Cir. 2008) ("Motions to strike [grounded in Rule 12(f)] are only appropriately addressed towards matters contained in the pleadings[.]").

Finally, although not referenced in Plaintiffs' Motion, courts also have the inherent power to control their dockets by striking improper filings. *See Fisher v. Whitlock*, 784 F. App'x 711, 714 (11th Cir. 2019). "The key to unlocking a court's inherent power is a finding of bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Sciarretta v. Lincoln Nat'l Life Ins.*, 778 F.3d 1205, 1212 (11th Cir. 2015)). "The inherent power must be exercised with restraint and discretion." *Id.* at 1225. "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Id.* None of these concerns are present here; an earnest reading of the United States' moving papers shows that there simply is no basis for concluding that they present misleading argument, either purposefully or unintentionally. And as discussed below, Plaintiffs' representations of the United States' arguments are just wrong.

### b. Plaintiff's Request to Deny the United States' Motion to Dismiss is Meritless

Plaintiffs argue that "Defendant's reply is replete with misrepresentations… that all serve the same goal, to wrongly convince this Court to dismiss Plaintiffs'

---

[1] *Baez* is similarly inapplicable, as (1) the legal issue discussed was plaintiff's request made in a motion for summary judgment to strike certain affirmative defenses, and (2) the opinion merely quotes the above passage from *Atl. Specialty Ins. Co. See Baez*, 2022 U.S. Dist. LEXIS 109512, at *10 n.4.

[2] *See* Fed. R. Civ. P. 7—Pleadings Allowed; Form of Motions and Other Papers.

- 3 -

claims," and therefore, "[s]imilar to *Marjory Stoneman Douglas*, Defendant's conduct above in and of itself warrants denial of its Motion to Dismiss." Motion, p. 9. In other words, Plaintiffs seek to impose sanctions[3] against the United States, yet have not complied with the strictures of Rule 11.

The comparison to *Stoneman Douglas* is inapposite. In that case, Judge Dimitrouleas determined that jurisdictional discovery took "much longer than the Court anticipated" and that the delay was "predominantly attributable to the United States' conduct in improperly withholding relevant material." *See Stoneman Douglas*, 482 F. Supp. 3d at 1277. As a remedy, the Court denied without prejudice the United States motion to dismiss as to the FTCA's discretionary function exception. *Id*.

Here, Judge Leibowitz stayed all discovery after taking a "preliminary peek" at the United States' Motion to Dismiss the Third Amended Complaint. *See* Order Granting Defendant's Expedited Motion to Stay Discovery and Scheduling Report (ECF 67). The Parties have not engaged in jurisdictional discovery, nor is any needed for the Court to decide the United States' Motion to Dismiss on its merits. Plaintiffs' contorted interpretation of the United States' arguments provides no rational basis for this Court to deny the United States' motion.

### c. Plaintiffs Have Not Shown Either a Valid Reason or an Exceptional Circumstance to Justify a Sur-Reply

Under Local Rule 7.1(c)(1), after a reply memorandum is filed, "[n]o further or additional memoranda of law shall be filed and served without prior leave of Court." As recently summarized by Judge Bloom:

> Sur-replies will generally only be permitted in exceptional circumstances. A district court's decision to permit the filing of a sur-reply is purely discretionary and should generally only be allowed when "a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." To allow such sur-replies as a regular practice would put the court in the position of refereeing an endless volley of briefs…Absent some "valid reason" or

---

[3] Sanction: A penalty or coercive measure that results from failure to comply with a law, rule, or order. *Black's Law Dictionary* (12th ed. 2024).

"exceptional circumstance" to justify additional briefing, the Court will not exercise its discretion in permitting Plaintiff to file a sur-reply.

*Grieben v. Fashion Nova*, No. 21-cv-23664, 2022 U.S. Dist. LEXIS 8261, at *2-3 (S.D. Fla. Jan. 14, 2022) (*Bloom, J.*) (internal citations omitted). Claimed misrepresentations of facts or law are generally not valid reasons to permit additional briefing. *See EEOC v. Univ. of Miami*, No. 19-cv-23131, 2021 U.S. Dist. LEXIS 107819, at *5 (S.D. Fla. June 7, 2021) (*Scola, J.*) ("Plaintiff's argument that a sur-reply is necessary to address unspecified misstatements of law in its reply brief is unavailing because it is vague and the parties have thoroughly briefed the case law for both counts such that the Court can rule on the motion for summary judgment."); *Ghahan, LLC v. Palm Steak House, LLC*, No. 12-cv-80762, 2021 U.S. Dist. LEXIS 256176, at *9 (S.D. Fla. May 12, 2021) (*Middlebrooks, J.*) (denying leave to file sur-reply "to correct and clarify misrepresentations and blatant inaccuracies and misinterpretations of facts and omissions of material fact by Plaintiff in its reply.").

As explained in detail below, Plaintiffs' interpretations of the United States' arguments are, at best, contrived. They do not present this Court with either a valid reason or an exceptional circumstance necessary to warrant a sur-reply.

1. **Both the Third Amended Complaint and Plaintiffs' Response to the Motion to Dismiss Reference the Very Article Reporting on the Farmer Affidavit That the United States Cited in Its Reply**

In the Third Amended Complaint, Plaintiffs reference reporter Julie Brown's lengthy investigation into Jeffrey Epstein, *Perversion of Justice. See* TAC, ¶ 90. In its Motion to Dismiss, the United States cited the link to the series' frontpage, titled *Epstein: Here is every Perversion of Justice story so far* (ECF 62, p. 2, fn. 1).[4] The *Miami Herald* published the first installment of Brown's three-part investigation on November 28, 2018. *Id.* In addition to Brown's reporting, the series comprised "more

---

[4] *See Perversion of Justice: Jeffrey Epstein*, The Miami Herald, November 28, 2018, https://www.miamiherald.com/news/local/article238237729.html (last visited 11/05/2025).

- 5 -

than 80 stories, editorials, columns, and videos" by *Miami Herald* journalists. *Id.* The series' final article (accessible from the provided link) was published on December 30, 2019. *Id.*

In their Response, Plaintiffs disputed that the *Perversion of Justice* series "mention[ed] that the FBI received a credible tip in 1996." *See* ECF 71, p. 14. According to the Plaintiffs, it was only "when the JP Morgan litigation revealed the causal link between the FBI investigation and the Epstein sex-trafficking ring in 2023" that the statute of limitations on their claims began to run. *Id.* Plaintiffs claimed that it "was not until 2023 that there was even an inkling that Plaintiffs' injuries were caused by the FBI's negligence" *Id.*, p. 15 (emphasis added).

In its Reply, the United States rebutted this claim by citing to an April 16, 2019 article within the *Perversion of Justice* series which discussed an affidavit filed by Maria Farmer in federal court. *See* ECF 73, p. 3, fn. 2. Farmer's affidavit detailed her purported 1996 report to the FBI of Epstein's abuse and the FBI's failure to launch an investigation at that time. *Id.* Plaintiffs characterize this rebuttal as a "bait-and-switch" (Motion, p. 3), ignoring the fact that the Farmer affidavit is mentioned in both the Third Amended Complaint and in Plaintiffs' Response. *Compare* TAC ¶¶ 79, 108, 121(a) *and* Response, pp. 2, 4.

The United States' overarching rationale supporting its statute of limitations defense is that "decades of innumerable news stories, court cases, and congressional hearings covering the FBI's investigation into Epstein" triggered Plaintiffs' diligence discovery duties long before they filed their administrative claims in May 2023. *See* Motion to Dismiss, ECF 62, p. 5. The United States' argument that Plaintiffs should have been put on notice of the FBI's alleged culpability for their injuries "as early as" November 28, 2018—the date the *Miami Herald* first began publishing its investigative series—but certainly "no later than" November 12, 2020—the date the Washington Post published the Office of Professional Responsibility's ("OPR") full report—clearly encompasses not just the entirety of the *Miami Herald's* lengthy *Perversion of Justice* investigation, but the myriad of other public discussions of the FBI's investigation. *Id.*, p. 2. As cited in the underlying motion and in the TAC itself,

there was a wealth of public information that the FBI had received information of wrongdoing and conducted investigations of Epstein, but no federal charges were filed against him until 2019.[5]

In short, the Reply's reference to the 2019 *Miami Herald* article and to Farmer's affidavit should not be a surprise to anyone. Rather, it was in direct response to the new arguments made in Plaintiffs' brief: that they could not reasonably have discovered "the causal link between the FBI investigation and the Epstein sex-trafficking ring" until 2023. *See* Response, p. 14. Their argument flies in the face of contrary information contained with both the *Miami Herald* investigation and the OPR report, which fully set forth in the public domain that the FBI's investigation did not result in federal charges against Epstein in 2007.[6] This prosecution declination was within U.S. Attorney Acosta's "'plenary authority' under established federal law and Department [of Justice] policy to resolve the case as he deemed necessary and appropriate, as long as his decision was not motivated or influenced by improper factors." OPR Report, p. ix, 120, 136.

---

[5] Plaintiffs' claimed surprise at references to other news stories and court cases is difficult to square with the fact that the United States' Motion to Dismiss the First Amended Complaint compiled a lengthy—but not exhaustive—list of examples of news stories, court cases, and congressional hearings detailing the FBI's investigation into Epstein going back as far as August 14, 2006. *See* ECF 26 at p. 16, 32-34. *See also Does v. United States*, 359 F. Supp. 3d 1201, 1204-17 (S.D. Fla. February 21, 2019) (*Marra, J.*). (discussing at length the FBI's investigatory decisions in the context of the petitioners' attempt to vacate the non-prosecution agreement between the S.D. Fla. United States Attorney's Office and Epstein pursuant to the Crime Victims' Rights Act of 2004, 18 U.S.C. §3771.)

[6] *See*, *e.g.* September 24, 2007 Non-Prosecution Agreement, Exhibit 3 (p. 327) of the OPR's *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of Its 2006–2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation. Read the Report*, The Washington Post, November 12, 2020, https://www.washingtonpost.com/context/read-the-report-investigation-into-the-u-sattorney-s-office-for-the-southern-district-of-florida-s-resolution-of-its-2006-2008-federal-criminal-investigation-of-jeffrey-epstein-and-its-interactions-with-victimsduring-the-investigation/db9373e8-22f8-4712-b4a7-be844d162de0/?itid=lk_inline_manual_4 (last visited November 5, 2025).

The United States' discussion of the *Perversion of Justice* articles in its Reply does not constitute valid grounds to grant Plaintiff's Motion.

### 2. The United States Was Required to Respond to Plaintiffs' Equitable Tolling Legal Theory, First Asserted in Their Response

Plaintiffs next argue that the United States's Reply presented "for the first time," arguments that "Plaintiffs was [sic] not sufficiently diligent for the statute of limitations to toll because they did not submit FOIA requests to investigate whether the FBI was negligent prior to the revelations in the JP Morgan case." Motion, p. 4. True, because Plaintiffs—for the first time in their Response—asserted that the FTCA's two-year statute of limitations should be equitably tolled. *See* Response, ECF 71, p. 13. In contrast, the Third Amended Complaint argued only that Plaintiffs' administrative claims were timely filed pursuant to the "discovery rule." *See* TAC, ¶ 31. As the United States explained, these are two different doctrines, and Plaintiffs' pivot to a new legal theory necessitated the Reply pointing out that Plaintiffs had not acted diligently as required by their newly asserted equitable tolling theory. *See* Reply, p. 1, citing *Julin v. Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1305 (S.D. Fla. 2010) (*Marra, J.*) (noting that "equitable tolling" and the "diligence-discovery rule" are separate doctrines).

Plaintiffs also argue that it was inappropriate for the government to cite a Freedom of Information Act ("FOIA") response as an example of what could have been done to provide some level of factual basis for application of the equitable tolling rule. Motion, p. 4. They further argue that a FOIA request would have been futile in disclosing relevant information about the FBI's investigation. *Id.*, p. 5.

As this Court knows, a FOIA request is a commonly utilized endeavor for members of the public and press to inquire about alleged government misconduct. The absence of any FOIA request allegations or other attempts to learn what information was in the public domain of the FBI's investigations in support of an assertion of diligence was telling in Plaintiffs' Response. In the cited FOIA response, the FBI published its documents on a rolling basis between May 22, 2018 and February 20, 2020. *See* Reply, p. 2, fn. 1. Had Plaintiffs, in exercising reasonable

diligence, reviewed Part 01 of the released files, they would have learned that the FBI requested an investigation be opened against Epstein on <u>July 24, 2006</u>, subsequent to the Palm Beach County Police Department's child prostitution investigation against Epstein.[7] Thus, Plaintiffs' assertion that they engaged in reasonable diligence is at odds with the wealth of publicly available information well prior to 2023. Pointing out this inconsistency through an actual FOIA request in response to Plaintiffs' new equitable tolling theory—an extraordinary remedy which is dependent on exceptional circumstances that are both beyond the plaintiff's control and unavoidable even with reasonable diligence—was entirely fair game in the United States' Reply.

Not all instances of new arguments require sur-replies. "If…the new arguments simply respond to arguments raised in a response brief, no sur-reply is warranted." *Chemence Med. Prods., Inc. v. Medline Indus., Inc.*, 119 F. Supp. 3d 1376, 1382 (N.D. Ga. 2015). And even if not advanced directly in the initial brief, an argument that was "reasonably presented" in "a fair reading of [the movant's] principal brief" may not be considered a new argument. *E.G. v. Companion Benefit Alternatives, Inc.*, No. 18-cv-0265, 2018 U.S. Dist. LEXIS 165204, 2018 WL 4623653, at *1 n.1 (S.D. Ala. Sept. 26, 2018). The fact that the United States responded to a new legal theory raised in Plaintiffs' brief does not constitute valid grounds to grant Plaintiff's Motion.

### 3. The United States Accurately Represented the *Stoneman Douglas* Holding

The United States flatly disagrees with Plaintiffs' reading of the *Stoneman Douglas* decision. Therein, the Court engaged in a lengthy analysis of the application of the undertaking doctrine based upon the plaintiffs' allegation that the caller to the PAL line refrained from contacting high school or other federal law enforcement agencies in a response to oral representations by the FBI's PAL team. *See Stoneman*

---

[7] *See* Jeffrey Epstein Part 01, p. 7, https://vault.fbi.gov/jeffrey-epstein/Jeffrey%20Epstein%20Part%2001/view (last visited 11/05/2025).

*Douglas*, 482 F. Supp. 3d at 1289-1300. Based thereon, the Court found that "Plaintiffs have alleged sufficient facts to satisfy the duty element…pursuant to Florida negligence law." *Id.* at 1300. "(T)he Court rejects the United States' argument that the undertaking doctrine is inapplicable[.]" *Id.* at 1292-93.[8]

The application of the undertaking doctrine in denying the motion to dismiss due to the allegations of detrimental reliance completely distinguishes the *Stoneman Douglas* decision from the TAC, where no allegations of express promises or detrimental reliance are alleged. Rather, the TAC relies upon an alleged mandatory duty of the FBI to generally prevent crime. See TAC, ¶¶ 74, 110, 118, 119. In the absence of the creation of a special duty, Plaintiffs' reliance on a general duty to prevent crime is misplaced. *See Stoneman Douglas*, 482 F. Supp. 3d at 1289 ("We start with the principle that, under Florida law, there is generally no duty to stop crime or to otherwise prevent the misconduct of third parties."). In the absence of those allegations, no specialized duty by the FBI in favor of the victims of Epstein's abuse existed, and the United States was correct in its analysis that the *Stoneman Douglas* decision is distinguishable from the instant action. Plaintiffs are simply wrong in alleging that the United States' deliberately misinterpreted the *Stoneman Douglas* decision; their baseless contention certainly does not constitute valid grounds to grant Plaintiffs' instant Motion.

---

[8] A fair reading of the *Stoneman Douglas* Consolidated Verified Amended Complaint shows that plaintiffs took great pains to allege the existence of a special relationship with the FBI due to the caller's reliance on the FBI's representations. *Compare Guttenberg, et. al. v. United States*, S.D.F.L. Case No. 18-cv-62758 (ECF 190 at ¶¶ 56-64, 166, 168) (discussing the *Stoneman Douglas* plaintiffs' reliance on the FBI's representations to establish a duty) *with Pierre v. Jenne*, 795 So. 2d 1062, 1064 (Fla. 4th DCA 2001) (identifying the elements of a special relationship between a government actor and an alleged tort victim as 1) an express promise or assurance of assistance; 2) justifiable reliance on the promise of assistance; and 3) harm suffered because of the reliance upon the express promise or assurance of assistance) *and Scruggs v. United States*, 959 F. Supp. 1537, 1545 (S.D. Fla. 1997) (*Moore, J.*) ("If there has been no <u>undertaking</u> by the defendant for the plaintiff's benefit, then no duty exists absent a <u>special relationship</u> between the parties.") (emphasis added).

### 4. The Reply's Underlining of the Words "<u>Recommend</u>" and "<u>Mandate</u>" Is Clearly for Emphasis

Plaintiffs' Response cites to the FBI's Manual of Investigative Operations and Guidelines, § 31 which they contend "require specific investigative steps to be taken, including procuring a signed witness statement from the victim, evidence, documents, and additional information[.]" Response, p, 2. Plaintiffs argue the alleged violation of these "mandatory internal policies" establishes that the FBI's investigators did not have discretion in the manner in which they initiated and conducted their investigation into Epstein, and thus the FTCA's discretionary function exception does not apply. *Id.*, p. 6, citing ECF 71-1, p. 41-51.

The United States disagreed with Plaintiffs' interpretation of the cited FBI policies, arguing that:

> But these policies, which require tips to "be taken seriously and thoroughly investigated" and recommend "thoroughly handling all cases," *id.*, are themselves discretionary; although these policies <u>recommend</u> certain investigatory procedures, they do not <u>mandate</u> any specific course of action for agents to follow.

Reply, p. 8-9 (emphasis original). In response, Plaintiffs now contend that:

> Defendant's emphasis on the word "recommend" is an effort to wrongly suggest to the Court that "recommend" is language from the policies itself, despite "recommend" not appearing anywhere in the actual document, and is another attempt by Defendant to misrepresent the facts when Defendant thought Plaintiffs would have no opportunity to respond.

Motion, p. 3.

Plaintiffs' distorted reading of the United States' argument is wrong for two reasons. First, no rational reading of the United States' argument would interpret it as an attempt to insert non-existent words into cited FBI policy. Underlining the words "recommend" and "mandate" was clearly for <u>emphasis</u>, and were used outside of the quoted language from the policies themselves. Second, the use of the word "thorough" has long been understood to be discretionary, absent additional language providing specific guidelines. *See Hart v. United States*, 894 F.2d 1539, 1547 n.10

(11th Cir. 1990) (finding that the U.S. Army's polices detailing whether POW/MIA crash site recovery efforts "were thorough and complete" was discretionary because "[t]here is no guideline or standard defining appropriately thorough search procedures."); *c.f. Shansky v. United States*, 164 F.3d 688, 691 (1st Cir. 1999) (a "broadly worded expression of a general policy goal contained in the [agency's] operating manual . . . suggests that the [agency] and its functionaries will have to make discretionary judgments about how to apply concretely the aspirational goal embedded in the statement."); *see also Crenshaw v. United States*, 959 F. Supp. 399, 402-03 (S.D. Tex. 1997) (concluding that FTCA claims for negligent investigative activities against the FBI and NASA-OIG were barred by the discretionary function exception because agents' "decisions to take or refrain from certain actions were controlled by their desire to obtain…evidence," which "correlates with the public policy goal of punishing and deterring those who violate federal laws."). Plaintiffs' inaccurate interpretation of the United States' brief does not constitute valid grounds to grant Plaintiff's Motion.

### III. CONCLUSION

For these reasons, Plaintiffs' Motion should be denied in its entirety.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:   *John S. Leinicke*
JOHN S. LEINICKE
ASSISTANT UNITED STATES ATTORNEY
Fla. Bar No. 64927
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9212
E-mail: john.leinicke@usdoj.gov

- 13 -

By: *Steven R. Petri*
STEVEN R. PETRI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. A5500048
United States Attorney's Office
Southern District of Florida
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 660-5799
E-mail: steve.petri@usdoj.gov

*Counsel for United States of America*