UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:25-CV-80880 LEIBOWITZ / MCCABE

JANE DOE 1, et al.,

 *Plaintiffs*,

vs.

UNITED STATES OF AMERICA,

 *Defendant*.

_____/

PLAINTIFFS' REPLY TO THEIR
MOTION TO DENY
THE UNITED STATES OF AMERICA'S
MOTION TO DISMISS, STRIKE
IMPROPER STATEMENTS WITHIN
THE UNITED STATES OF AMERICA'S
REPLY BRIEF OR FOR LEAVE
TO FILE SUR-REPLY

Defendant's opposition to Plaintiffs' motion provides a prime example of why Plaintiffs made the present motion – to address Defendant's misconduct, including its willingness to knowingly misrepresent facts and the law to this Court. Whereas Plaintiffs, in their motion, provided this Court with screenshot images of what Defendant represented to this Court in Defendant's reply to its motion to dismiss, Defendant, in response, chose to double-down on its misrepresentations and focus on other matters. As such, Defendant fails to provide any explanation for its previous misrepresentations, and Plaintiffs' motion should be granted in full.

As Defendant admits, this Court has the inherent power to strike a filing when there is a showing of bad faith. Def. Opp., p. 3. An "earnest reading" of Defendant's papers shows a pattern of attempts to mislead this Court. As set forth in Plaintiffs' Motion and again herein, Defendant attempted to broaden the scope of evidence by introducing new arguments and evidence on reply (which is explicitly against Local Rule 7(c)(1)), directly and materially misrepresented the holding of an analogous case to this Court, and attempted to mislead this Court by adding emphasis to key words in support of their case that did not appear in the referenced material. Much of this is not denied in Defendant's opposition. As such, this Court should find Defendant's actions to be done in bad faith, and either deny Defendant's motion to dismiss, strike the reply or the offending portions of the reply to Defendant's motion to dismiss, or grant Plaintiffs leave to file a sur-reply to address the improper arguments in Defendant's reply.

I.  **Defendant Continues to Knowingly Misrepresent the Most Analogous Case, *Marjory Stoneman Douglas,* Even After Plaintiffs Identified Defendant's Misrepresentations.**

In Defendant's motion to dismiss, Defendant falsely stated that the decision in *Marjory Stoneman Douglas* was based on the plaintiff in that action adequately pleading and demonstrating a special relationship between the plaintiff and the defendant, and therefore, the Complaint in this action, which does not allege a special relationship, must be dismissed. However, as explained thoroughly by Plaintiffs in their papers supporting the present motion, the *Marjory Stoneman Douglas* decision explicitly stated the exact opposite of what Defendant represented, specifically that the motion to dismiss in that action should be denied even though the, "Complaint does not allege that the Government's duty derived from a special relationship." As such, Plaintiffs demonstrated, unequivocally, that Defendant made a material misrepresentation of the law in its reply papers (when it knew Plaintiffs would not have an opportunity to respond), in an effort to

1

wrongly influence this Court into dismissing Plaintiffs' claims before discovery could be conducted.

Amazingly, against this backdrop, rather than explain how it misunderstood the plain language of the *Marjory Stoneman Douglas* decision, Defendant opted to double down, by incomprehensibly arguing (in a footnote (8)) that "a fair reading of the *Stoneman Douglas* Consolidated Verified Amended Complaint shows that plaintiffs took great pains to allege the existence of a special relationship with the FBI…" Even though the first misrepresentation, made in the Defendant's motion to dismiss, while seemingly intentional, could be explained away as a mistake by Defendant, this second effort to misrepresent the decision in *Marjory Stoneman Douglas*, even after Plaintiffs confronted Defendant with their misrepresentation, can only be interpreted as intentional.

That Defendant misrepresented the decision in *Marjory Stoneman Douglas* is inarguable. Plaintiffs' motion took images (at pp. 8-9) from *Marjory Stoneman Douglas*, which conclusively established that this very Court explicitly held (at pp. 1286-8), against the very same Defendant, that making a "special relationship argument is particularly puzzling in the instant case," because the "Complaint does not allege that the Government's duty derived from a special relationship." (Emphasis added). Yet, Defendant made the same "puzzling" (and rejected) argument here, which is even more, "puzzling," given that Defendant is already on notice that this argument is baseless, both from its admonishment by the Court in *Marjory Stoneman Douglas* and Plaintiffs' present motion identifying Defendant's bastardization of the *Marjory Stoneman Douglas* decision. Simply put, there is no plausible, good faith explanation for the same Defendant to turn around and represent to this Court that the *Marjory Stoneman Douglas* Complaint established a special relationship when the Court held the opposite.

Such conduct in-and-of itself warrants denying Defendant's motion to dismiss, as Defendant's motion can be denied based on the movant's misconduct. *See Marjory Stoneman Douglas*, 482 F Supp 3d 1273, 1277 (S.D. Fla. 2020).

Worse, this is not an isolated incident; Defendant also misrepresented the applicability of *Trianon,* even though its application was explicitly rejected by this Court in *Marjory Stoneman Douglas*. Specifically, in its motion, Plaintiffs asserted (at pp. 6-7) that Defendant misleadingly represented (at pp. 4, 7-8) that *Trianon* was more applicable to this FTCA case than *Marjory*

2

*Stoneman Douglas*, despite *Marjory Stoneman Douglas* explicitly holding that *Trianon* does not apply to cases under the FTCA. So that there could be no question, Plaintiffs, once again, provided a screenshot image (at pp. 9-10) with the exact holding from *Marjory Stoneman Douglas* where this Court (at n. 3) explicitly held that "Florida's *Trianon* analysis -- which pervades the United States' analysis at every turn -- differs fundamentally from federal courts' duty analysis under the FTCA." This Court did not mince words in writing (at n. 3) that Defendant's multi-page *Trianon* analysis was "disingenuous." Yet, the *same* Defendant regurgitated (over multiple pages) the *same* "disingenuous" argument in this case, even though this Court explicitly rejected it as having no merit in *Marjory Stoneman Douglas.*

With an opportunity to explain why Defendant did that, all it could muster (at p. 9) is that the "United States flatly disagrees with Plaintiffs' reading of the *Stoneman Douglas* decision." However, Defendant does not offer any explanation about why it advocated for the *Trianon* analysis, even though this Court explicitly held in *Marjory Stoneman Douglas* that "Florida's *Trianon* analysis -- which pervades the United States' analysis at every turn -- differs fundamentally from federal courts' duty analysis under the FTCA." Indeed, *Trianon* does not appear in Defendant's opposition a single time, and as such, Defendant never adequately addresses this misrepresentation either.[1]

Accordingly, Defendant's willingness to knowingly misrepresent the law requires consequences, either by denying Defendant's motion to dismiss where the misrepresentations were initially made, striking (or disregarding) those improper portions of the motion, or granting leave to Plaintiffs to file a sur-reply to directly address Defendant's improper arguments. Moreover,

---

1 Ironically, while Defendant neglects to address its misrepresentations in its opposition, Defendant instead goes on the offensive, wrongly claiming, based on semantics, that Plaintiffs misrepresent the relief justified by *Atl. Specialty Ins. Co.* Def. Opp. at p. 2. Whereas Plaintiffs referred to that case as permitting this Court to strike improper portions of Defendant's reply (something Defendant admits (Def. Opp., p. 3) is within this Court's authority), Defendant argues that the *Atl. Specialty Co*. motion only requested that the court disregard the improper arguments, rather than strike them. Yet, ignoring a portion of the record when making a final determination is the same as striking it, as exemplified by *Baez v. MSC Cruises S.A.*, which Plaintiffs previously referenced, which cites *Atl. Specialty Ins. Co.* in the context of a motion to strike. *Baez v MSC Cruises, S.A.*, 2022 US Dist LEXIS 109512, at *10 (S.D. Fla. June 20, 2022). As such, Defendant's complaint turns purely on semantics, and is much ado about nothing.

Defendant's inability to distinguish *Marjory Stoneman Douglas* without misrepresenting this Court's holding establishes that this Court should follow that precedent and deny Defendant's motion to dismiss.

## II. Defendant Addresses the Allegations of its Bait-and-Switch of News Articles by Presenting a New News Article as a Further Bait-and-Switch.

Amazingly, Defendant also doubles down on its bait-and-switch of supporting documents in a manner demonstrating Defendant's willingness to mislead the Court to avoid discovery and dismiss Plaintiffs' claims.

As Plaintiffs explained, Defendant pulled a bait-and-switch by citing an article in its motion to dismiss, only to swap it with a different article when Plaintiffs rightfully identified that the article cited by Defendant does not say what Defendant claims it says. Specifically, in its motion, Defendant claimed that the article *Perversion of Justice*, dated November 28, 2018, gave Plaintiffs notice of the FBI's investigation into Jeffrey Espstein. First, the salient issue is not when the Plaintiffs first could have learned of the FBI's investigation, but rather, when Plaintiffs first could have learned that the FBI was negligent in their investigation, such that Plaintiffs' injuries were caused by Defendant's negligence. Second, Plaintiffs' Complaint is based, in part, on allegations that Plaintiffs were unaware that a tip given to the FBI in 1997 was not properly investigated, and pointed out, in response to Defendant's November 28, 2018 article, that the article made no reference to 1997 at all, and thus could not have provided notice of the facts alleged in the Complaint. Defendant, in turn, switched out the November 28, 2018 article with a new article, titled *New Jeffery Epstein Accuser Goes Public* dated April 16, 2019, to argue that Plaintiffs' arguments about the content of the November 2018 article were "flatly untrue," treating the April 16, 2019 article as if it were the November 2018 article Defendant first presented. This bait-and-switch was identified and explained by Plaintiffs in its motion.

In response, Defendant acknowledges that there was an original investigation by the Miami Herald from which the November 28, 2018 articles arose, after which other articles were published "in addition to" the original series. Def. Opp. p. 5. However, Defendant also claims (at pp. 5-6) that when it cited to the November 28, 2018 articles in its motion to dismiss (for which Defendant emphasized the date of publication as November 28, 2018), it was actually referring to a *third* source, *Epstein: Here is every Perversion of Justice story so far*, dated December 30, 2019. In this

4

way, Defendant has tried to mitigate its bait-and-switch of the November 2018 article with an April 2019 article by adding a third article (and second bait-and-switch).[2]

Defendant attempts to justify this bait-and-switch by claiming that since Plaintiffs mentioned an affidavit by Maria Farmer in their Third Amended Complaint and their opposition to Defendant's motion to dismiss, Defendant could introduce the April 2019 article for the first time on reply because it also mentions the Farmer affidavit. However, this argument ignores that Defendant did not merely cite to that article but also claimed that Plaintiffs' arguments regarding the content of the November 2018 article were "flatly untrue" by presenting the April 2019 article as though it were the November 2018 article initially cited by Defendant and commented on by Plaintiffs. It also ignores that Defendant could have cited the April 2019 article in its initial motion papers, but chose not to do so, instead only citing the November 2018 article.

Ultimately, news stories stating that the FBI was investigating Jeffrey Epstein are irrelevant to the issue presented by Defendant's motion to dismiss, namely, when Plaintiffs first knew or should have known that the FBI *was negligent* in their investigation of Jeffrey Epstein *in a manner that caused* their injuries. Nonetheless, Defendant's willingness to misrepresent the record and to switch out evidence to wrongly paint Plaintiff as making "flatly untrue" statements, in conjunction with Defendant's other misconduct, demonstrates a concerted and improper effort by Defendant to mislead this Court, all to avoid discovery. The Court should not permit this type of conduct, and must respond with significant consequences, including denying Defendant's motion to dismiss, striking Defendant's reply, striking (or disregarding) the improper portions of Defendant's reply papers, or granting Plaintiffs leave to file a sur-reply, to ensure that Defendant does not continue to engage in gamesmanship at the expense of truth.

### III. Defendant Emphasized a Word That Was Not in the Policies and Procedures and Now Emphasizes a Different Word Within One Subset of the Policies and Procedures.

---

[2] To the extent that Defendant states that they included a link, this link alone, absent any reference to the title or publication date, is defective to direct Plaintiffs or this Court to any source other than the one explicitly cited. Rule 18.2.2(c) of the Bluebook states that when citing to an internet source, "the date should be provided as it appears on the internet site. Use only dates that refer clearly to the material cited." The Bluebook: A Uniform System of Citation, Rule 18.2.2(c)(Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020).

Plaintiffs also demonstrated how Defendant emphasized the word "recommend" when discussing a *mandatory* FBI policy, even though that policy does not the word "recommend" at all. In response, Defendant now claims (at p. 11) that Plaintiffs are incorrect, because it only underlined the word, "recommend," for emphasis. Yet, in so arguing, Defendant makes Plaintiffs' point, that it emphasized a word nowhere in the rule, because it wanted to create the impression to the Court that the mandatory rule was only "recommended" even though the rule states nothing of the sort. As such, Defendant has only confirmed its duplicitous tactic.

In its motion to dismiss, Defendant initially represented to this Court that there were no policies and procedures relevant to its investigation of Jeffrey Epstein. When Plaintiffs provided the policies and procedures in opposition, Defendant argued on reply (at pp. 8-9) that the policies and procedures cited by Plaintiffs were discretionary, emphasizing that they only "<u>recommend</u>" certain actions. (<u>Emphasis</u> in original). In the present motion, Plaintiff noted how Defendant emphasized the word "<u>recommend</u>" to imply that it was part of the language of the rule, even though it does not appear therein.

In its opposition, Defendant does not even attempt to deny that its goal in emphasizing "<u>recommend</u>" was to mislead this Court. Rather, Defendant claims that its use of "<u>recommend</u>" was proper, because the rule's use of the word, "thoroughly" renders it per-se discretionary. However, that argument fails, because, as per Defendant (at p. 11), the word "thorough" only indicates that a rule is discretionary, "<u>absent additional language providing specific guidelines in the absence of other procedures</u>." (<u>Emphasis</u> added). Here, Plaintiffs presented specific guidelines setting forth the explicit procedures to be followed. Pltf. Resp., at pp. 8-9, Pltf. Mtn., at p. 8; *citing* FBI Manual of Investigative and Operative Procedures, §§ 31.3.1, 31-4, 31-4.1. As such, even when Defendant pivots to another word to support its wrongful implication that the rule was "recommended" rather than mandatory, Defendant's argument fails, because the new word highlighted by Defendant, "thorough," does not mean that the rule is discretionary, as Defendant contends.

Accordingly, as Defendant does not deny its deceptive purpose, this Court should find that this was a showing of bad faith and deny their motion to dismiss.

IV. **Defendants' New Allegation that Plaintiffs Should Have Known that the FBI's Negligent Investigation Caused Injury Because Plaintiffs Could Have Served FOIA Requests on the FBI is Absurd and was Improperly Made on Reply.**

Finally, Defendant's newly added argument in its reply papers that Plaintiffs should have been deemed to have known or should have known of the FBI's negligent investigation because Plaintiffs could have made FOIA requests is truly laughable and establishes the absurdity of its positions and motion to dismiss.

This is evident from Attorney General Pam Bondi's exasperation over the FBI's refusal to provide documents to the DOJ. *Letter from Pamela Bondi, Attorney General of the United States to Kash Patel, Director of the Fed. Bureau of Investigation* (Feb. 27, 2025, last visited Nov. 13, 2025) https://www.justice.gov/ag/media/1391331/dl?inline. Surely, this Court should not assume that Plaintiffs would have been more successful in obtaining information about Defendant's investigation into Jeffrey Epstein, including Defendant's negligence in that investigation, easier than the Attorney General of the United States.

As such, Plaintiffs rightfully pointed out that Defendant's addition of that absurd legal argument for the first time in its reply, when Defendant knew Plaintiffs could not respond to it, was improper, as Defendant could have made the same absurd argument about Plaintiffs' diligence in its underlying motion papers.

That Defendant would make such an absurd argument for the first time on reply, in conjunction with the other misrepresentations and gamesmanship identified by Plaintiffs in this motion, demonstrates the egregiousness of Defendant's misconduct. As such, Defendant's motion to dismiss should either be dismissed, or, at the very least, Defendant's reply should be disregarded and stricken from the record. Alternatively, Plaintiffs should be afforded an opportunity to file a sur-reply, or the offending portions of Defendant's reply should be stricken or disregarded by this Court.

**Conclusion**

In sum, Defendant's meager attempts to deny that its reply contained many new arguments and claims are hollow and false. Particularly problematic is Defendant's willingness to knowingly misrepresent the decision in *Marjory Stoneman Douglas*, the case most analogous to the present one, even after Plaintiffs have identified Defendant's misrepresentations. This intentional

7

misconduct is especially troubling because it demonstrates a pattern by Defendant, as Defendant was also admonished in *Marjory Stoneman Douglas* for discovery conduct and making disingenuous arguments, and is now willing to misrepresent the law to avoid discovery here. That it was accompanied by other improper arguments, including switching out articles to claim that Plaintiffs made "flatly untrue" statements about the swapped-out article, emphasizing words from rules that do not appear in the rule itself, and presenting new absurd arguments about Plaintiffs' obligation to make FOIA requests when Defendant knew Plaintiffs would have no opportunity to respond, demonstrate the concerted and intentional nature of Defendants' misconduct. Defendant should not be allowed to continue to ignore the findings of the *Marjory Stoneman Douglas* decision and misrepresent the facts and law to this Court with impunity. Defendant's conduct is simply egregious. It cannot be a mistake. Accordingly, this Court should take the opportunity to address this conduct in the exact same way that it did in *Marjory Stoneman Douglas*, and deny Defendant's motion to dismiss so that discovery can commence.

Date: November 14, 2025

By: /s/ Jordan K. Merson_____
Jordan Merson, Esq.
Jennifer Plotkin, Esq.
Merson Law, PLLC
Attorneys for Plaintiffs
950 Third Avenue, 18th Floor
New York, New York 10022
Telephone:(212)-603-9100
Facsimile : (347) 441-4171
Email : jmerson@mersonlaw.com
Email : jplotkin@mersonlaw.com

By: /s/Todd J. Michaels, Esq_____
Todd J. Michaels, Esq.
The Haggard Law Firm
Attorneys for Plaintiffs
330 Alhambra Circle
Coral Gables, FL. 33134
Office: (305) 446-5700
Cell: (305) 775-0339
Facsimile: (305) 446-1154
Email: tmichaels@haggardlawfirm.com