UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80880-Leibowitz/McCabe

JANE DOE 1, et al.,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's motion to dismiss, which was referred to the undersigned by United States District Judge David S. Leibowitz.  (DE 62, DE 75).  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED**.

## I.    BACKGROUND

This is a negligence case against the United States brought by numerous sexual abuse victims of Jeffrey Epstein.  Plaintiffs allege that the Federal Bureau of Investigation ("FBI") acted negligently in failing to timely investigate Epstein, arrest him, and prevent him from committing further crimes, including those committed against Plaintiffs.  The Court accepts the following facts as true, taken from Plaintiffs' Third Amended Complaint ("TAC").  (DE 61).

In 1996, Maria Farmer reported to the FBI that Epstein had sexually assaulted her as well as her sister and numerous other minors and vulnerable young women.  (DE 61 ¶ 79).  In response, the FBI did nothing to investigate the report.  (DE 61 ¶ 79).  Between 1996 and 2005, the FBI continued to receive additional reports, complaints, and tips concerning Epstein's criminal activities, including illegal sex trafficking of women and underage minors, sexual abuse, and human rights violations. (DE 61 ¶ 80).  In response, the FBI failed to act upon and investigate these complaints and tips and

failed to follow its own internal protocols for sex trafficking investigations.  (DE 61 ¶ 80).

In 2006, the FBI opened an investigation into Epstein's criminal activities.  (DE 61 ¶ 8). However, the investigation "went nowhere" due to the FBI's failure to follow up appropriately on tips and to otherwise conduct a competent investigation.  (DE 61 ¶¶ 8, 94-98).  The FBI closed the investigation on September 18, 2008.  (DE 61 ¶ 98).

Also in 2008, the U.S. Attorney for the Southern District of Florida entered into a non-prosecution agreement with Epstein.  (DE 61 ¶¶ 17, 113).  The agreement called for Epstein to plead guilty to a Florida state charge for solicitation of a minor.  (DE 61 ¶ 17).  In exchange, the agreement spared Epstein from prosecution on federal sex-trafficking charges.  (DE 61 ¶ 113).  As part of the agreement, Epstein agreed to serve 13 months in jail on the state charge, but the agreement allowed him to leave the jail every day for work release.  (DE 61 ¶¶ 17, 100).  Epstein continued to sexually abuse minors while on work release from his state jail sentence.  (DE 61 ¶¶ 17, 100).  The Department of Justice ("DOJ") later concluded that the U.S. Attorney for the Southern District of Florida exercised "poor judgment" by entering into the non-prosecution agreement.  (DE 61 ¶ 18).

Following the 2008 non-prosecution agreement, the FBI continued to receive additional tips and complaints that Epstein was continuing to engage in sex trafficking crimes against minors.  (DE 61 ¶ 19).  Once again, the FBI failed to follow up appropriately or to otherwise conduct a competent investigation of these tips and complaints.  (DE 61 ¶¶ 94, 98).

On July 6, 2019, the FBI finally arrested Epstein on federal sex trafficking charges brought by the U.S. Attorney for the Southern District of New York.  (DE 61 ¶¶ 20, 103).  On August 10, 2019—approximately one month after his arrest—Epstein died in prison from an apparent suicide. (DE 61 ¶¶ 20, 103).  As a result, Epstein never went to trial on federal sex trafficking charges.  (DE

61 ¶¶ 20, 103).

Plaintiffs allege that Epstein sexually abused each of them on various occasions between 1996 and 2017.  (DE 61 ¶¶ 7, 32-65, 115-16, 122).  Plaintiffs allege that the FBI owed them a duty of care to timely investigate Epstein and prevent him from committing further crimes.  (DE 61 ¶¶ 25, 74, 110, 118-20).  According to Plaintiffs, FBI agents breached this duty in numerous ways, including the following:

- Failing to timely investigate tips, reports, and complaints concerning Epstein.  (DE 61 ¶¶ 8, 21, 22, 112, 121-a, 121-b, 121-c, 121-d, 121-e, 121-j, 121-k, 121-n).

- Failing to interview victims.  (DE 61 ¶¶ 17, 4, 94, 115, 121-f).

- Failing to follow mandatory, non-discretionary FBI protocols regarding the conduct of sex trafficking investigations.  (DE 61 ¶¶ 15, 21, 80, 110, 119, 122).

- Failing to investigate red flags.  (DE 61 ¶¶ 83-84).

- Prematurely closing the initial investigation of Epstein in 2008.  (DE 61 ¶¶ 109, 121-l).

- Failing to arrest Epstein until 2019.  (DE 61 ¶ 98).

Plaintiffs allege that the FBI's misconduct proximately caused them to suffer injuries.  (DE 61 ¶ 122).  Specifically, they alleged that, but for the FBI's failures, the FBI would have discovered Epstein's crimes and arrested him much earlier.  (DE 61 ¶¶ 86, 95, 122).  Had the FBI done so, Plaintiffs allege Epstein would not have been free to commit further crimes, including the crimes committed against Plaintiffs.  (DE 61 ¶¶ 21, 95, 110, 112, 115, 119, 122).

Based on the above, Plaintiffs bring a single count of negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. ("FTCA").  (DE 61).  Although Plaintiffs refer repeatedly to the U.S.

Attorney for the Southern District of Florida and the DOJ throughout the TAC, the negligence count identifies the FBI as the only agency whose employees caused Plaintiffs' injuries.  (DE 61 ¶¶ 118-22).  Plaintiffs seek $200 million in compensatory damages as well as other relief.  (DE 61 at 29).

## II.   <u>LEGAL STANDARD</u>

By way of this motion, Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  As to Rule 12(b)(1), Defendant makes a facial attack on subject matter jurisdiction, arguing that Plaintiffs' claims fall outside the scope of the FTCA, such that the United States retains its sovereign immunity as to those claims.  (DE 62).  When a defendant makes a facial attack on subject matter jurisdiction, a court must "look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

As to Rule 12(b)(6), Defendant argues that the TAC fails to state a claim upon which relief can be granted.  (DE 62).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

III.   **DISCUSSION**

Defendant urges the Court to dismiss the TAC for five reasons.  As set forth below, the Court accepts two of these arguments but rejects the remaining three.

A.   **Discretionary Function Exception**

Defendant first argues that Plaintiffs' negligence claim fails due to the discretionary function exception set forth in 28 U.S.C. § 2680(a).  (DE 62 at 11).  For the reasons described below, the Court agrees that the discretionary function exception applies here.  As a result, the Court lacks subject matter jurisdiction over this case.

By way of the FTCA, Congress has agreed to waive the federal government's sovereign immunity for limited categories of cases.  *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013).  Because the FTCA waives sovereign immunity, the statute "must be strictly construed in favor of the United States" and "not enlarged beyond what the language of the statute requires."  *Smith v. United States*, 14 F.4th 1228, 1231 (11th Cir. 2021) (quoting *United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 7 (1993)).  If a claim falls outside the scope of the FTCA, a district court lacks subject matter jurisdiction, and the case must be dismissed.  *Id.* at 1234 (finding that the government's sovereign immunity "remains intact" for claims outside of the FTCA and that "no subject matter jurisdiction exists" over such claims.).

Defendant urges dismissal here by pointing to the "discretionary function" exception to the FTCA, which provides as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or *based upon the exercise or performance or the failure*

5

> *to exercise or perform a discretionary function or duty on the part of a federal agency*
> *or an employee of the Government, whether or not the discretion involved be abused.*

28 U.S.C. § 2680(a) (emphasis added).  This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

In applying the discretionary function exception, courts must first determine "exactly what conduct is at issue." *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993).  Here, the conduct at issue involves the FBI's mishandling of tips and complaints concerning Epstein's criminal activities and its failure to properly "investigate" Epstein, "arrest" him, and "prevent" him from committing further crimes, including those committed against Plaintiffs.  (DE 61 ¶¶ 7, 21, 74, 97-99, 110, 112, 119).

Once the conduct has been identified, the Supreme Court has established a two-step test for applying the discretionary function exception.  *See United States v. Gaubert*, 499 U.S. 315, 324 (1991); *see also Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531 (1988).  The Court will address each step in turn.

### 1.    Step 1

In step 1, courts look to the nature of the conduct at issue to determine whether it involves an "element of judgment or choice." *Gaubert*, 499 U.S. at 322.  So long as the course of action is not specifically prescribed by a federal statute, regulation, or policy, the conduct at issue will satisfy the first step. *Id.*

Applying this standard here, the Court finds that the FBI conduct alleged in the TAC satisfies step 1.  "The overwhelming consensus of federal case law establishes that criminal law enforcement

decisions—investigative and prosecutorial alike—are discretionary in nature and, therefore, by congressional mandate, immune from judicial review." *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993), *aff'd*, 123 F.3d 1435 (11th Cir. 1997).   Federal courts have repeatedly recognized that law enforcement decisions concerning criminal investigations, arrests, and prosecutions involve elements of judgment and choice.   *See O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001) (noting that "just how law enforcement agents are to conduct interrogations would appear to be a paradigmatic example of a discretionary function"); *Douglas v. United States*, No. 8:09-cv-2145-T-33TBM, 2011 WL 2471516, at *6 (M.D. Fla. June 22, 2011) ("The conduct of an investigation is inherently discretionary in that it necessarily requires judgment or choice as to the objectives, strategies and means."); *Shuler v. United States*, 448 F.Supp.2d 13, 20 (D.D.C. 2006) (dismissing FBI informant's claim that FBI owed him a duty to arrest the perpetrator of crime before he injured plaintiff because the decision of when and how to arrest and prosecute the perpetrator was a discretionary function); *Amato v. United States*, 549 F. Supp. 863, 866 (D.N.J. 1982) (entering judgment on a claim that the FBI should have arrested bank robber before he perpetrated a crime that caused plaintiff's injuries because "the decision of when to arrest the perpetrators ... are discretionary functions within the meaning of § 2680(a)").

In opposition to dismissal, Plaintiffs point to numerous paragraphs from the TAC alleging that the FBI violated "mandatory" or "non-discretionary" policies, procedures, or protocols in its investigation.  (DE 61 ¶¶ 8, 14-15, 21, 80, 99, 197, 107, 110, 118-19, 121).  The Court has reviewed these allegations but finds them to be boilerplate and non-specific.  As an example, the TAC alleges that the FBI guidebook requires that tips "must all be taken seriously and thoroughly evaluated."  (DE 61 ¶ 107).  The FBI website also claims that "[w]e protect the American people and uphold the U.S.

Constitution." (DE 61 ¶ 105). The Court finds these types of allegations insufficient to overcome the discretionary function exception.

Plaintiffs also ask the Court to look beyond the four corners of the TAC to review portions of internal FBI manuals attached to their response to the motion to dismiss. (DE 71 at 11-12). Specifically, Plaintiffs attached portions of FBI manuals pertaining to sex trafficking investigations. (DE 71-1, Ex. 3 at 40-51). The Court cannot look beyond the four corners of the pleadings at this stage of the case. Even if the Court were inclined to do so, however, the materials relied upon by Plaintiffs do not impose mandatory, non-discretionary duties sufficient to remove this case from the discretionary function exception.

It may well be true that FBI agents violated internal protocols by failing, for example, to secure signed statements from every Epstein victim, as Plaintiffs argue. (DE 71 at 10-11). In the Court's view, however, this argument misses the mark. Even if FBI agents had obtained signed statements, the ultimate decision to take further investigatory steps would have remained discretionary. As the Ninth Circuit observed:

> FBI agents, like detectives and police officers, must evaluate whether the information requires immediate action, deferred action, or no action at all. They have to make myriad judgments about how the potential for future criminal activity fits the agency's mission and enforcement priorities. Indeed, agents may disagree among themselves about the significance or credibility of information they receive.

*Gonzalez v. United States*, 814 F.3d 1022, 1029 (9th Cir. 2016).

More to the point, Plaintiffs brought this suit based on the FBI's failure to "arrest" Epstein and "prevent" him from committing further crimes. (DE 61 ¶¶ 7, 21, 74, 97-99, 110, 112, 119). Plaintiffs have not identified any mandatory, non-discretionary regulation, policy, or protocol that would have *required* FBI agents to arrest Epstein or recommend that he be prosecuted by federal or

state prosecutors prior to 2019.[1]  As the D.C. Circuit observed, "decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception."  *Gray v. Bell*, 712 F.2d 490, 513–14 (D.C. Cir. 1983); *see also Martinez v. United States*, 587 F. Supp. 2d 245, 248 (D.D.C. 2008) ("The decision to allocate limited governmental resources to investigate a reported crime, like the decision to allocate limited resources to prosecute a crime, is a discretionary function.").

The Court has also reviewed the cases cited by Plaintiffs concerning violations of non-discretionary duties by government officials.  (DE 71 at 9-10).  In *McMichael v. United States*, 856 F.2d 1026, 1033 (8th Cir. 1988), for example, the Eighth Circuit found that the discretionary function exception did not apply where a government inspector failed to follow the requirements of a mandatory safety checklist at a munitions factory.  The checklist required, among other things, that the factory be evacuated in the event of an approaching electrical storm—something the inspector failed to do.  *Id.* at 1030.  The Eighth Circuit recognized that the "discretionary function exception does not apply to acts which do not involve the permissible exercise of discretion."  *Id.* at 1033.  Given that the checklist "prescribed a course of action for the inspector to follow in the event of any electrical storm," the Eighth Circuit reasoned that "the inspector had no choice but to adhere to that directive." *Id.*  Hence, the discretionary function exception did not apply.  *Id.*

This case is different.  Unlike *McMichael* and the other cases cited in Plaintiffs' response, Plaintiffs cannot point to any mandatory, non-discretionary regulation, policy, or protocol that FBI

---

[1] As Defendant points out, FBI agents have no authority, on their own, to prosecute crimes; only prosecutors can do that.  (DE 62 at 21).

agents failed to follow, the violation of which caused Plaintiff's injuries.  For all of these reasons, the Court finds that the conduct alleged in the TAC satisfies step 1 of the discretionary function test.

### 2.      Step 2

Once the government satisfies step 1 by showing "an element of judgment or choice," step 2 requires courts to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Berkovitz*, 486 U.S. at 536.  As the Supreme Court has explained, the exception was designed to prevent "judicial second guessing" of decisions "grounded in social, economic, and political policy."  *Id.* at 536–37 (cleaned up).  Accordingly, the discretionary-function exception only protects "governmental actions and decisions based on considerations of public policy."  *Id.* at 537.

Applying this standard, the Court finds that the conduct alleged here satisfies step 2.  Federal courts have repeatedly recognized that law enforcement decisions concerning investigations, arrests, and prosecutions reflect discretionary decisions grounded in public policy.  *See Zelaya v. United States*, 781 F.3d 1315, 1332 (11th Cir. 2015) (finding that "investigatory decisions by the SEC are the types of decisions that the discretionary function exemption would be expected to shield"); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991) (noting that "decisions to investigate, or not, are at the core of law enforcement activity" and "involved precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard"); *Gray*, 712 F.2d at 514 ("The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy."); *Littell v. United States*, 191 F. Supp. 2d 1338, 1345 (M.D. Fla. 2002) ("Further, the ability of an investigator to choose the way in which an investigation will proceed is undoubtedly grounded in considerations of public policy.").

10

In sum, the Court finds that the conduct alleged in the TAC satisfies both steps of the discretionary function test. In reaching this decision, the Court does not endorse the FBI's conduct or the merits of its investigation. The Court merely concludes that the FBI's investigation—whether done well or poorly—reflected the exercise of discretion. Pursuant to the discretionary function exception to the FTCA, the United States has not agreed to waive its sovereign immunity over such activities. As such, this Court lacks subject matter jurisdiction, and the case should be dismissed.

### B.     Lack of a Private Party Analog

Defendant also argues that Plaintiffs' claims fall outside the scope of the FTCA because Florida common law does not recognize a private party analog for the cause of action that Plaintiffs seek to bring, as required by 28 U.S.C. § 2674 and § 1346(b)(1). (DE 62 at 9-10). For the reasons described below, the Court agrees and finds that the TAC should be dismissed for this reason as well.

By way of the FTCA, Congress only agrees to waive sovereign immunity "in the same manner and to the same extent as a *private individual under like* circumstances[.]" § 2674 (emphasis added). Likewise, Congress only gave federal courts subject matter jurisdiction over—and hence waived sovereign immunity for—claims in which "the United States, *if a private person*, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*." § 1346(b)(1) (emphasis added). For purposes of this statute, "the law of the place where the act or omission occurred" means the law of the State where the alleged tort occurred. *Zelaya*, 781 F.3d at 1323.

Put differently, FTCA liability cannot be triggered unless the federal employee's conduct would be "independently tortious" against a private person under applicable state law. *Smith*, 14 F.4th at 1233. Courts often refer to this requirement as the "private party analog." *See*, *e.g.*,

*McLaughlin v. Fla. Int'l Univ. Bd. of Trustees*, 533 F. Supp. 3d 1149, 1166 (S.D. Fla. 2021), *aff'd*, No. 21-11453, 2022 WL 1203080 (11th Cir. Apr. 22, 2022).  In a medical malpractice case, for example, a government doctor working at Veterans Administration hospital could be compared to a private doctor working at a private hospital.  In that situation, the FTCA would waive sovereign immunity to the same extent that a private doctor could be held liable under state tort law under like circumstances.

As the Eleventh Circuit observed in *Zelaya*, it can be "conceptually difficult" to find private party analogs for cases that involve "uniquely governmental functions," such as law enforcement.  781 F.3d at 1324 (noting that "it can be difficult to imagine how a private person could be liable for breaches of such quintessentially governmental functions as the regulation of air travel, prisoners, drugs, and livestock because no private person has such duties under state law").  Notwithstanding this conceptual difficulty, "the Supreme Court long ago made clear that there is no exception from FTCA liability solely because the particular tort arose from the performance of uniquely governmental functions."  *Id.* (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)).  As such, federal courts must look for private party analogs even for quintessentially governmental functions.  *See Indian Towing*, 350 U.S. at 64-65 (applying FTCA to the operation of a lighthouse); *Rayonier Inc. v. United States*, 352 U.S. 315, 319-20 (1957) (applying FTCA to a government firefighter).

Significantly, however, when analyzing private party analogs, federal courts cannot superimpose limitations that state law affords its own state or municipal actors, such as state-law protections of sovereign immunity.  *See In re Marjory Stoneman Douglas High Sch. Shooting*, 482 F. Supp. 3d 1273, 1280-81 (S.D. Fla. 2020) (hereafter "*MSD*") (citing *Indian Towing*, 350 U.S. at

65).  To do so would ignore the word "private" as used in § 1346(b)(1) and § 2674.  *See United States v. Olson*, 546 U.S. 43, 45 (2005) (noting that the FTCA "waives sovereign immunity under circumstances where the United States, if a private person, not the United States, if a state or municipal entity, would be liable") (cleaned up).  Accordingly, in searching for private party analogs, federal courts must ignore state-law doctrines that afford a "special role" to state or municipal actors. *See MSD*, 482 F. Supp. 3d at 1286-87.

This case involves the FBI's allegedly negligent failure to investigate Epstein, arrest him, and prevent him from committing further crimes prior to 2019, with the alleged tort taking place in the Southern District of Florida.  (DE 61 ¶ 30).  In order to determine whether subject matter jurisdiction exists, therefore, this Court must determine whether Florida law would impose tort liability upon a private person under circumstances "like" those alleged in the TAC.  *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203(11th Cir. 2008) (recognizing that "like circumstances" need not be "identical" or "same" circumstances).

### 1.    Florida Common Law

Applying these standards here, the Court finds no private party analog for Plaintiffs' claims under Florida law.  In reaching this decision, the Court does not rely upon the numerous cases cited by Defendant for the proposition that "mishandled police investigations cannot give rise to a cause of action for negligence" under Florida law.  (DE 62 at 10).[2]  On close review, these cases take into

---

[2] *See*, *e.g.*, *Albra v. City of Ft. Lauderdale*, 232 F. App'x 885, 887-88 (11th Cir. 2007) (analyzing tort liability of Fort Lauderdale police officer); *Irving v. St. John*, No. 21-cv-01002, 2022 WL 3213422, at *3-4 (M.D. Fla. Aug. 9, 2022) (analyzing tort liability of Suwanee County Sheriff); *Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. 3d DCA 2003) (analyzing tort liability of Homestead police officer); *J.B. By & Through Spivak v. Dep't of Health & Rehab. Servs.*, 591 So. 2d 317, 318 (Fla. 4th DCA 1991) (analyzing tort liability of Fort Lauderdale police officer).

account, in one way or another, the special role played by police officers under Florida law.  As such, the Court cannot, and does not, rely upon these cases in reaching this decision.  *See MSD*, 482 F. Supp. 3d at 1288 (noting that "the appropriate inquiry under the FTCA is not whether state law would hold a police officer liable under the facts presented" but "whether state law would hold a private person liable under the facts presented.").

Instead, the Court focuses on Florida law concerning the negligence liability of private persons, not police officers or other municipal actors.  Under Florida law, the threshold inquiry in any negligence case is the existence of a legal duty owed by the defendant to the plaintiff.  *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009).  As to this question, Florida common law imposes no legal duty upon private persons to prevent the misconduct of third parties, absent a "special relationship." *See*, *e.g.*, *Abad v. G4S Secure Sols. (USA), Inc.*, 293 So. 3d 26, 30 (Fla. 4th DCA 2020).  As one Florida District Court of Appeal explained:

> Under the common law, a person has no duty to control the tortious or criminal conduct of another or to warn those placed in danger by such conduct unless there is a special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of such conduct.

*Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085, 1089 (Fla. 1st DCA 1993); *see also Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) (recognizing that "there is not now, nor has there ever been, any common law duty for … a private person … to enforce the law for the benefit of an individual or a specific group of individuals" and "there is no common law duty to prevent the misconduct of third persons") (citing Restatement (Second) of Torts § 315)).

Florida courts recognize that a "special relationship" can exist in a variety of contexts, including parent-child, licensor-licensee, master-servant, landowner-invitee, common carrier-passenger, innkeeper-guest, or circumstances where a defendant "takes charge of a third person whom

14

he knows or should know to be likely to cause bodily harm to others if not controlled." *K.M. v. Publix Super Mkts., Inc*., 895 So.2d 1114, 1117 (Fla. 4th DCA 2005) (citing examples of special relationships from the Restatement (Second) of Torts §§ 314A, 316–319 and 320).  In the absence of a special relationship, a duty to protect from third-party harm can also arise if the defendant has actual or constructive control over (1) the instrumentality of the harm, (2) the premises upon which the tort is committed, or (3) the person who committed the tort. *Saunders v. Baseball Factory, Inc.*, 361 So. 3d 365, 370 (Fla. 4th DCA 2023).

In this case, the TAC fails to allege facts that show a special relationship between FBI agents and the Plaintiffs, or a special relationship between FBI agents and Epstein, sufficient to give rise to a duty of care.  Likewise, the TAC fails to allege facts that show FBI agents had actual or constructive control over Epstein or the instrumentalities or premises used to commit his crimes.  As such, Plaintiffs have not alleged facts that would impose a duty of care to prevent harm from a third-party under Florida law.

Given that Florida common law would not impose tort liability on private persons under circumstances like or near those described in the TAC, the Court finds no private party analog for purposes of § 2674 and § 1346(b)(1).  As such, this Court lacks subject matter jurisdiction. *See Hill v. United States*, No. 23-11970, 2024 WL 1326791, at *3 (11th Cir. Mar 28, 2024) (affirming dismissal of FTCA claim where alleged breach of duty was not independently tortious against private persons under Florida common law); *Smith*, 14 F.4th at 1233 (same); *Ware v. United States*, 838 F. Supp. 1561, 1563 (M.D. Fla.1993) ("This Court agrees with Defendant that neither Florida nor the common law imposes liability upon a private person for mere negligence in the continuing investigation of a criminal prosecution of a crime which has actually occurred.").

**2.      The *MSD* Case**

In opposition to dismissal, Plaintiffs urge the Court to recognize a private party analog based on the reasoning of *MSD*, 482 F. Supp. 3d at 1276, a case involving the school shooting at Marjory Stoneman Douglas High School.  (DE 71 at 19-20).  In that case, Judge Dimitrouleas allowed a negligence claim to proceed against the FBI over the Government's objection that the claim lacked a private party analog as required by § 1346(b)(1) and § 2674.  *Id.*  For the reasons described below, the Court finds the *MSD* case distinguishable from the facts alleged here.

Judge Dimitrouleas began his analysis in *MSD* by acknowledging the Florida rule, discussed above, that "there is generally no duty to stop crime or to otherwise prevent the misconduct of third parties."  482 F. Supp. 3d at 1289 (citing Florida cases).  Judge Dimitrouleas nevertheless found a common law duty under two doctrines that operate as exceptions to the general rule.  First, Judge Dimitrouleas invoked the "voluntary undertaker doctrine," which recognizes that "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the "undertaker"—thereby assumes a duty to act carefully and to not put others at an undue risk of harm."  *Id.* at 1289 (citing *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003)).  Second, Judge Dimitrouleas invoked the "zone of risk" doctrine, which recognizes that "a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others."  *Id.* at 1300-01 (quoting *McCain v. Fla. Power Corp.*, 593 So.2d 503 (Fla. 1992)).

Judge Dimitrouleas found these doctrines applicable based on the facts alleged in the *MSD* complaint.  In particular, the *MSD* complaint alleged that, several weeks prior to the *MSD* shooting, a person close to the shooter telephoned the FBI's Public Access Line to report "extremely urgent

and highly specific" concerns about the shooter's behavior, including the fact that he had a desire to kill people, that he was fixated with ISIS, that he had access to guns and ammunition, and that he had the potential to become a school shooter. *Id.* at 1278. The *MSD* complaint further alleged that an FBI employee affirmatively told the caller that the FBI would follow up on the information provided. *Id.* at 1278-79. In reliance on this representation, the caller forewent contacting other law enforcement agencies and forewent contacting the high school itself. *Id.* The FBI thereafter failed to take appropriate investigative steps in response to the call. *Id.*

Given that the FBI made affirmative representations to the caller, but failed to follow through on those representations, Judge Dimitrouleas found that the *MSD* plaintiffs stated a plausible negligence claim under the voluntary undertaker doctrine. *Id.* at 1300. Likewise, Judge Dimitrouleas found that the FBI's "own affirmative conduct" in making representations to the caller created a "foreseeable zone of risk" that gave rise to a negligence claim under Florida's zone-of-risk doctrine. *Id.* at 1302-03; *see also Lippman v. United States*, 622 F. Supp. 2d 1337, 1341-42 (S.D. Fla. 2008) (noting that "[a] duty may, however, arise when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger") (cleaned up).

In this case, the TAC fails to allege facts that give rise to a common law duty under Florida's voluntary undertaker doctrine or zone-of-risk doctrine. Unlike in *MSD*, the TAC fails to allege that FBI agents made specific representations to follow through on information provided by tipsters or that tipsters forewent contacting other law enforcement agencies in reliance upon representations made by FBI agents. Instead, the TAC relies upon a generalized duty of care—owed to the general

17

public as a whole—to properly investigate crimes and prevent criminals from committing further crimes in the future.  (DE 61 ¶¶ 25, 74, 110, 118-20).  Florida law imposes no such duty upon private persons, and Plaintiffs fail to allege facts sufficient to take this case outside the general rule.  As such, the Court finds the *MSD* case to be distinguishable from the instant case.

For all of the above reasons, the Court finds that this case lacks a private party analog as required by § 1346(b)(1) and § 2674.  The United States therefore retains its sovereign immunity as to these claims, and the case should be dismissed for lack of subject matter jurisdiction.

**C.    Remaining Arguments**

Given the conclusions reached in Parts III.A and III.B above, the Court need not address the remainder of the arguments raised in Defendant's motion to dismiss.  Nevertheless, for the sake of completeness and the benefit of the District Judge, the Court makes the following recommendations on the remaining three dismissal arguments raised by Defendant, each of which the Court finds unpersuasive.

**1.    Statute of Limitations**

Defendant urges dismissal based on the FTCA's two-year statute of limitations, which provides as follows:

Time for commencing action against United States

…

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency *within two years after such claim accrues* or unless the action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

18

28 U.S.C. § 2401(b) (emphasis added).  For purposes of this statute, a claim generally accrues when a plaintiff suffers an injury.  *Price v. United States*, 775 F.2d 1491, 1493 (11th Cir.1985) ("The general rule in tort actions under the FTCA is that the two-year statute of limitations period begins to run when the plaintiff is injured.").

Here, the TAC alleges that Plaintiffs suffered injuries at various times between 2007 and 2017. (DE 61 ¶¶ 32–50).  Defendant has submitted an affidavit (outside the four corners of the pleadings) attesting that Plaintiffs failed to submit their administrative claims to the appropriate agency until May 2023 and beyond.  (DE 62-1).  As such, Defendant argues the TAC should be dismissed as time-barred.  (DE 62 at 5-8).

In opposition to dismissal, Plaintiffs make two arguments to overcome the statute of limitations.  As set forth below, the Court rejects the first argument but agrees with the second argument.  As such, the Court declines to recommend dismissal on statute-of-limitations grounds. *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (noting that cases cannot be dismissed on statute-of-limitations grounds unless it is "apparent from the face of the complaint that the claim is time-barred") (cleaned up).

### a.       The Discovery Rule

Plaintiffs first point to the discovery rule, which the Eleventh Circuit recognizes in limited categories in FTCA cases.  (DE 71 at 15-16).  Under the discovery rule, an FTCA claim does not accrue at the time of injury; instead, it accrues when the plaintiff "in the exercise of reasonable diligence" becomes aware or should have become aware of *both* the injury *and a causal link to the defendant. Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999).  The Eleventh Circuit applies this modified accrual rule in certain cases "to protect plaintiffs who are blamelessly unaware of their

claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the [tortfeasor's actions] are in the control of the tortfeasor or are otherwise not evident."  *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

To date, the Eleventh Circuit has applied the discovery rule to only two categories of FTCA claims:  medical malpractice cases and wrongful death cases.  *Id.* at 1340.  The Eleventh Circuit has expressly declined to expand the rule to other types of cases.  *See Auger v. United States*, 382 F. App'x 901, 902 (11th Cir. 2010) (declining to extend discovery rule to a claim for negligent denial of a passport and noting, "[t]his case is not a medical malpractice case, and so the exception does not apply"); *see also Castelluccio v. United States*, No. 13-cv-2426-T33, 2014 WL 12621566, at *5 (M.D. Fla. Mar. 19, 2014), *R. & R. adopted*, 2014 WL 12628600 (M.D. Fla. Apr. 21, 2014) (declining to extend the discovery rule to a claim for negligent disclosure of medical records.).

In declining to extend the rule, the Eleventh Circuit has reasoned that the FTCA operates as a waiver of sovereign immunity.  *Auger*, 382 F. App'x at 902.  Accordingly, the FTCA's statute of limitations must be construed narrowly in favor of the United States.  *Id.*; *see also Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001) ("[I]n construing the FTCA's statute of limitations, we should not take it upon ourselves to extend the waiver beyond that which Congress intended") (cleaned up).

Applying these principles here, the Court finds that the discovery rule does not apply to this case, which involves the allegedly negligent failure of FBI agents to investigate and arrest a criminal before he committed crimes against additional victims.  The Eleventh Circuit has never extended the discovery rule to a case of this type, and this Court will not expand the Government's waiver of

20

sovereign immunity by doing so here.  The Court therefore finds that Plaintiffs' FTCA claims accrued, for purposes of § 2401(b), at the times of their respective injuries.

**b.     Equitable Tolling**

Plaintiffs next point to equitable tolling.  (DE 71 at 15-17).  Equitable tolling is distinct from the discovery rule, although the "two doctrines are often blended or confused[.]"  *Fedance v. Harris*, 1 F.4th 1278, 1285 (11th Cir. 2021) (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 16, n.3 (2019)).  Whereas the discovery rule delays accrual of a claim until the plaintiff "discovers" his or her cause of action, equitable tolling "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Id.* (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)).  The lack of a discovery rule does not preclude application of equitable tolling.  *Id.*  (finding that lack of a discovery rule under § 12(a)(1) of the Securities Act of 1933 did not "negate equitable tolling").

The Supreme Court has expressly recognized that the FTCA's statute of limitations is "subject to equitable tolling."  *United States v. Wong*, 575 U.S. 402, 421 (2015).  In the Eleventh Circuit, "[e]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006).  "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 653, (2010)).  The Eleventh Circuit has described equitable tolling as an "extraordinary remedy" to be applied "sparingly."  *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004).  The doctrine does not apply to "garden variety claim of excusable neglect."  *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

Equitable tolling can be applied, however, "where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against [him or] her." *Cabello v. Fernandez–Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005). To apply equitable tolling in this fashion, courts usually require a showing of "affirmative misconduct" by the defendant that hindered the plaintiff from discovering the cause of action. *Id.*; *see also In re Chiquita Brands International, Inc*., 284 F.Supp.3d 1284, 1320 (S.D. Fla. 2018) (noting that "fraudulent concealment" operates as a subset of "equitable tolling").

Applying these standards here, the Court finds that Plaintiffs have alleged sufficient facts to support a plausible claim of equitable tolling. In particular, the TAC alleges that Plaintiffs failed to discover the facts showing a causal link between their injuries and the FBI's conduct, in part, because the FBI "concealed" reports of Epstein's abuses from the public and because the FBI engaged in decades-long "cover up" of its investigation. (DE 61 ¶¶ 21, 91, 110, 119). Consequently, Plaintiffs allege they failed to discover a causal link to the FBI's misconduct until December 2022, when they learned, through a publicly filed lawsuit, that JP Morgan Chase had "reached out to the federal government on numerous occasions between 2006 to 2008 and via numerous avenues regarding Epstein's transactions with the bank *and concern for sex trafficking*." (DE 61 ¶¶ 15, 31) (emphasis added).

The Court finds these allegations sufficient to survive a motion to dismiss. This ruling does not preclude Defendant from re-raising this argument at summary judgment with the benefit of a full factual record concerning (1) the degree of due diligence exercised by Plaintiffs to discover their claims, and (2) the scope of any affirmative misconduct by the FBI that prevented them from doing so. In the meantime, the Court rejects this argument for dismissal. *See Mosley v. United States*, No.

22

18-cv-1004-T-35, 2018 WL 11467407, *3 (M.D. Fla. Dec. 20, 2018) (denying motion to dismiss FTCA claim based on factual issues concerning equitable tolling); *United States v. Hines*, No. 3:16-cv-1477-J-32PDB, 2017 WL 6536574, at *2 (M.D. Fla. Dec. 21, 2017) (same).

### 2. Proximate Causation

Next, Defendant urges dismissal because Plaintiffs failed to plead facts sufficient to satisfy one of the necessary elements of negligence under Florida law, namely, proximate causation.  (DE 62 at 20-21).  Specifically, Florida law requires that the alleged negligence of the tortfeasor must be the proximate cause of the plaintiff's injuries.  *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003).  Florida's standard jury instructions define proximate cause or "legal cause" as follows:

> Legal cause generally
>
> Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage], so that it can reasonably be said that, but for the negligence, the [loss] [injury] [or] [damage] would not have occurred.

Fla. Std. Jury Intr. (Civil) 401.12.a (brackets in original).

Defendant argues that the TAC fails to allege facts that show a plausible claim of proximate causation between the FBI's conduct and Plaintiffs' injuries.  In particular, Defendant points out that FBI agents have no authority to bring criminal prosecutions or to impose prison sentences on criminals; only prosecutors and judges can do that.  (DE 62 at 21).  Accordingly, even if FBI agents had taken all of the investigative steps that Plaintiffs believe they should have taken, none of those steps would have guaranteed that prosecutors would have brought criminal charges or that a judge would have imposed a prison sentence upon Epstein before he committed further crimes against the Plaintiffs.

The Court agrees that Plaintiffs face significant causation hurdles in this case.  Nevertheless, Florida law generally reserves causation as an issue of fact for the jury to decide.  *See Stahl v. Metro. Dade Cnty.*, 438 So.2d 14, 21 (Fla. 3d DCA 1983) (noting proximate cause is "generally for juries to decide using their common sense upon appropriate instructions").  The issue should rarely be decided on summary judgment, let alone on a motion to dismiss.  Construing all allegations and inferences in a light most favorable to Plaintiffs, the Court finds that the TAC alleges sufficient facts to support a plausible claim of proximate causation.  As such, the Court rejects this argument for dismissal.

### 3.      Institutional Tort

Finally, Defendant urges dismissal on the grounds that the TAC alleges an "institutional tort," rather than a tort based on the conduct of individual FBI employees.  (DE 62 at 18-19).  In support, Defendant cites *Lee v. United States*, No. 19-08051-PCT (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) for the proposition that "[t]he FTCA applies only to 'the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment,' not to generalized theories of negligence asserted against the staff and employees of federal institutions as a whole." (citing 28 U.S.C. § 1346(b)(1)); *see also F.R. v. United States*, No. 21-00339-PHX, 2022 WL 2905040, at *3 (D. Ariz. Jul. 22, 2022) (noting that "a cognizable FTCA claim must be predicated on the tortious misconduct of individual government employees, rather than on alleged wrongdoing by the United States or its agencies writ large").

The Court has reviewed the TAC closely and finds that it does not allege an institutional tort against the FBI writ large.  Rather, it alleges a negligence claim based on the actions of individual FBI employees who failed to properly investigate Epstein, arrest him, and prevent him from committing further crimes prior to 2019.  A complaint filed under the FTCA need not identify

individual government employees by name in order to survive dismissal.  *See A.F.P. v. United States*, No. 1:21-cv-00780, 2022 WL 2704570, at *18 (E.D. Cal. July 12, 2022) ("To the extent the government is arguing that plaintiffs must specifically identify every employee, official, and contractor involved in each of the alleged acts, such is not required at this early stage of litigation when discovery has yet to be conducted.").  In short, the Court rejects this argument for dismissal.

## IV.     RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the motion to dismiss (DE 62) be **GRANTED** as follows.

1.      Plaintiffs' Third Amended Complaint (DE 61) should be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

2.      Plaintiffs should be afforded an opportunity, on whatever timeline deemed appropriate by the District Judge, to file a Fourth Amended Complaint that alleges facts sufficient to show subject matter jurisdiction.

3.      Plaintiffs request permission to conduct jurisdictional discovery into the discretionary function exception in order to "provide further information about mandatory policies and procedures that the FBI violated."  (DE 71 at 15).  Given that the Court premised this Report and Recommendation on both the discretionary function exception *and* the lack of a private party analog, the Court recommends that the request for discovery into the discretionary function exception be **DENIED.**

4.      The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the

District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

     5.    **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

     **RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of December 2025.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE