UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:25-CV-80880 Leibowitz / McCabe

JANE DOE 1, *et al.*,

    Plaintiffs,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

UNITED STATES' RESPONSE TO PLAINTIFFS' OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

   A. Plaintiffs' Objections Do Not Comply With S.D. FLA. MAG. JUDGE RULE 4(b) ................................................................................................. 2

   B. The Magistrate Judge Properly Concluded That the Discretionary Function Exception to the FTCA Bars Plaintiffs' Claims, Which Are Premised Upon the FBI's Criminal Investigation ................................................................ 3

      1. The Magistrate Judge Had Sufficient Factual and Legal Bases to Rule on the Discretionary Function Exception at This Stage of the Pleadings ................................................................................. 3

      2. Plaintiffs Have Not Identified a Mandatory Policy Directive .............. 5

      3. Federal Agents' Decisions on Whether and How to Investigate Are Grounded in Public Policy ................................................................. 8

   C. The Magistrate Judge Correctly Determined That Neither the Undertaker's Doctrine Nor the Zone-Of-Risk Doctrine Applied to Plaintiffs' Claims .......... 10

      1. The Magistrate Judge Correctly Found that Florida's Undertaker's Doctrine Does Not Apply to Plaintiffs' Claims .................................... 10

      2. The Magistrate Judge Correctly Found that Florida's Zone-of-risk Doctrine Does Not Apply to Plaintiffs' Claims .................................... 12

III. CONCLUSION ................................................................................................. 16

Pursuant to 28 U.S.C. § 636(b)(1)(C) and S.D. FLA. MAG. JUDGE RULE 4(b), Defendant, the United States of America, by and through the undersigned Assistant United States Attorneys, respectfully files the following response to Plaintiffs' objections the Magistrate Judge's Report and Recommendation on Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint ("Objections") [ECF 86].

## I. INTRODUCTION

Plaintiffs raise two categories of objections to the Magistrate Judge's Report and Recommendation ("R&R") [ECF 79]. First, Plaintiffs object to the Magistrate Judge's determination that the conduct alleged in the Third Amended Complaint ("TAC") is barred by the FTCA's discretionary function exception ("DFE"). Objections, p. 5-17. Plaintiffs begin by categorically contending that any DFE determination "is premature at the pleading stage." *Id.*, p. 6. Because Plaintiffs plausibly allege "that the United States is not entitled to the liability shield afforded by the discretionary function exception," "discovery is needed." *Id.*, p. 9.[1]

Next, Plaintiffs argue that the Magistrate Judge incorrectly applied both steps of the *Gaubert* DFE test. *Id.*, p. 11. They claim that the Magistrate Judge misapplied step one of the *Gaubert* test by failing to analyze in any meaningful way the contested FBI Manual of Investigative Operations and Guidelines ("MIOG").[2] *Id,* p. 11-16. Rather than dissecting and discussing each contested MIOG, Plaintiffs argue the Magistrate Judge made a conclusory judgment that the MIOGS were not mandatory in spite of relevant case law to the contrary. *Id.* Plaintiffs also claim that step two of the *Gaubert* test was misapplied, because "there is no public policy . . . that favors

---

[1] "As to Plaintiff's request for discovery, ordinarily, a plaintiff must plead a claim to receive discovery; a plaintiff cannot request discovery to construct a claim." *Hopkins v. Carnival Corp.*, No. 25-cv-20363, 2025 U.S. Dist. LEXIS 155555, at *18-19 (S.D. Fla. Aug. 12, 2025) (*Ruiz, J.*) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)).

[2] The MIOG is a formal policy directive of the FBI under the Supreme Court's definition of "formal governmental policy." *See United States v. Gaubert*, 499 U.S. 315, 322 (1990); *Flax v. United States*, 847 F. Supp. 1183, 1188 n. 6 (D. N.J. 1994).

- 1 -

violating mandatory policies and ignoring credible complaints of child sex trafficking." *Id.*, p. 17.

Second, Plaintiffs argue that the R&R "misapplied the voluntary undertaking doctrine and overlooked the zone-of-risk doctrine." *Id.*, p. 17- 23. Neither of Plaintiffs' arguments present a valid basis to reject the cited portions of the R&R.

## II. ARGUMENT

### A. Plaintiffs' Objections Do Not Comply With S.D. FLA. MAG. JUDGE RULE 4(b)

S.D. FLA. MAG. JUDGE RULE 4(b) states that "Absent prior permission from the Court, no party shall file and serve any objections or responses to another party's objections exceeding twenty (20) pages in length." Plaintiffs' Objections total 312 pages, consisting of a 23-page response and 289 pages of exhibits. *See* ECF 86 and 86-1 through 86-4. Plaintiffs neither obtained, nor sought, permission from the Court to file objections with excess pages, and their filing should be stricken for this reason.

District Court local rules have the force of law. *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010); *Castro v. Dir. F.D.I.C.*, 449 Fed. Appx. 786, 788 (11th Cir. 2011). Where a party fails to comply with the local rules, a district court is under no obligation to accept the noncompliant filing. Instead, the court may strike the entirety of the filing or the non-compliant portion of such improper filing pursuant to its inherent power to control its docket. *See Blanco GmbH + Co. KG v. Vlanco Indus., LLC*, No. 12-cv-61580, 2015 U.S. Dist. LEXIS 179527, at *1 (S.D. Fla. Jan. 22, 2015) (*Lenard, J.*) (noting prior entry of sua sponte order striking party's objections to magistrate's report and recommendation "for exceeding twenty (20) pages in length without first seeking permission to do so."), *cf. Porter v. Collecto, Inc.*, 2014 U.S. Dist. LEXIS 79424 at *2-5 (S.D. Fla. June 11, 2014) (*Moreno, J.*) (striking the entirety of the plaintiff's response brief which exceeded the page limitations of S.D. FLA. LOCAL RULE 7.1(c)(2)); *Cano v. 245 C & C, LLC*, No. 19-cv-21826, 2022 U.S. Dist. LEXIS 147347, at *37 (S.D. Fla. Aug. 17, 2022) (*Lenard, J.*) (disregarding statement of additional facts which the Court determined were presented in a manner "to get around the five-page limitation on statements of additional facts imposed by Local Rule 56.1(b)(2)(D).").

> B. **The Magistrate Judge Properly Concluded That the Discretionary Function Exception to the FTCA Bars Plaintiffs' Claims, Which Are Premised Upon the FBI's Criminal Investigation**
>> 1. **The Magistrate Judge Had Sufficient Factual and Legal Bases to Rule on the Discretionary Function Exception at This Stage of the Pleadings**

Plaintiffs argue that the R&R incorrectly conducted a DFE analysis at the pleadings stage, rather than "after discovery and with the protections of either trial or review on summary judgment." Objections, p. 10, citing *Douglas v. United States*, 814 F.3d 1268, 1275 (11th Cir. 2016). Plaintiffs cite to two additional cases for the proposition that "courts routinely decline to determine whether the exception applies on a motion to dismiss before discovery." *Id.*, p. 6.

This argument is a non-starter. Plaintiffs have "plead [themselves] out of court by alleging or stating too much in their complaint." *Shuler v. United States*, 448 F. Supp. 2d 13, 16 n.3 (D.D.C. 2006), *aff'd* 531 F.3d 930 (D.C. Cir. 2008) (dismissing on DFE grounds FTCA action challenging FBI's failure to protect confidential informant and the decision of how and when to arrest suspect). Courts in this district (and across the country) overwhelmingly find that claims—exactly like the one at bar—of negligent investigation by federal law enforcement officers (e.g., the FBI) are barred by the discretionary function exception and therefore properly dismissed for lack of subject-matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). *See, e.g. Mesa v. United States*, 837 F. Supp. 1210 (S.D. Fla. 1993) (*Marcus, J.*), affirmed 123 F.3d 1435 (11th Cir. 1997)[3] (dismissing on DFE grounds FTCA suit alleging that DEA agents failed to properly identify the subject of an arrest warrant and mistakenly arrested the plaintiff); *Lippman v. City of Miami*, 622 F. Supp. 2d 1337, 1340 (S.D. Fla. 2008) (*Marra, J.*) (dismissing on DFE grounds FTCA suit alleging that FBI negligently conducted a search of plaintiff's vehicle); *Thacker v. United States*, No. 06-cv-145, 2006 U.S. Dist. LEXIS 69046, at *1 (N.D. Fla. Aug. 15, 2006) (dismissing

---

[3] Although the district court's dismissal for lack of subject-matter jurisdiction was affirmed by the Eleventh Circuit, Plaintiffs incorrectly state that "*Mesa* does not bind this Court," Objection, p. 14.

on DFE grounds FTCA suit alleging that the FBI failed to investigate plaintiff's allegations of perjury by law enforcement officers of the Walton County Sheriff's Office); *see also Flax*, 847 F. Supp. at 1190 (dismissing on DFE grounds FTCA suit alleging that FBI negligently performed its surveillance of a kidnaping victim); *Crenshaw v. United States*, 959 F. Supp. 399, 402-03 (S.D. Tex. 1997) (dismissing on DFE grounds FTCA suit arising from negligent investigative activities against the FBI and NASA-OIG, because agents' "decisions to take or refrain from certain actions were controlled by their desire to obtain…evidence," which "correlates with the public policy goal of punishing and deterring those who violate federal laws."); *McCloskey v. Mueller*, 385 F. Supp. 2d 74 (D. Mass. 2005) (dismissing on DFE grounds FTCA suit brough by estate of murder victim that FBI failed to follow up on call by self-proclaimed bank robber offering to surrender, and caller killed victim the next day); *Martinez v. United States*, 587 F. Supp. 2d 245 (D.D.C. 2008) (dismissing on DFE grounds FTCA suit alleging that FBI was derelict in its duty in investigating supposed criminal activity reported by plaintiff); *Engel v. FBI*, No. 25-cv-00937, 2025 U.S. Dist. LEXIS 80266 (D.D.C. Apr. 28, 2025) (dismissing on DFE grounds action against FBI arising from an alleged "failure to pursue tips" and "failure to arrest" third-parties which allegedly stalked, harassed, and threatened plaintiff).[4]

---

[4] The Eleventh Circuit and appellate courts across the country agree, too. *See, e.g., Ostera v. United States*, 769 F.2d 716 (11th Cir. 1985), reh'g. en banc denied 775 F.2d 304 (11 Cir. 1985) (affirming dismissal of FTCA action on DFE grounds where plaintiff was blinded by an FBI informant whose vicious propensities allegedly were known by the FBI); *Pooler v. United States,* 787 F.2d 868 (3rd Cir. 1986), *cert. denied,* 479 U.S. 849 (1986) (affirming dismissal of FTCA action on DFE grounds arising out of federal law enforcement agents' decisions as to whether to undertake or initiate specific criminal investigations and to what extent to carry them out); *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006) (affirming dismissal of FTCA suit on DFE grounds by of victims of fraudulent investment scheme which alleged that FBI agents improperly participated in the scheme as an investigatory method); *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) (affirming dismissal of FTCA suit on DFE grounds arising from FBI's negligent failure to disclose information to local law enforcement regarding a home invasion threatened by private persons against victims); *Gordo-González v. United States*, 873 F.3d 32, 37 (1st Cir. 2017) (affirming dismissal on DFE grounds of FTCA action arising from FBI's negligent

## 2. Plaintiffs Have Not Identified a Mandatory Policy Directive

The application of the discretionary function exception is determined by the two-step test established in *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *see also Ochran v. United States*, 117 F.3d 495, 505 (11th Cir. 1997) (noting that *Indian Towing Co. v. United States*, 350 U.S. 61 (1955) "has been severely undercut, if not altogether disavowed by the Supreme Court in *Gaubert*."); *Harrell v. United States*, 443 F.3d 1231, 1237 (10th Cir. 2006) ("Since *Gaubert*, several Circuit Courts of Appeals . . . have expressly recognized that *Indian Towing* is simply not persuasive authority in the context of the discretionary function exception."). Relying on the *Gaubert* two-step test for applying the discretionary function exception, the R&R correctly found that, as to step one, "Plaintiffs cannot point to any mandatory, non-discretionary regulation, policy, or protocol that FBI agents failed to follow, the violation of which caused Plaintiffs' injuries." R&R, p. 9-10. Although the Magistrate Judge declined to consider the FBI's MIOG attached to Plaintiffs' opposition to the government's motion to dismiss, the R&R noted that "even if the Court were inclined to do so, however, the materials relied upon by the Plaintiffs do not impose mandatory, non-discretionary duties sufficient to remove this case from the discretionary function exception." R&R, p. 8, citing ECF 71-1, Ex. 3 at 40-51.

Plaintiffs' Objections rely heavily upon the FBI's MIOG § 31 which they contend "require specific investigative steps to be taken, including procuring a signed witness statement from the victim, evidence, documents, and additional information[.]" Objections, p. 12., citing ECF 86-2. Plaintiffs argue the alleged violation of these "mandatory internal policies" establishes that the FBI's investigators did not have discretion in the manner in which they initiated and conducted their investigation into Epstein, and thus the FTCA's discretionary function exception does not apply. *Id.*, p. 6, citing ECF 71-1, p. 41-51. But even though

---

investigation because "[i]t follows inexorably, as night follows day, that the challenged conduct is discretionary.").

the MIOG in general is a statement of formal agency policy, Plaintiffs cite to no mandatory MIOG or policy directive governing the FBI's investigation into Epstein.

Simply put, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Specific provisions of guidelines or manuals may not be given the importance or weight of a rule, regulation or policy directive. Instead, a specific mandatory directive must be formal and remove the permissible exercise of discretion from the government employee. *See Priah v. United States*, 590 F. Supp. 2d 920, 922 (N.D. Ohio 2008) (finding that the relevant FBI MIOG handbook and manual were not mandatory and therefore, the FBI agents were granted discretion in planning and carrying out the operation that led to the decedent's demise.); *Flax*, 847 F. Supp. at 1189 (finding that FBI MIOGs and related manuals and handbooks at issue were not mandatory but are discretionary based on the relevant precedent and the language of the manuals themselves); *see also Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (Social Security Claims Manual not regulation and has no legal force); *Lyng v. Payne*, 476 U.S. 926, 937 (1986) (not all agency publications are binding); *Piechowicz v. United States*, 685 F. Supp. 486, 500-01 (D. Md.1988) (*unpublished*) (internal guidelines do not create mandatory directive under discretionary function exception).

Additionally, the language "must" or "shall" in a regulation, statute, or formal policy may indicate its mandatory nature as opposed to "may" or "should," which would indicate discretion. *See, e.g., Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004); *U. S. & Fidelity Guar. Co., v. United States*, 837 F.2d 116, 120 (3d Cir. 1988). Further, the use of "must" or "shall" alone is insufficient - the directive must be considered as a whole to determine whether discretion is afforded. *See Faneole v. United States*, 975 F. Supp. 1394, 1400-01 (D.Kan. 1997) (plaintiffs cannot pick and choose sections from GSA manual to create mandatory directive).

Plaintiffs also make much ado over the MIOG's use of word "thorough." Objections, p. 12. But "thorough" has long been understood to be discretionary, absent

- 6 -

additional language providing specific guidelines. *See Hart v. United States*, 894 F.2d 1539, 1547 n.10 (11th Cir. 1990) (finding that the U.S. Army's policies detailing whether POW/MIA crash site recovery efforts "were thorough and complete" were discretionary because "[t]here is no guideline or standard defining appropriately thorough search procedures."); *Padilla v. United States*, 2007 U.S. Dist. LEXIS 65171, 2007 WL 2409792 *11 (W.D. Tex. Aug. 20, 2007) (dismissing on DFE grounds FTCA action against ICE agents arising from murder of confidential informant, noting that the United States Customs Service Enforcement Handbook's guidelines were couched in discretionary terms, rather than requiring mandatory action).

      Here, the provisions cited by Plaintiffs as creating a mandatory directive are MIOG Sections 31-3.1—10, which merely list various factors to consider in determining whether an investigation should be conducted. *See* Objections, p. 12. The MIOG's listing of various factors to be considered underscores the discretionary nature of that decision. *See Shansky v. United States*, 164 F.3d 688, 691 (1st Cir. 1999). ("A broadly worded expression of a general policy goal contained in the [agency's] operating manual . . . suggests that the [agency] and its functionaries will have to make discretionary judgments about how to apply concretely the aspirational goal embedded in the statement.") The language in relevant policies or directives must be interpreted where possible as preserving, rather than vitiating, discretion. *See, e.g., Ochran*, 117 F.3d at 501 (concluding that Justice Department guideline with mixed mandatory and precatory language, "[t]he responsible official shall, if warranted," triggered the discretionary function analysis because the language allowed "room for responsible officials to exercise choice or judgment in discharging their responsibilities," which "g[ave] the [official] the authority to decide whether such action is *warranted*") (emphasis in original).

      Indeed, the MIOG affords wide discretion to FBI agents to enable flexible responses to tips. Plaintiffs essentially argue that FBI policy statements mandate success in all investigatory efforts and that prosecutorial decisions by the DOJ should dictate the applicability of the exception. But the policy of encouraging law enforcement to engage in criminal investigations—extensively discussed by the

Magistrate Judge at page 8 of the R&R and the case law cited therein—supports application of the exception to afford agents discretion to engage in rapidly evolving operations without perfect information. Plaintiffs' suggestion that the government should not be shielded from liability unless its investigations are successful and result in criminal prosecution would seriously compromise the ability of law enforcement to fight crime.

The Magistrate Judge correctly determined the applicable written policies of the FBI were not mandatory, and that any ultimate decision to take investigatory steps would have remained discretionary. The decision of whether, and how, to conduct an investigation necessarily involves numerous policy considerations including resources, the seriousness of the allegations, and the investigatory target's privacy and rights, among others. *See Ochran*, 117 F.3d at 501 (holding that the AUSA's decisions on how to provide protection to a victim and whether to inform other components of the Justice Department of a threat to a victim fall within the discretionary function exception).

### 3. Federal Agents' Decisions on Whether and How to Investigate Are Grounded in Public Policy

The Magistrate Judge correctly noted that "the overwhelming consensus of federal case law establishes that criminal law enforcement decisions—investigative and prosecutorial alike—are discretionary in nature and, therefore, by congressional mandate, immune from judicial review." R&R, p. 6-7, citing *Mesa*, 837 F. Supp. at 1213. It is not seriously open to debate that the tortuous conduct alleged in the TAC— "investigating Epstein's sexual abuse of children and young women" TAC, ¶ 3—fits into this rubric.

Plaintiffs' assertion that "there can be no public policy. . . that favors violating mandatory policies and ignoring credible complaints of child sex trafficking," Objections, p. 17, begs the question. The FBI "is not required to investigate every complaint filed." *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010). The FBI must allocate limited time and resources in prioritizing what matters to undertake in view of the gravity and relative importance of the alleged offense and

the credibility of the allegations, among many other considerations.[5] *See Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967) ("The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy.") "The choices the FBI makes in deciding how to assess complaints, who to interview, the timeline for its investigative work, or even which forms to use should not be influenced by the threat of private suit." *Garner v. United States*, No. 24-cv-2381, 2025 U.S. Dist. LEXIS 141987, at *4 (D.D.C. July 24, 2025).

Courts have been cautious about intervening in this area, aware that "imposing liability for such decisions would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) (holding that discretionary function exception applied to FBI's methods in undercover investigation); *see also O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001) ("how law enforcement agents conduct interrogations would appear to be a paradigmatic example of a discretionary function" involving "elements of judgment and choice—the central ingredients of discretion"); *Mid-S. Holding Co., v. United States*, 225 F.3d 1201 (11th Cir. 2000) ("decisions of [federal agents] concerning the manner in which to search . . . fall within the scope of the discretionary function exception"); *Terrell v. Lungren*, Civ. A. No. 98-00219, 1998 WL 574387, at *3 (N.D. Cal. Aug. 31, 1998) ("The court can find no binding authority requiring the FBI to investigate every complaint that it receives. To the contrary, courts have consistently described the FBI's mandate [to conduct an investigation] as a 'discretionary rather than mandatory authority.'"), *aff'd*, No. 98-17040, 1999 WL 637813, at *1 (9th Cir. Aug. 17, 1999); *Richards v. FBI*, Civ. A. No. 12-1027, 2012 WL 5386563, at *2 (W.D. Mich. Nov. 1, 2012) (dismissing claims that FBI failed to investigate and noting that FBI investigative decisions are discretionary and unreviewable).

---

[5] The FBI's investigation led to the indictment of Epstein by the State of Florida, and ultimately resulted in a guilty plea on June 30, 2008. *See State of Florida v. Epstein*, No. 50-2008-CF-009381-AXXX-MB (Palm Beach County, FL).

### C. The Magistrate Judge Correctly Determined That Neither the Undertaker's Doctrine Nor the Zone-Of-Risk Doctrine Applied to Plaintiffs' Claims

The Magistrate Judge correctly found that "the TAC fails to allege facts that give rise to a common law duty under Florida's voluntary undertaker doctrine or zone-of-risk doctrine" because there were no allegations that "FBI agents made specific representations to follow through on information provided by tipsters or that tipsters forewent contacting other law enforcement agencies in reliance upon representations made by FBI agents." R&R, p. 17. "Instead, the TAC relies upon a generalized duty of care—owed to the general public as a whole—to properly investigate crimes and prevent criminals from committing further crimes in the future. Florida law imposes no such duty upon private persons[.]" *Id.*, p. 17-18. Plaintiffs contend that both of these findings were error. Objections, p. 18-22.

### 1. The Magistrate Judge Correctly Found that Florida's Undertaker's Doctrine Does Not Apply to Plaintiffs' Claims

Florida's "undertaker doctrine" essentially states that "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service--i.e., the 'undertaker'--thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003). The doctrine "applies to both governmental and nongovernmental entities." *Id.* (footnotes omitted). The "undertaker doctrine" is a recognized common-law basis for imposing a duty of care on the part of one who undertakes to render services to another. *See Wallace v. Dean*, 3 So. 3d 1035, 1047 (Fla. 2009). But the "undertaker's doctrine" is not without limitations. Generally, it is inapplicable where there is no physical harm or where an undertaker "was [not] engaged to perform a service reasonably expected to be relied upon by a stranger to the engagement." *Casamassina v. U.S. Life Ins. Co.,* 958 So. 2d 1093, 1102 (Fla. 4th DCA 2007) (citing *First Fla. Bank N.A. v. Max Mitchell & Co.,* 558 So. 2d 9, 12 (Fla. 1990)).

Section 324A of the Restatement sets forth the following standard for assessing liability in such cases:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

"[T]he first element of an undertaking duty under § 324A is an undertaking to 'render services to another, which [the undertaker] should recognize as necessary for the protection of a third person[.]" *In re Marjorie Stoneman Douglas High School Shooting FTCA Litigation*, 482 F. Supp. 3d 1273, 1292 (S.D. Fla. 2020) (quoting Restatement (Second) of Torts, § 324A). "The second element of an undertaking duty under § 324A is physical harm to a third person resulting from the undertaker's failure to use reasonable care." *Id.* at 1293. For example, in *Clay Electric*, the City of Jacksonville Electric Authority contracted with Clay Electric to maintain streetlights. The streetlights had not been operating properly, an accident occurred, and a pedestrian was killed. The court held that the Undertaker's Doctrine imposed a duty upon Clay Electric to the general public. *Clay Elec. Co-op.*, 873 So. 2d 1182, 1186 (Fla. 2003). *See also Union Mem'l Chapel*, 670 So. 2d 64 (funeral director leading funeral procession owed duty of care to persons in the procession); *Johnson v. Aetna Cas. & Sur. Co.*, 348 F. Supp. 627 (M.D. Fla. 1972) (contract to periodically inspect premises for hazardous conditions imposed duty of care to third parties who could be injured by breach).

In this case, neither prong of the doctrine is satisfied. First, Plaintiffs do not allege the FBI undertook to render services "to another." The conduct alleged—the investigation of crimes by FBI agents—is performed for the benefit of the general

public, not specific individuals. *Miami-Dade County v. Fente*, 949 So.2d 1101, 1103 (Fla. 3d DCA 2007), *see also Pollock v. Florida Dept. of Highway Patrol*, 882 So.2d 928, 935 (Fla. 2004) ("The responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person.").[6] Nor do they allege that the FBI assumed a special duty to specifically protect the Plaintiffs. So, without such an undertaking of services to another, Plaintiffs cannot hold the FBI liable pursuant to the undertaker's doctrine.

Second, Plaintiffs do not allege any physical harm to a third person directly resulting from the FBI's failure to exercise due care in its actions. Indeed, the only harm alleged is *to* Plaintiffs *by* a third-party criminals (e.g., Epstein). Consequently, Plaintiffs cannot invoke the undertaker's doctrine to hold the FBI liable. *See Case v. Bank of Am., N.A.*, No. 0:25-cv-61198, 2025 U.S. Dist. LEXIS 223857, 2025 WL 3772005 (S.D. Fla. Nov. 12, 2025) (*Leibowitz, J.*) (finding undertaker's doctrine inapplicable where plaintiffs sued multiple banks over fraudulent gift-card scheme perpetrated by third-party cybercriminals, one of whom pretended to be a Bank of America representative in order to induce plaintiffs to open accounts at Regions Bank).

### 2. The Magistrate Judge Correctly Found that Florida's Zone-of-Risk Doctrine Does Not Apply to Plaintiffs' Claims

"[T]he 'foreseeable zone of risk' test discussed in *McCain* is the test to be applied under Florida law to determine whether a duty exists under our negligence law." *United States v. Stevens*, 994 So. 2d 1062, 1067 (Fla. 2008), citing *McCain v.*

---

[6] *Compare Union Park Memorial Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996) (funeral home director voluntarily organized procession but led it negligently); *Kowkabany v. Home Depot, Inc.*, 606 So. 2d 716 (Fla. 1st DCA 1992) (voluntarily loading landscape timbers which protruded from window striking bicyclist ); *Garrison Retirement Home v. Hancock*, 484 So. 2d 1257 (Fla. 4th DCA 1985) (retirement home voluntarily supervised resident's activities but did so negligently ); *Fidelity and Casualty Co. of N.Y. v. L.F.E. Corp.*, 382 So. 2d 363 (Fla. 2d DCA 1980) (consulting engineer voluntarily undertook to design lightning protection for revenue control system but did so negligently).

*Florida Power Corp.*, 593 So. 2d 500 (Fla. 1992). Plaintiffs' theory of liability is clear: they claim that because the FBI failed to thoroughly investigate credible tips of sexual abuse by Epstein, it was foreseeable that Plaintiffs would be abused by Epstein. Objections, p. 22. In other words, Plaintiffs seek to hold the United States liable for the criminal acts of third party. The Magistrate Judge correctly rejected this theory. R&R, p. 17.

Under Florida common law, there is no duty to prevent the misconduct of third persons, between the defendant and plaintiff. *Trianon Park Condominium Ass'n v. Hialeah*, 468 So. 2d 912, 918 (Fla. 1985). Florida courts have repeatedly rejected the application of the zone-of-risk doctrine to a duty to control the tortious conduct of third persons. *See Abad v. G4S Secure Sols. (USA), Inc.*, 293 So. 3d 26 (Fla. 4th DCA 2020) (declining to impose duty on security services provider for an employee's commission of mass murder at Pulse nightclub); *Knight v. Merhige*, 133 So.3d 1140, 1145 (Fla. 4th DCA 2014) (declining to impose duty on parents of man who killed several family members at a Thanksgiving gathering).

However, Florida's appellate courts have carved out two exceptions to this general proposition. The first exception is when there exists a "special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of such conduct." *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085, 1089 (Fla. 1st DCA 1993). Under Florida law, where a citizen falls victim to a criminal offense that might have been prevented through reasonable law enforcement action, no common law duty of care is owed to that individual (and thus no tort liability) absent a special relationship to the victim. *Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985). An example of such a special relationship "is illustrated by the situation in which the police accept the responsibility to protect a particular person who has assisted them in the arrest or prosecution of criminal defendants and the individual is in danger due to that

assistance." *Id.* at 938.[7] Since a special relationship forms only when "a law enforcement officer promises or agrees to take some specific action at the individual's request," Plaintiffs cannot satisfy the duty element of their negligence claim. *Ochran*, 273 F.3d at 1318 (affirming judgment on DFE grounds in FTCA action for injuries plaintiff received when she was assaulted by the target of a federal investigation).[8]

The second exemption is when "the defendant is in actual or constructive control of: (1) the instrumentality; (2) the premises on which the tort was committed; or (3) the tort-feasor." *Daly v. Denny's, Inc.*, 694 So. 2d 775, 777 (Fla. 4th DCA 1997) (citing *Vic Potamkin Chevrolet, Inc. v. Horne*, 505 So. 2d 560, 562 (Fla. 3d DCA 1987)). Since Plaintiffs do not allege that the tortious incidents took place on government property, or that the tort-feasor (Epstein) was in government custody, none of the above exceptions apply to the case at bar.

Plaintiffs argue that the FBI's actions created a broader zone-of-risk to the general public and imposed a legal duty upon it. In support of their argument, Plaintiffs rely heavily on *United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008), where the unique facts of the case gave rise to a duty to the general public. Objections, p. 21. In *Stevens*, a victim was mailed a letter containing anthrax, which he subsequently inhaled and died from as a result. *Id.* at 1064. The anthrax was traced

---

[7] "Other examples of recognized special relationships include businesses toward their customers, employers toward their employees, jailers toward their prisoners, hospitals toward their patients, and schools toward their pupils." *Knight*, 133 So. 3d at 1145 (citations omitted).

[8] Plaintiffs do not raise any objections to the Magistrate Judge's finding that "Plaintiffs have not alleged facts that would impose a duty of care to prevent harm from a third-party under Florida law" because "the TAC fails to allege facts that show a special relationship between FBI agents and the Plaintiffs, or a special relationship between FBI agents and Epstein, sufficient to give rise to a duty of care. Likewise, the TAC fails to allege facts that show FBI agents had actual or constructive control over Epstein or the instrumentalities or premises used to commit his crimes." R&R, p. 15. "A party who fails to object to a magistrate judge's report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191 (11th Cir. 2020).

to a United States Army research facility, and the victim's estate filed a wrongful death action against the United States government. *Id.* The complaint alleged the government breached its duty to properly monitor and secure the anthrax. *Id.* The government moved to dismiss the complaint, arguing that it could not be liable for the criminal acts of a third party. *Id.* at 1065. The Florida Supreme Court found that although there was no special relationship between the government research facility and the victim, the research facility owed a duty to the general public under the facts of the case. *Id.* at 1069. Specifically: (1) the research facility worked with a known ultrahazardous substance; (2) the government knew of the risks of anthrax to the general public unless there were adequate security measures in place; and (3) the victim's death was foreseeable given the inadequate security measures. *Id.* at 1069-70.

In the instant case, Plaintiffs argue that like *Stevens*, the unique facts of this case created a foreseeable zone-of-risk to the general public that rose to a legal duty to the general public. Specifically, that "a reasonable person would understand that the public would be exposed to unreasonable risk if the FBI failed to thoroughly investigate credible tips of sexual abuse of children." Objections, p. 22. This exact argument was considered, and rejected in *Abad*. There, the plaintiffs argued that the Pulse nightclub killer's employer, a security company, was aware of the risk he posed because it was aware of his disturbing behavior and sympathy for mass murderers, it knew or should have known of the risk of assisting someone like the killer to obtain a security and Class G firearm license without a psychological evaluation, and it knew or should have known of the increased risk with each year as they continued to give him firearm training. *Abad*, 293 So.3d at 30. The appellate court determined that zone-of-risk doctrine was inapplicable, and that the killer's employer had no duty to the plaintiffs because the killer "was an individual with free agency who was outside of G4S's control and who committed crimes on his own time, with his own weapons and resources, at a location of his choosing." *Id.* This description is equally applicable to the relationship between the FBI, Epstein, and Plaintiffs. Therefore, the zone-of-

risk doctrine is not a valid basis to impart a duty onto the United States to have prevented Plaintiffs' injuries at the hands of Epstein.

## III. CONCLUSION

For these reasons, the United States respectfully request that this Court affirm the portions of the Magistrate Judge's Report and Recommendation described herein, grant in full the United States' Motion to Dismiss Plaintiffs' Third Amended Complaint, and dismiss this action in its entirety without leave to re-plead.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   *John S. Leinicke*
JOHN S. LEINICKE
ASSISTANT UNITED STATES ATTORNEY
Fla. Bar No. 64927
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Tel: (305) 961-9212
E-mail: john.leinicke@usdoj.gov

By:   *Steven R. Petri*
STEVEN R. PETRI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. A5500048
United States Attorney's Office
Southern District of Florida
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 660-5799
E-mail: steve.petri@usdoj.gov

*Counsel for United States of America*