UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:25-CV-80880 LEIBOWITZ / MCCABE

JANE DOE 1, *et al.*,

     Plaintiffs,

vs.

UNITED STATES OF AMERICA,

     Defendant.

_____/

UNITED STATES' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD
WITH NEWLY DISCOVERED EVIDENCE

The United States of America respectfully opposes Plaintiffs' Motion for Leave to Supplement the Record with Newly Discovered Evidence [ECF 90]. The Motion is due to be denied because 1) it does not comply with the Local Rules; 2) it does not identify any procedural basis for relief; and 3) granting the relief sought would be futile.

BACKGROUND

Attached to Plaintiffs' motion is the declaration of a non-party affiant, Audra Lynn Christiansen, which consists of several contradictory and irreconcilable statements. *See* ECF 90-1 ("Christiansen Declaration"). Christiansen asserts that in 2005, "she had multiple calls placed to the FBI," and "was told that the FBI would help me and would investigate Jeffrey Epstein." *Id.*, ¶ 2. However, she also asserts that "nobody from the FBI ever called me" and "the FBI never returned these calls and ignored my reports." Declaration, ¶¶ 3 and 5. Christian asserts that "in reliance

- 1 -

on representations made by FBI agents," she "did not contact any other law enforcement agencies upon the representations made by FBI agents." *Id.*, ¶ 6.[1]

Plaintiffs argue that "with this new evidence of an affirmative representation by the FBI, this case is on all fours with the [Marjory Stoneman Douglas] case[2] and like that case, defendant's motion to dismiss should be denied." *Id.*, p. 2. Plaintiffs further argue that they "can amend our complaint in accord with Judge Ryon M. McCabe's report and recommendation to include this new information" to state a claim under Florida's zone-of-risk doctrine and/or voluntary undertaking doctrine, and that "[t]his latest evidence also highlights why the Court should not undertake the fact-specific inquiry required to determine whether the discretionary function applies until after discovery is completed and is another reason for denying defendant's motion to dismiss." *Id.*, p. 2-3.

## LEGAL STANDARD

S.D. FLA. LOCAL RULE 7.1(A)(1) requires—with limited exceptions—every motion to "incorporate a memorandum of law citing supporting authorities." *Id.* Plaintiffs failed to do so, leaving the government to guess as to not just the procedural vehicle the motion relies upon, but the legal basis for the relief requested.

---

[1] The Court is not required to afford any weight to contradictory factual allegations in a complaint or its exhibits. *See Glob. Network Mgmt., Ltd. v. Cirion Techs., LLC.*, No. 20-cv-20723, 2024 U.S. Dist. LEXIS 187136, at *7 (S.D. Fla. Oct. 15, 2024) (*Becerra, J.*) ("On a motion to dismiss, the Court is not required to accept internally inconsistent factual allegations in a complaint."); *McMahon v. City of Riviera Beach*, No. 08-cv-80499, 2008 U.S. Dist. LEXIS 110621, at *8 (S.D. Fla. Aug. 27, 2008) (*Middlebrooks, J.*) ("[W]hen reviewing a motion to dismiss, a court is not required to 'accept factual claims that are internally inconsistent.'") (citing *Campos v. Immigr. & Naturalization Serv.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) (*Gold, J.*); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

[2] *In re Marjory Stoneman Douglas High Sch. Shooting*, 482 F. Supp. 3d 1273 (S.D. Fla. 2020) (*Dimitrouleas, J.*)

For the sake of argument, the government will assume that Plaintiffs want to amend their pleadings with the provided declaration. If this is the case, FED. R. CIV. P. 15(a)(2) governs the pre-trial amendment of pleadings. Because Plaintiffs have already taken four bites at the apple—*see* ECF 1, 9, 45, and 61—and are now looking for their fifth, they may amend their pleadings "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).[3] Plaintiffs have secured neither.

Courts have broad discretion to grant or deny leave to amend. *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). When denying a request for leave to amend, the Court must find a justifiable reason for doing so. *See id*. A district court may, in the exercise of its inherent power to manage the conduct of litigation before it, deny such leave where there is substantial ground for doing so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id*. (quoting *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982)). However, absent a showing of "undue delay, bad faith, dilatory motive, or undue prejudice, leave to amend is routinely granted." *See Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994) (citing *Foman*, 371 U.S. at 178); FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.")

---

[3] Assuming Plaintiffs' motion is best interpreted as a motion for leave to amend, it does not comply with S.D. FLA. LOCAL RULE 15.1, which requires that "a party who moves to amend a pleading shall attach the original of the amendment to the motion in the manner prescribed by Section 3I(1) of the CM/ECF Administrative Procedures." In turn, EM/ECF Administrative Procedures 3I(1) states that "if a document to be filed requires a motion requesting leave of the Court (e.g., an amended complaint,…), the proposed document shall be submitted as a PDF attachment to the motion." "Compliance with the Local Rules is mandatory" as "a valid local rule has the force of law." *Taveras v. Fla. DOT*, No. 22-cv-23745, 2024 U.S. Dist. LEXIS 157025, 2024 WL 3949789, at *1 (S.D. Fla. June 25, 2024) (*Scola, J.*) (citing *Cheshire v. Bank of Am., NA*, 351 F. App'x 386, 388 (11th Cir. 2009)). The Court and the government cannot be expected to lift language from various pleadings, motions, and affidavits and thereby construct an amended complaint.

While Plaintiffs' failures to cure their pleadings' deficiencies is arguably front and center at this juncture, a district court is also not required to allow an amendment when the amendment is futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). An amendment is considered futile if the complaint, as amended, "would still be properly dismissed." *Id.* "In other words, the question is whether the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (quotation marks omitted); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (explaining that futility is another way of saying "inadequacy as a matter of law"). Taking it all together, "justice," under Rule 15(a)(2), doesn't "require" leave to amend if a proposed claim cannot withstand a motion to dismiss. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008). And because Plaintiffs are represented by counsel, further leniency—or "an extra dose of grace"—is not warranted. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132-33 (11th Cir. 2019).

Such is the case here. Even taking the Christiansen Declaration at face value and construing its allegations in the light most favorable to Plaintiffs, this action would still be subject to dismissal. First, the allegations do not affect the government's valid jurisdictional defenses of the FTCA's discretionary function exception or the running of the statute of limitations. Second, Plaintiffs are wrong in their contention that the declaration now provides sufficient facts to establish duty of care owed by the FBI to the Plaintiffs under Florida's zone-of-risk doctrine and/or voluntary undertaking doctrine.

Further amendment of the pleadings is futile. The Court should deny the instant motion, and dismiss this case without further leave to amend.

## ARGUMENT

I. **Even Considering the Allegations in the Proffered Declaration, Any Further Amended Complaint Would Be Subject to Dismissal Under the FTCA's Discretionary Function Exception and the FTCA's Statute of Limitations**

In his Report and Recommendation, the Magistrate Judge correctly determined that the FTCA's discretionary function applies to Plaintiffs claims, and therefore the United States retains its sovereign immunity and the case should be dismissed for lack of subject-matter jurisdiction. *See* ECF 79, Report and Recommendation ("R&R") at p. 5-11. The Christiansen Declaration does not provide any facts which have application to this defense. Therefore, assuming that this Court adopts this portion of the R&R, further amendment to the pleadings on this basis is futile.

Relatedly, the Magistrate Judge held that each Plaintiffs' FTCA claim accrued at the times of their respective injuries between 1996 and 2017. *See* R&R, p. 21, citing 28 U.S.C. § 2675(a). However, Plaintiffs did not file an administrative claim until May 2023 at the earliest. *Id.*, p. 19. Therefore, absent a legal basis to 1) postpone the accrual of their claims under the discovery rule, or 2) suspend the statute of limitations once their claims accrued under equitable tolling, Plaintiffs' claims are uniformly "forever barred" by the FTCA's two-year statute of limitations. *See* 28 U.S.C. § 2401(b). The Magistrate Judge determined that the FTCA's discovery rule was inapplicable to Plaintiffs' claims. *See* R&R at p. 19-21. However, he determined that Plaintiffs did allege sufficient facts to support a plausible claim of equitable tolling of the FTCA's statute of limitations. *Id.*, p. 21-23. The government respectfully contends that R&R's finding of equitable tolling was erroneous. *See* United States' Objections to R&R, ECF 84 at p. 3-10. Should the Court ultimately determine that the Plaintiff's administrative claims were submitted past the statute of limitation's deadline, then further amendment of the pleadings on the basis of the Christiansen Declaration would also be futile, as any actionable tort would be "forever barred" as untimely. *See* 28 U.S.C. § 2401(b).

## II. The Allegations in the Proffered Declaration Are Insufficient to Establish a Duty Owed by the FBI to the Plaintiffs Under Florida's Zone of Risk or Voluntary Undertaking Doctrines

At the outset, arguing over whether the Christiansen Declaration provides sufficient facts to establish a duty of care owed by the FBI to the Plaintiffs under

Florida's zone of risk doctrine or Florida's voluntary undertaking doctrine is largely an academic exercise. This is because even *if* the declaration did provide a factual basis to establish a duty of care by the FBI—which it doesn't—the case would still be subject to dismissal under either the FTCA's statute of limitations or the FTCA's discretionary function exception. Putting this legal reality aside, and viewing the Christiansen Declaration as true and in the light most favorable to the Plaintiffs, there is still insufficient factual basis to state a claim under Florida law.

### A. The Pleadings, When Read in Concert With the Christiansen Declaration, Do Not Allege That the FBI's Actions Created a Foreseeable Zone of Risk

Under Florida law, "a party has no legal duty to control the conduct of a third person to prevent that person from causing harm to another." *Bing v. Alachua County*, 392 So. 3d 266, 269 (Fla. 1st DCA 2024) (citing *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 398 (Fla. 1st DCA 2004)); *K.M. v. Publix Super Mkts., Inc.*, 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005) ("Florida recognizes the special relationship exception to the general rule of non-liability for third-party misconduct.") This is equally true for both private persons and governmental entities. *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) ("[T]here is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals.").[4]

---

[4] In its simplest form, Plaintiffs' cause of action rests on the theory that through the FBI's negligent investigation into Epstein's crimes, the United States failed to enforce federal criminal sex trafficking laws, and this failure injured the Plaintiffs because it allowed Epstein (and other unnamed third parties) to abuse the Plaintiffs. Plaintiff's legal theory underpinning their entire case is fundamentally flawed. "Florida law is clear that the negligent conduct of police investigations does not give rise to a cause of action for negligence under Florida law because the 'duty to protect citizens and enforce the law is one owed generally to the public.'" *Lippman v. City of Miami*, 622 F. Supp. 2d 1337, 1342 (S.D. Fla. 2008) (*Marra, J.*) (citing *Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. 3d DCA 2003) (dismissing FTCA claim premised upon negligent investigation by FBI agents because no private person could be held liable for similar conduct); *Ochran v. United States*, 273 F.3d 1315 (11th Cir. 2001) (affirming dismissal of FTCA claim premised upon an assault of government informant by a criminal defendant, because the AUSA did not take the responsibility to protect informant and therefore no law enforcement special relationship existed).

A duty to protect an unknown plaintiff from a third party's actions may arise, however, if the defendant is in actual or constructive control of (1) the instrumentality of the harm; (2) the premises upon which the tort was committed; or (3) the person who committed the tort. *Bing*, 392 So. 3d at 269 (citing *Aguila*, 878 So. 2d at 398). The Christiansen Declaration does not allege any new facts which would establish any of the above three exceptions, thus providing Plaintiffs a "right of protection" by the FBI under Florida law. *K.M.*, 895 So. 2d. at 1117.

Courts have also recognized that the foreseeable zone of risk may be extended where there is a special relationship between the defendant and the plaintiff. *Cf. Bing*, 392 So. 3d at 272 (discussing situations where the foreseeable zone of risk may be extended and noting that the plaintiff failed to establish or show a special

The United States reiterates that there is no private right of action to compel the enforcement of either federal or Florida criminal law. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress."); *see also Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens do not have "a judicially cognizable interest in the prosecution or nonprosecution of another," nor do they have the "right to compel a State to enforce its laws."); *Murthy v. N Sinha Corp.*, 644 So.2d 983, 985-86 (Fla. 1994) (holding that absent legislative intent, a criminal statute does not create an implied civil cause of action under Florida law). It follows, therefore, that there is no private right of action against the government for failing to enforce criminal law.

The United States further reiterates that under Florida tort law, the duties of governmental entities are identical to private individuals, except that the government retains immunity from punitive damages. *See* Fla. Stat. § 768.28(5)(a) ("The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages."). "If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached." *Pollock v. Fla. Dep't of High. Patrol*, 882 So. 2d 928, 932 (Fla. 2004). In this context, the Florida Supreme Court has flatly stated that "there is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions of enforcing the laws and protecting the public safety because there has never been a common law duty of care with respect to these police power functions, and *the statutory waiver of sovereign immunity did not create a new duty of care.*" *Daytona Beach v. Palmer*, 469 So. 2d 121, 122-23 (Fla. 1985) (cleaned up, emphasis original, citation omitted).

relationship between the defendant and the person who committed the tort or the defendant and the plaintiff). The special relationship test is a limitation on the scope of one's liability for the intentional acts of third parties. Without any special relationship, "the fact that a person realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose a duty to take such action." *K.M.*, 895 So. 2d at 1119 (Fla. 4th DCA 2005) (quoting *Garrison Retirement Home Corp. v. Hancock,* 484 So. 2d 1257, 1261 (Fla. 4th DCA 1985).

The "special relationship" requirement is essential to establishing a duty to take precautions against the criminal acts of third parties. *Gross v. Family Servs. Agency, Inc.*, 716 So. 2d 337, 339 (Fla. 4th DCA 1998), *affirmed sub nom. Nova Southeastern Univ., Inc. v. Gross*, 758 So. 2d 86 (Fla. 2000). In *Nova Southeastern*, a university assigned an adult student to an off-campus internship site that the university knew was located in a high crime area. The adult student filed suit after she was criminally assaulted in the parking lot of that site. The Florida Supreme Court found that the adult student-university relationship was a special relationship that imposed a duty on the school to act reasonably because the university "had control over the students' conduct by requiring them to do the practicum and by assigning them to a specific location," and therefore "also assumed the Hohfeldian correlative duty of acting reasonably in making those assignments." *See Nova Southeastern*, 758 So. 2d at 89-90 (citing Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L. J. 16 (1913)).

Here, there was no special relationship between the Plaintiffs and the FBI, even considering the Christiansen Declaration. In the absence of a special relationship between the individual and the governmental entity, no common law duty is owed to the victim of a criminal offense, even though the offense might have been prevented through reasonable law enforcement. *See Everton v. Willard*, 468 So. 2d 936, 938 (Fla. 1985); *Dep't of Corr. v. Vann*, 650 So. 2d 658 (Fla. 1st DCA 1995), *approved*, 662 So. 2d 339 (Fla. 1995) (discussing cases in which Florida courts

held that the state is not liable to individuals for injuries resulting from the criminal acts of escaped inmates).

An example of a special relationship which creates a concomitant duty "is illustrated by the situation in which the police accept the responsibility to protect a particular person who has assisted them in the arrest or prosecution of criminal defendants and the individual is in danger due to that assistance." *See Everton*, 468 So. 2d at 938; *see also Pollock*, 882 So. 2d at 935 (noting that a duty may arise when law enforcement officers become "directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger."). Pivotal to the application of the "zone of risk" doctrine is the law enforcement officer's decision to "assume control over a particular situation or individual or group of individuals accompanied by a corresponding duty to exercise reasonable care." *Id.*; *Kaisner v Kolb*, 543 So. 2d 732 (Fla. 1989) (officer had duty to protect detained motorist from oncoming traffic); *Brown v. Miami-Dade County*, 837 So. 2d 414, 418 (Fla. 3d DCA 2001) (officer conducting sting operation had duty to exercise reasonable care to avoid harm to bystanders).

"Florida courts have also determined that a special duty is established when a police officer makes a direct representation to a plaintiff, or one so closely involved with the plaintiff that their interests cannot be separated, that he or she will take a specified law enforcement action." *Pollock*, 882 So. 2d at 936. Here, the Christiansen Declaration states the affiant "relied on the FBI to investigate Jeffrey Epstein as they affirmatively said that they would look into it and help me." *Id.*, ¶ 4. Even viewed in the light most favorable to Plaintiffs, this is insufficient to create a duty of protection by the FBI to the Plaintiffs. The declaration does not identify any facts which "closely involve" the affiant with the Plaintiffs. Similarly, it does not attest to any specific law enforcement action the FBI promised it would take, or that the FBI offered to protect either Christiansen or the Plaintiffs from Epstein. It does not attest that the FBI directed Christiansen to take or forego any course of action. In fact, the declaration is silent as to any direct representations made by the FBI (as opposed to some third

- 9 -

party) to Christiansen. Christiansen's assertions that "she had multiple calls placed to the FBI," and "was told that the FBI would help me and would investigate Jeffrey Epstein," are irreconcilable with her assertions that "nobody from the FBI ever called me" and "the FBI never returned these calls." Declaration, ¶¶ 2-7.

It is clear from the applicable Florida case law that, for the "zone of risk" exception to apply, the government must engage in some affirmative action that places a specific individual in imminent danger.[5] *See e.g. Lippman*, 622 F. Supp. 2d at 1342 (dismissing negligence claim against FBI agents and concluding that "the zone of risk cases do not apply here" because there were no allegations that Lippman was placed in danger by the FBI agents, and "[with] that argument rejected, Court is left with Florida law that clearly provides no duty of care to Lippman by the FBI."); *Henderson v. Bowden*, 737 So.2d 532, 536 (Fla. 1999) (duty of care arose from police officer's act of instructing an intoxicated man to drive to a convenience store and call for a ride home where the driver continued on and subsequently collided with a tree, killing two passengers in the vehicle); *Kaisner v. Kolb*, 543 So.2d 732, 735 (Fla. 1989) (determining that officer had a duty to protect a detained motorist from the hazard of onrushing traffic); *Franco v. Miami-Dade County*, 947 So.2d 512 (Fla. 3d DCA 2006) (county creates a zone of risk where it exercises its discretion in diagnosing, treating, and transporting patients in emergency situations); *White v. City of Waldo*, 659 So.2d 707, 710-11 (Fla. 1st DCA 1995) (duty of care arose from police officer's act of chasing a loose horse in an unlit patrol car with a private citizen on the hood). Florida's Fifth District Court of Appeal has explained that "when determining whether a duty [has been] created by a foreseeable zone of risk, to impose a duty, '[i]t is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create* or *control* the risk before liability may be imposed.'" *Manfre v. Shinkle*, 184 So. 3d 641, 648 (Fla. 5th DCA 2016) *(emphasis in original) (internal citations omitted).* Of note is that Florida courts have routinely

---

[5] This was discussed extensively in the United States' reply in support of its motion to dismiss. *See* ECF 73 at p. 5.

declined to accept the argument that an assurance of emergency service provisions by a 911 operator creates a zone of risk. *Id.*; *see also Jordan v. Neinhuis*, 203 So.3d 974 (Fla. 5th DCA 2016) (911 operator comment to decedent's wife that "help was on the way," and advisement to "just leave [him] there," did not create zone of risk).

Here, as in *Pollock*, the alleged facts contained in the pleadings and the Christiansen Declaration contain no evidence that the FBI assumed control over any property or individual. There are no allegations that the FBI took Epstein or anyone else into custody, or otherwise subjected anyone to danger that did not already exist. Someone's alleged comments to Christiansen indicating that the FBI would "look into it and help me" are analogous to those 911 assurances which Florida courts have repeatedly deemed insufficient to create a zone of risk. *Manfre*, 184 So.3d 641; *Jordan*, 203 So.3d 974.

Additionally, Florida courts have found that the mere act of responding to a general safety inquiry, coupled with the action of subsequently leaving an unsafe scene without further investigating or securing the scene, does not actively establish a "zone of risk" sufficient to trigger a special duty owed to any particular individual. *Manfre*, 184 So.3d at 648-49 (deputy's actions in responding to an emergency call indicating two horses had escaped and were posing a hazard on the road and spooked the horses to return to their pasture, but failing to contact property owner or secure the horses, did not create a foreseeable zone of risk to a subsequent individual involved in an automobile accident with one of the horses who subsequently escaped); *cf. Wright v. State, Dept. of Agriculture*, 540 So.2d 830 (Fla. 1st DCA 1988) (firefighters' negligent actions in failing to obtain a necessary plow to suppress a forest fire, then leaving the fire to burn all night after undertaking to suppress it, did not give rise to a duty of care owed to citizens subsequently injured by the resultant smoke screen visual hazard).

### B. The Pleadings, When Read in Concert With the Christiansen Declaration, Do Not Allege That the FBI's Entered Into a Voluntary Undertaking to Protect the Plaintiffs

Plaintiffs contend that because the someone told Christiansen that the FBI "would look into it and help me," the "undertaker's doctrine" applies to impose on the FBI a duty of care towards all Plaintiffs. Motion, p. 2-3. This is a fundamental misreading of the undertaker's doctrine. "[T]he first element of an undertaking duty under § 324A is an undertaking to 'render services to another, which [the undertaker] should recognize as necessary for the protection of a third person[.]'" *Case v. Bank of Am., N.A.*, No. 25-cv-61198, 2025 U.S. Dist. LEXIS 223857, at *22 (S.D. Fla. Nov. 12, 2025) (*Leibowitz, J.*) (citing *Marjorie Stoneman Douglas*, 482 F. Supp. 3d at 1292 (quoting Restatement (Second) of Torts, § 324A)). Here, the FBI did not render "services to another" by conducting a criminal investigation, because as indicated in *Pollock*, the enforcement of laws and protection of public safety is a general duty owed to the public as a whole as opposed to an individual person. *Pollock*, 882 So. 2d at 935. Accordingly, pursuant to this public duty doctrine, there is no common law duty of care to an individual citizen for the enforcement of police power functions. *Id.* Plaintiffs do not allege any facts showing that the FBI undertook a specific duty to protect the Plaintiffs from Epstein.

"The second element of an undertaking duty under § 324A is physical harm to a third person resulting from the undertaker's failure to use reasonable care." *Case*, 2025 U.S. Dist. LEXIS 223857, at *22 (quoting *Marjorie Stoneman Douglas*, 482 F. Supp. 3d at 1293). "[T]he undertaker's doctrine applies where law enforcement officers respond, actually engage an injured party and place the injured party within a 'zone of risk' (in that case, after a "safety check" at the individual's home) because the officers either increased the risk of harm to the injured party or induced third parties-who would have otherwise rendered aid-to forbear from doing so." *Wallace*, 3 So. 3d at 1048 (citing the Restatement (Second) of Torts §§ 323-324A (1965)); *see also Jordan*, 203 So. 3d at 977 ("The undertaker's doctrine applies when government agents engage an injured party, and then either control a situation and increase the risk of harm to the injured party or induce third parties—who would have otherwise rendered aid—to forebear from doing so, thereby placing the injured party in a greater 'zone of risk.'").

The Christiansen Declaration does not allege any new facts which fit within this rubric. Plaintiffs do not allege that they were ever in government custody; they do not allege they had any contact—direct or indirect—with the FBI at any time prior to their injuries. There was no express promise by the FBI to protect Christiansen or the Plaintiffs. Finally, the FBI was not in "active control" of any of the locations where Plaintiffs' injuries occurred. Because there was no express promise or assurance of protection made by the FBI to Christiansen (let alone the Plaintiffs), there can be no justifiable reliance sufficient to establish a special relationship as an exception to the public duty doctrine *See Pierre v. Jenne*, 195 So. 2d 1062, 1064 (Fla. 4th DCA 2001) (no special relationship between decedent and 911 operator); *Liebman v. Burbank*, 490 So. 2d 218, 219 (Fla. 4th DCA 1986) (no special relationship after trooper talked to accident victims who were pushing their vehicle on roadway and then who proceeded to burglary scene). Thus, no special relationship was created, no duty of care exists, and therefore no zone of risk analysis is required.

Accordingly, the Third Amended Complaint, combined with the Christiansen Declaration, does not plausibly allege that the FBI created a special duty of care to the Plaintiffs, or that the FBI—through its actions or inactions—placed the Plaintiff in foreseeable zone of risk. These exceptions simply do not apply to the instant facts.

## CONCLUSION

The instant motion to supplement the record should be denied. Furthermore, the United States' motion to dismiss should be granted in full, and the Court should dismiss this action without further leave to amend and/or with prejudice.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   *John S. Leinicke*
      JOHN S. LEINICKE
      ASSISTANT UNITED STATES ATTORNEY
      Fla. Bar No. 64927
      United States Attorney's Office
      Southern District of Florida

- 13 -

- 14 -

99 N.E. 4th Street, 3rd Floor
Miami, FL 33132
Tel: (305) 961-9212
E-mail: john.leinicke@usdoj.gov

By:    *Steven R. Petri*
STEVEN R. PETRI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. A5500048
United States Attorney's Office
Southern District of Florida
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 660-5799
E-mail: steve.petri@usdoj.gov

*Counsel for United States of America*