UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80880-CIV-LEIBOWITZ

JANE DOE 1, *et al.,*

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.

_____/

## <u>DEFENDANT'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT</u>

Defendant, United States of America, by and through the undersigned Assistant United States Attorney, hereby moves to dismiss this action pursuant to Fed. R. Civ. P. 8, 12(b)(1) and 12(b)(6).

### INTRODUCTION

Plaintiffs Laura Newman, Sandra Ward, and Jane Does 1 through 32 bring this action under the Fourth Amended Complaint (FAC) against the United States, collectively alleging two counts of negligence under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671, *et seq*. (the FTCA). Plaintiffs contend that at various times across a span of decades, and at various locations around the world, Jeffrey Epstein sexually abused them. *See* Fourth Amended Complaint, ¶¶ 2, 30-63. After several amendments, Plaintiffs now bring this FAC claiming negligence under the undertaking doctrine (Count I) and zone of risk doctrine (Count II), both new Counts alleged for the first time in the FAC, for actions by both the Federal Bureau of Investigation (FBI) and Department of Justice (DOJ).

However, even after the opportunity for yet another amendment, Plaintiffs fail to meet the requirements of Rule 8, fail to properly assert subject matter jurisdiction, and fail to state a claim upon which relief can be granted. As such, this Court should dismiss this case without further leave to amend, as further opportunities to amend would be futile. *See* D.E. 97 ("if after four bites at the apple Plaintiffs still fail to show this Court has jurisdiction over their FTCA claims, granting leave to amend thereafter would indeed be futile.")

1

## ARGUMENT

### I.      The Fourth Amended Complaint Fails under Fed. R. Civ. P. 8(a)(2)

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court held in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the pleading standard Rule 8 announces that a complaint does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, (citing *Papasan v. Allain,* 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

#### A.      Plaintiffs Have Failed to Adequately Allege Equitable Tolling.[1]

Plaintiffs each had two years from the date of their respective injuries to file an administrative claim with the appropriate federal agency. 28 U.S.C. §§ 2675(a), 2401(b)). Here, Plaintiffs' claims accrued at various times between 1996-2017 (FAC ¶¶ 30-63), yet Plaintiffs delayed the submission of their administrative claims until May 2023 and beyond.[2] Therefore, Plaintiffs' claims are time barred and must be dismissed. "The failure to timely present an administrative grievance to the appropriate federal agency within two years is a jurisdictional bar to litigation in federal court." *Chasteen v. United States*, 334 Fed. Appx. 271, 274 (11th Cir. 2009). "Dismissal . . . on statute of limitations grounds is appropriate . . . if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc*., 410 F.3d 1275, 1288 (11th Cir. 2005) (cleaned up).

Plaintiffs assert in their FAC that this "action has been timely filed pursuant to… the doctrine of equitable tolling." [FAC at ¶ 27]. Plaintiffs further allege they only "became aware of the Defendant's negligence, their injuries, and the cause of their injuries after the case against J.P.

---

[1] While Plaintiffs also assert the discovery rule as a basis for defeating the statute of limitations in this case [FAC at ¶ 27], this Court has already declined to extend the discovery rule to this case. [D.E. 79 at p. 20, D.E. 97].

[2] *See* D.E. 62-1, affidavit of Deborah A. Edwards, Unit Chief – Discovery, Oversight, and Coordination Section, FBI Office of the General Counsel. *See also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

Morgan Chase & Co….." *Id*. at ¶ 28. Plaintiffs do not allege a specific date on which they became "aware," nor how it was that they became aware. Rather, they simply state in conclusory fashion that a case filed in 2022 was somehow the first time they became aware of the Defendant's alleged negligence, their alleged injuries, and the cause of their alleged injuries. *See Id.* "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Woods v. United States*, 700 Fed. Appx. 982, 983–84 (11th Cir. 2017) (quoting *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846 (11th Cir. 2013)). The Eleventh Circuit has stated that equitable tolling "is an 'extraordinary remedy' that should be used 'sparingly.'" *Echemendia v. United States*, 710 Fed. Appx. 823, 827 (11th Cir. 2017) (*Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)).

Plaintiffs fail to allege any basis whatsoever to establish the due diligence required for their assertion of equitable tolling. Plaintiffs allege in the FAC that they were not made aware of their claims until the *JP Morgan* case filed in 2022 yet cite numerous other publications detailing the government's alleged failures dating back to 2019. *See* FAC at fn. 4, *Sarah Fitzpatrick & Rich Schapiro, Ex-Florida Police Chief: Epstein Case The Worst Failure of the Criminal Justice System in Modern Times, NBC News* (Sept. 20, 2019), attached as Exhibit A; FAC at fn. 12, Julie K. Brown, *Perversion of Justice: The Jeffrey Epstein Story* (New York: HarperCollins, 2021), cover attached as Exhibit B; FAC at fn. 13, *Everyone Heard About Jeffrey Epstein's Enablers. Few Listened to His Victims*, Fresh Air, NPR radio broadcast (July 20, 2021), attached as Exhibit C; FAC at fn. 14, Department of Justice Office of Professional Responsibility, *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its Interactions with Victims During the Investigation*, at 261 (Nov. 2020), attached as Exhibit D; FAC at fn. 15, *Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1219-1221 (S.D. Fla. 2019), attached as Exhibit E; FAC at fn. 28, Sarah Fitzpatrick, et al., *Justice Department Probe Ends with No Action Against Prosecutors Who Oversaw Epstein Deal*, NBC News (Nov. 12, 2020), attached as Exhibit F.[3] Plaintiffs by their own allegations were put on public notice of their claims in 2019 and repeatedly thereafter, and

---

[3] Plaintiffs also reference comments by Senator Ben Sasse that the DOJ's actions were a "disgusting failure." [FAC at ¶ 276]. While Plaintiffs omit the date of these comments, they occurred in November of 2020.

yet have no allegations of a factual basis explaining how the Plaintiffs remained in ignorance unlike the rest of the world, necessary to meet pleading requirements of Rule 8.

In order to show that equitable tolling is warranted, the **burden is on the Plaintiff**. *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 661 (11th Cir.1993) (emphasis added). Notably, due diligence on the part of the plaintiff is **necessary** to prevail on the issue of equitable tolling. *Justice v. U.S.*, 6 F.3d 1474 (11th Cir. 1993). "To support equitable tolling under the discovery rule, . . . a plaintiff must plead sufficient facts to show the time of the discovery and to support his diligence in delayed discovery." *Varner v. Domestic Corp.*, 2017 WL 3730618, at *9 (S.D. Fla. Feb. 7, 2017). "[R]easonable diligence and extraordinary circumstance requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling." *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1225 (11th Cir. 2017). To warrant the application of this extreme remedy, plaintiffs bear the heavy burden of proving (1) that they pursued their rights diligently, and (2) that some extraordinary circumstance stood in their way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649, (2010); *see also Diaz v. Sec'y for Dep't of Corr.,* 362 F.3d 698, 701 (11th Cir. 2004) (noting the "difficult burden" of demonstrating entitlement to equitable tolling). The supporting allegations must be "specific and not conclusory." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014); *see also Carlsen v. One W. Bank FSB*, 2010 WL 4123573, at *2 (S.D. Fla. Oct. 20, 2010) ("Plaintiffs' conclusory assertion of equitable tolling is insufficient; the Complaint must allege facts sufficient to support the contention that equitable tolling should apply."); *Switala v. Rosenstiel*, 288 F. Supp. 3d 1296, 1301 (S.D. Fla. 2017) ("Where there has been no showing of a basis for equitable tolling in either the complaint or a response to a motion to dismiss, courts have granted motions to dismiss claims as time-barred.").

Here, Plaintiffs have not plead sufficient facts to show the time of the discovery, nor **any** facts supporting their diligence in delayed discovery. *See generally* FAC. Rather, Plaintiffs point to a single case against a bank related to Suspicious Activity Reports[4] [FAC at ¶ 28] but somehow ignore the litany of publications cited in their own FAC, showing that the allegations they are asserting were public record long before the *JP Morgan* case.  Plaintiffs cannot ignore the decades

---

[4] Notably, Plaintiffs do not even include a date on which this case was filed or what document in the case alerted them to their claims.

of cultural saturation concerning the FBI's investigation and claim they simply did not know.[5] *See McCullough v. U.S.*, 607 F.3d 1355 (11th Cir. 2010) (plaintiffs may not "bury [their] head in the sand once [they are] put on notice that the government may have caused an injury") (internal citations omitted). Plaintiffs have failed to establish any basis for their conclusory assertion of equitable tolling under Rule 8, and in fact their allegations establish that they were on public notice of their claims no later than 2019. As a result, Plaintiffs claims are time barred, as their administrative claims were not presented until May of 2023 and thereafter, exceeding the 2-year statute of limitations.

### B.        Plaintiffs' Have Failed to Adequately Allege a Duty

Under Florida law, the threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff. *In re Marjory Stoneman Douglas High Sch. Shooting FTCA Litig.*, 482 F. Supp. 3d 1273, 1280 (S.D. Fla. 2020); *citing Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009). Whether a duty exists is a question of law. *Id.; citing Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005). "If a plaintiff fails to establish [a] state-law duty . . . the United States retains its sovereign immunity, and the suit cannot go forward." *Smith v. United States*, 14 F.4th 1228, 1232 (11th Cir. 2021). In Florida, "there has never been a common law duty to individual citizens for the enforcement of police power functions*." Irving v. St. John*, No. 21-cv-01002, 2022 WL 3213422, at *3 (M.D. Fla. Aug. 9, 2022); *cf. Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another.") (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)); *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (noting that plaintiff had "no substantive right of any kind" in a criminal investigation, "much less one created by the Constitution.").

In an attempt to circumvent the established law holding there is no cause of action for negligence in mishandled police investigations, Plaintiffs assert the undertaking and zone of risk

---

[5] Remarkably, Plaintiffs also completely ignore the Netflix docuseries "Filthy Rich" that was released in May of 2020, detailing the FBI and DOJ actions and inactions, including prominently featured Maria Farmer, whom Plaintiffs aver is a key witness to their case. In fact, many of the allegations of Maria Farmer's information appear to be directly taken from her interview in this series.  Plaintiffs also provide no explanation for why the well reported indictment and death of Epstein in 2019 did not put them on notice of their claims, occurring after the "Me Too" movement no less. *See United States v. Jeffrey Epstein*, 1:19-cr-00490 (SDNY unsealed July 8, 2019).

doctrines. [FAC at pp. 46-52]. However, Plaintiffs fail to properly allege a duty under either doctrine. Notably, even if the FBI were found to owe a duty to Plaintiffs in this case, the Eleventh Circuit has found that the FBI conducted a two-year investigation of Epstein's conduct and developed "substantial incriminating evidence" resulting in "both an 82-page prosecution memo and a 53-page draft indictment..." *See In re Wild*, 994 F.3d 1244 (11th Cir. 2021). Plainly, the FBI met any alleged duty owed to the Plaintiffs by conducting an investigation that resulted in enough evidence to support an 82-page prosecution memo and 53-page draft indictment.

### i. Undertaking Doctrine

Count I of the two count FAC is based upon the Undertaking Doctrine. There are two elements required to assert the undertaking doctrine under Florida law. First, with respect to undertakings for the protection of a third person, the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*In re Marjory Stoneman Douglas High Sch. Shooting FTCA Litig.*, 482 F. Supp. 3d 1273, 1292 (S.D. Fla. 2020) (*quoting* Restatement (Second) of Torts § 324A (1965)). Accordingly, the first element of an undertaking duty under § 324A is an undertaking to "render services to another, which [the undertaker] should recognize as necessary for the protection of a third person[.]" *See* § 324A. *See, e.g., In re Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1292.

In *Marjory Stoneman Douglas*, the Court found that the Plaintiffs had sufficiently alleged a duty under the first prong of the undertaking doctrine because they sufficiently alleged that the Public Access Line ("PAL") was "explicitly for the protection of third persons." *Id.* (internal quotations omitted). Plaintiffs in *Marjory Stoneman Douglas* not only specifically alleged that the PAL was for the protection of third persons, but also that it undertook to serve as the central repository and conduit for information regarding potential threats to life, and to handle and relay

that information to the agency's agents and analysts. *Id*. The facts in *Marjory Stoneman Douglas* were extremely specific as to the undertaking by the PAL. For example, allegations in the complaint explained that prior to 2012, concerned citizens with information about potential threats to life could directly contact their local FBI field office and could even speak directly with FBI agents and analysts, meaning that the personnel at the local offices—the agents and analysts tasked with investigative and intelligence duties—would receive calls directly from the public and process information about potential threats themselves. *Id* at *1278. Thereafter, in 2012, the FBI upended this system and replaced it with the PAL to serve as a centralized system to receive tip information from the public to the FBI about crimes and threats and relay that tip information to FBI agents and analysts. *Id.* In so doing, the PAL **undertook** to serve as the nation's core hub, repository, and distribution point for tips about potential threats to life, including mass shootings and school shootings. Additionally, the information provided through the PAL system "was extremely urgent and highly specific, both about the likelihood that Cruz would try to hurt or kill others, and about Cruz's likely target: his former high school in Parkland, Florida." *Id.* at *1278. The Court then went on to note the PAL's failure of that duty, by failing to do the most basic task, providing the tips to the local FBI field office for evaluation, after assuring the caller that the information would be provided to the correct people. *Id*. at *1279.

Plaintiffs in the case at hand do not allege specific allegations of an undertaking to third persons. Rather, they simple state that "[t]he FBI and the Department of Justice rendered law enforcement services to American citizens and failed to exercise reasonable care…" [FAC at ¶ 325]. Further, the allegations that the FBI would "investigate the allegations and help Ms. Christiansen" are not sufficient to plead a duty by the FBI. *See* FAC at 152. By Plaintiffs' own words, this alleged statement was overheard from a conversation not involving Ms. Christiansen, [FAC at ¶ 150], and Ms. Christiansen's own declaration states that the FBI allegedly said they would "look into it." [D.E. 90-1]. This is clearly not the "highly specific" facts that existed in the *Marjory Stoneman Douglas* case, and certainly not enough to create an undertaking on behalf of the FBI. Such conclusory allegations of a duty do not meet the Rule 8 pleading standard and should not be accepted by this Court.

Finally, the allegations that the FBI "undertook" the duty to investigate reports from JP Morgan is simply nonsensical. By Plaintiffs' own words, JP Morgan filed Suspicious Activity Reports (SARs) to FinCEN, a bureau of the U.S. Department of the Treasury. [FAC at ¶ 245].

7

There are no specific allegations that FinCEN then notified the FBI about those SARs, and therefore, no duty can exist. Notably, the Department of the Treasury is separate and apart from the DOJ and FBI, and to the extent Plaintiffs are now alleging negligence on behalf of the Department of Treasury, there are no allegations that administrative claims were presented to that agency.

The second element needed to establish the undertaking doctrine under § 324A is physical harm to a third person resulting from the undertaker's failure to exercise reasonable care.[6] "This second element can be satisfied in any one or more of three ways: the undertaker's negligence increases the risk of harm, the undertaker performs a duty owed by the "other" to the third person, and/or the "other" relies on the undertaking in a way that contributes to the harm." *In re Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1294. Plaintiffs contend that they have alleged sufficient facts to support two of those three: the harm is suffered because of reliance of the other or the third person upon the undertaking, and failure to exercise reasonable care increased the risk of harm. [FAC at ¶¶ 326-27].

Again, looking to *Marjory Stoneman Douglas*, it is apparent that the Plaintiffs here have not met their burden to show reasonable reliance. First, the Plaintiffs in *Marjory Stoneman Douglas* alleged that "when [the January 5 caller] sought assurances from the FBI's customer service representative that the FBI was the proper forum for reporting information about Cruz, the FBI reassured her, both implicitly and expressly, that the FBI was the proper forum for reporting such information, that the FBI would investigate the matter, and that the FBI would follow-up with the caller as the investigation proceeded." *Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1295. It was further alleged that "[w]hen the January 5 caller was preparing to end the call, she expressly reconfirmed that the FBI would look into the information she provided." *Id*. This information was both "highly specific" and included specific details about the information related to the call with the FBI. *Id*. Additionally, the tip from the January 5 caller was a "little more than one month before the shooting." *Id*. at 1278.

In contrast, Plaintiffs allegations of reliance here are vague, conclusory, and inconsistent with public records. *See generally* FAC. Plaintiffs' allegations that Maria Farmer "relied on the FBI to investigate her claims…" runs directly contrary to the allegations in the complaint filed *by*

---

[6] While Plaintiffs have not even met the first element, Defendant addresses the second element for completeness.

*Maria Farmer* in the U.S. District Court for the Southern District of New York. *See* Maria Farmer Complaint at pg. 2, par. 7, Case. No. 1:25-cv-01709, D.E. 1 (S.D.N.Y. May 29, 2025), attached as Exhibit G. Nowhere in Maria Farmer's own complaint for negligence against the FBI did she ever state she ***relied on the FBI***. *See id.*[7]  In fact, in Ms. Farmer's own complaint it states that  "an FBI agent taking Maria's call hung up on her, and no one at the FBI attempted to follow up with her or pursue her valid and serious allegations, most of which continued for many years, if not decades, with wide-ranging consequences."  *Id.* at pg. 2 of 63, par. 7.  Ms. Farmer's specific allegations do not support any undertaking by the FBI, let alone reasonable reliance.

As for the claims of reliance by Audra Christiansen, they too are vague, conclusory, and contradictory, thus failing to meet Rule 8 pleading requirements. [FAC at ¶¶ 142-171]. Plaintiffs claim that Ms. Christiansen relied on the FBI to investigate her claims because "they said they would" *id.* at ¶ 154, yet Ms. Christiansen avers in her declaration that the FBI "never returned these calls and ignored my reports." [D.E. 90-1]. It is paradoxical that the FBI can both have assured Ms. Christiansen that they were going to actively investigate, while at the same time ignoring reports and not returning her calls. *See Chapman v. Abbott Labs*., 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) ("[a] court need not accept  as true allegations in  a  complaint that contradict or are inconsistent with judicially-noticed facts."). Notably, both Ms. Farmer and Ms. Christiansen provided information directly to FBI agents, who were able to evaluate the tips and make a determination as to next steps, if any. This is directly in contrast with *Marjory Stoneman Douglas*, where the court found the government had violated a duty owed to plaintiffs by the PAL failing to provide the tip information to FBI agents for similar evaluation. *See Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1298.

Further, it is inherently unreasonable that either Ms. Farmer or Ms. Christiansen would continually rely on the government to act for ***years*** after their reports where there was absolutely no follow-up whatsoever. In 1996 after receiving the tip and for the next decade, the FBI never

---

[7] When a district court considers a motion to dismiss on jurisdictional grounds, it may consider matters "beyond the pleadings in order to determine whether it lacked subject matter jurisdiction." Goodman v. Sipos, 259 F.3d 1327, 1331 n. 6 (11th Cir.2001). A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir.1999). Public records are among the permissible facts that a district court may consider. See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir.2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

asked to meet with Ms. Farmer or speak to her sister at all, who were the alleged victims of the tip. Nor did the FBI over the years that passed attempt to take Ms. Christiansen's statement or even speak directly with her to obtain specific details and assess her credibility.  In fact, the FBI never even spoke directly to Christiansen at any point in time until 2020. FAC at ¶ 156.  During the years that went by after limited contact with no follow-up whatsoever, no reliance was reasonable.  This is far beyond the mere month between the call and inaction in *Marjory Stoneman Douglas*, and cannot be considered reasonable reliance for an indefinite period of time. *Valdez v. City of New York*, 18 N.Y.3d 69 (2011) ("[A] promise by police that certain action will be forthcoming within a specified time period generally will not justify reliance long after a reasonable time period has passed without any indication that the action has occurred."). Finally, as already discussed by Defendant, the FBI began an investigation into Epstein beginning in 2005. *See In re Wild*, 994 F.3d at 1248 ("Following a tip in 2005, the Palm Beach Police Department and the FBI conducted a two-year investigation of Epstein's conduct"). Even if a duty to investigate Epstein was created in the 2005-2006 time period, the Eleventh Circuit has already taken notice that an intensive FBI investigation was completed which thereby fulfilled any duty.  *Id*. at 1249 (Noting that by 2007, government lawyers were able to compile both an 82-page prosecution memo and a 53-page draft indictment).

### i.        Zone of Risk Doctrine

Plaintiffs also attempt to assert Count II under the zone of risk doctrine. [FAC at pp. 49-52]. Under the *McCain* "foreseeable zone of risk" doctrine, "the determination of the existence of a common law duty flowing from the general facts of the case under our negligence law depends upon an evaluation of the concept of foreseeability of harm." *In re Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1302. (internal citations omitted). *McCain* stands for the principle that "where a person's conduct is such that it creates a 'foreseeable zone of risk' posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure that the underlying threatening conduct is carried out reasonably." *Id.*

However, Plaintiffs' claim here fails for a similar reason as their undertaking doctrine claim. Plaintiffs have failed to plausible allege a duty on behalf of the government, or an affirmative action the government took to create this alleged "foreseeable zone of risk." Unlike *Marjory Stoneman Douglas*, where the FBI created and operated the PAL, excluding the ability of callers to speak to their local field office, no such action occurred here. There was no "affirmative

conduct of eliminating the ability of concerned citizens to contact their local FBI field office directly… create[ing] a risk that information about imminent threats to life from concerned citizen tipsters would not be related to those equipped to act…" *Id*. at 1303. Rather, Plaintiffs seemingly rely on a "failure to act" argument, which is not cognizable under the *McCain* zone of risk doctrine analysis.

In essence, Plaintiffs have alleged that tips were given directly to FBI agents in 1996 and 2005, which the FBI decided to not act upon.  This alleged fact distinguishes the FAC from the *Marjory Stoneman Douglas* allegations where the Court found the PAL failed in the duty to get the information to an FBI agent for evaluation. As the FAC alleges the tips were provided to FBI agents, the decision to investigate or not investigate Epstein was completely within the discretion vested in the Executive Branch. *In re Wild*, 994 F.3d at 1263. Any alleged detrimental reliance upon these phone calls was inherently unreasonable due to the complete lack of follow-up by the FBI over the passage of many years.  The FAC is inherently contradictory, alleging reasonable detrimental reliance as a conclusory allegation while overlooking its specific allegations that the FBI never followed up with any of the victims including Audra Christiansen, Maria Farmer, and Annie Farmer, and never sought to collect any evidence.  Further, any allegation of a duty created in the 2005/2006 time period fails Rule 8 scrutiny due to the inherent contradictory allegations that the FBI failed to investigate in contravention of the fact that an intensive investigation was conducted by the FBI which culminated in the NPA, which was a Constitutionally vested decision by the U.S. Attorney not to prosecute Epstein despite the evidence collected by the FBI's diligence. *See* Non-Prosecution Agreement, attached as Exhibit H.

## II.     Plaintiffs' Claims are Barred by the Discretionary Function Exception

Plaintiffs allege in various places throughout the FAC that the FBI failed to follow mandatory policies and procedures to investigate child sex abuse, *See* FAC at ¶¶ 10, 117-18, 163, 197, 257, 277, 283, 285, 289, 292, 295, 307-312, and that such policies were not discretionary, but mandatory. [FAC at ¶ 16]. However, such allegations are categorically incorrect: what, when, and how the FBI chooses to investigate is a matter of discretion. Additionally, a prosecutor's decision to choose whether or not to charge an individual with a criminal offense is inherently discretionary. *See In re Wild*, 994 F.3d 1244, 1261 (11th Cir. 2021). The Court therefore lacks subject matter jurisdiction over Plaintiffs' claims.

11

## A.      The Discretionary Function Exception, Generally

The FTCA's waiver of sovereign immunity is subject to several exceptions, including the discretionary function exception (DFE). The statute provides that the jurisdiction given to district courts under 28 U.S.C. § 1346(b)(1) does not apply in cases where a claim is:

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, ***whether or not the discretion involved be abused.***

28 U.S.C. § 2680(a) (emphasis added). The Supreme Court in *United States v. Gaubert*, 499 U.S. 315 (1991) established a two-step test to determine if the discretionary function exception applies. First, a court must look to the nature of the act and whether it involves an "element of judgment or choice." *Id*. at 322. So long as the course of action is not specifically prescribed by a federal statute, regulation, or policy, the conduct at issue will meet this first step. *Id.* The court then must consider the second part of the test: whether that judgment is the kind of judgment that the discretionary function was designed to shield. *Id*. at 323. In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz v. United States*, 486 U.S. 531, 537 (1988).

## B.      Law Enforcement Investigations Are Protected by the Discretionary Function Exception

Before addressing whether the government's conduct violated a mandatory regulation or policy, the court first "must determine exactly what conduct is at issue." *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993). Here, the conduct at issue is the manner and method by which the FBI pursued its investigation into Epstein. As explained below, all relevant investigatory decisions by federal law enforcement officers are covered by the FTCA's discretionary function exception.

"The Executive Branch has absolute discretion to decide whether to investigate and its decisions are not subject to judicial review." *Engel v. FBI*, No. 25-cv-00937, 2025 U.S. Dist. LEXIS 80266, at *2 (D.D.C. Apr. 28, 2025) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Law enforcement personnel's "failure to discover, investigate, and dissolve" crimes are

12

"the types of decisions that the discretionary function exemption would be expected to shield." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). "The overwhelming consensus of federal case law establishes that criminal law enforcement decisions— investigative and prosecutorial alike—are discretionary in nature and, therefore, by congressional mandate, immune from judicial review." *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) (Marcus, J.), *affirmed* 123 F.3d 1435 (11th Cir. 1997). In *Mesa*, the plaintiff brought an FTCA suit alleging that DEA agents failed to properly identify the subject of an arrest warrant and mistakenly arrested the plaintiff. The Eleventh Circuit "readily conclude[ed]" that law enforcement officers' "decisions regarding how to investigate the subject of an arrest warrant . . . are discretionary in nature and involve an element of judgment or choice" and "grounded in considerations of public policy," thus falling within the FTCA's discretionary function exception. *Mesa,* 123 F.3d at 1438. *See also Martinez v. United States*, 587 F. Supp. 2d 245, 248-49 (D.D.C. 2008) (finding that discretionary function applied to claims that the FBI was "derelict in its duty" when it failed to take plaintiff's complaints seriously and failed to help her when she made various calls to field offices); *Gray v. Bell*, 712 F.2d 490, 513–14 (D.C. Cir. 1983) ("[D]ecisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception. . . The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy.").

Courts have been cautious about intervening in this area, aware that "imposing liability for such decisions would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) (holding that discretionary function exception applied to FBI's methods in undercover investigation); *see also O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001) ("how law enforcement agents conduct interrogations would appear to be a paradigmatic example of a discretionary function" involving "elements of judgment and choice—the central ingredients of discretion"); *Mid-S. Holding Co. v. United States*, 225 F.3d 1201 (11th Cir. 2000) ("decisions of [federal law enforcement officers] concerning the manner in which to search . . .

fall within the scope of the discretionary function exception"); *Gonzalez v. United States*, 814 F.3d 1022, 1025 (9th Cir. 2016) (discretionary function exception applied to FBI's failure to disclose information to local law enforcement regarding a threatened home invasion); *Gordo-González v. United States,* 873 F.3d 32, 37 (1st Cir. 2017) (affirming dismissal of FTCA action arising from FBI's negligent investigation because "[i]t follows inexorably, as night follows day, that the challenged conduct is discretionary."); *Shuler v. United States,* 531 F.3d 930 (D.C. Cir. 2008) ("Decisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary second-guessing.").

### i. There are No Mandatory Statutes, Regulations, or Directives that Constrained the FBI's Discretion in the Conduct at Issue.

The first part of the *Gaubert* test is satisfied here, as Plaintiffs do not identify any specific mandatory statutes, regulations, or directives, or policies that constrained the FBI's discretion on how or whether it conducted a criminal investigation into Epstein. See FAC ¶¶ 5, 9, 163, 257 (allegations of the "nondiscretionary" obligations and duties related to FBI Manual of Investigative Operations and Guidelines ("MIOG") and the 1995 Innocent Images National Initiative ("IINI")). Notably, Plaintiffs do not indicate **any** language from the IINI that **mandates** the FBI to act. Similarly, Plaintiffs cite two different MIOGs but fail to recognize that such MIOGS are couched in permissive language, and therefore cannot overcome the DFE. *See Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020) (finding that plaintiff failed first step of *Gaubert* test by failing to identify a nondiscretionary duty violated by FBI, despite referencing *Attorney General's Guidelines on FBI Undercover Operations* 's *Undercover and Sensitive Operations Unit, Attorney General's Guidelines on FBI Undercover Operations* § VI.A.2 (1992), and *FBI Domestic Investigations and Operations Guide* ("DIOG")); *Barbieri v. United States*, No. 16-3748, 2017 U.S. Dist. LEXIS 160242, at *13-14 (E.D. Pa. Sep. 28, 2017) ("Barbieri also contends that the FBI Guidelines proscribe a course of conduct that FBI agents must follow. Those Guidelines, however, are not mandatory regarding the course of action an agent must follow in interviewing witnesses and building a case."); *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) (finding the 2011 DIOG did not overcome DFE); *Priah v. United States*, 590 F. Supp. 2d 920 (N.D. Ohio 2008) (The relevant FBI Manual of Internal Operating Guidelines (MIOG), handbook and manual were not mandatory and therefore, the FBI agents were granted discretion in planning and carrying out the operation that led to the decedent's demise).

14

Plaintiffs do not identify any mandatory policy because they cannot. Absent such a mandatory directive, the FBI maintains full discretion in how to conduct its investigations. This extends from the inception of an investigation (i.e. whether to follow up on a tip from the public), through its middle (i.e. determining which leads to pursue and devote investigatory resources), all the way to its conclusion (i.e. arresting a suspect).

Further, Plaintiffs assertion that "[d]iscovery is required to determine whether the FBI violated any other relevant policies or procedures" runs contrary to Rule 8. It is the **Plaintiffs'** burden to plead an exception to the DFE. *See Alvarez v. United States*, 207 F. Supp. 3d 1291 (M.D. Fla. 2016) ("Yet while the Court will construe all factual inferences in plaintiffs' favor, in the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists.") (*citing OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). Thus, Plaintiffs must show that the exceptions invoked by the government do not apply. *See id.* (explaining that plaintiff bore the burden of proving that the discretionary function exception did not apply). Stated otherwise, it is plaintiffs' burden to allege facts falling outside the exceptions. *See, e.g., Douglas,* 814 F.3d at 1276 ("At the pleading stage, [plaintiff] must allege a plausible claim that falls outside the discretionary function exception.")

Courts uniformly agree that law enforcement must be afforded broad discretion on whether and how to investigate and follow-up on information they received from the public. *See Thacker v. United States*, No. 06-cv-145, 2006 U.S. Dist. LEXIS 69046, at *9 (N.D. Fla. Aug. 15, 2006) (dismissing FTCA claim where plaintiff "failed to identify a specific and binding directive that addresses the investigation of complaints of perjury or the use of false information by local law enforcement and prosecutors in state criminal prosecutions and requires FBI or DOJ employees to investigate such complaints."); *Manchanda v. Reardon*, No. 23-cv-9292, 2024 WL 382116, at *7 (S.D.N.Y. Feb. 1, 2024) ("[A] federal law enforcement agency's decision to conduct an investigation in response to reports of criminal activity is a discretionary function that is not cognizable under the FTCA.) (citing, *inter alia*, § 2680(a)). Any other result "would seriously handicap the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter,* 441 F.3d at 312.

The FBI employees who received tips from the public were not required to take mandatory or specific steps in their assessment of those tips. FBI personnel retain discretion to determine whether a tip indicates a credible threat that is appropriate for FBI involvement. The decisions of

how to analyze and assess the information gathered and whether to forward the tips to a Field Office were each imbued with discretion, without which the FBI could not perform its investigative and law enforcement functions. *Rosas v. Brock*, 826 F.2d 1004, 1010 (11th Cir. 1987) (finding that "if a discretionary decision is made without following mandated procedures, it is an abuse of discretion and, as such, protected from judicial review.").

Beyond the decision on how or whether to follow-up on tips are a myriad of subsequent investigatory decisions that FBI agents in the relevant field offices would have made, each of which also demand the exercise of discretion throughout. "FBI agents, like detectives and police officers must evaluate whether the information requires immediate action, deferred action, or no action at all." *Gonzalez*, 814 F.3d at 1029. The FBI field office would have determined for itself whether any specific fact revealed a credible threat that was appropriate for FBI involvement and whether to take any action. If FBI agents had decided to act, they would have had discretion to decide how to act, including the ultimate law enforcement decision regarding what steps to take to prevent potential criminal conduct. In exercising that discretion, considerations such as the feasibility of interviewing the complainant or the subject of the complaint, how to locate and identify the subject, the use and availability of potential witnesses, the value of any documentary evidence, whether the evidence was consistent or contradictory, and whether to refer the matter for possible prosecution inevitably come into play. And even if the FBI had failed to take some preliminary action (such ignoring a tip in 1996 or 2005, FAC ¶¶ 118, 155), the FBI ultimately would still have had discretion in all remaining steps of its investigatory decision tree.

### ii.     Federal Law Enforcement Officers' Decisions on Whether and How to Conduct Criminal Investigations Are Grounded in Public Policy

If no mandatory directive controls the governmental conduct at issue, the second part of the discretionary function analysis requires the court to "determine whether the discretion involved in the governmental act 'is the kind that the discretionary function was designed to shield.'" *Gaubert*, 499 U.S. at 322-23. The FBI's discretionary decisions on how to conduct a criminal investigation are grounded in public policy and thus protected from hindsight review. *See Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991) (finding that the decision whether or not to investigate was "at the core of law enforcement activity" and involved the type of decision making that section 2680(a) was designed to protect); *Martinez*, 587 F. Supp. 2d at 249 (holding that "[t]he decision to allocate limited

16

governmental resources to investigate a reported crime . . . is a discretionary function" and noting that "'[t]he federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy'" (*quoting Gray*, 712 F.2d at 514)).

When the FBI analyzes which matters to undertake, it engages in a complex balancing act between the allocation of limited investigatory resources, the gravity of the alleged offenses, and the credibility of the allegations (among many other considerations). Indeed, the FBI "is not required to investigate every complaint filed." *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010). Here, how the FBI received information from the public, how it evaluated the information received and how it responded to that information via allocating resources and personnel, were grounded in public policy. The second part of the *Gaubert* test is also met here because decisions of whether to investigate an individual "are at the core of law enforcement activity" that the discretionary function exception "was designed to safeguard." *Kelly*, 924 F.2d at 362. After all, "the ability of an investigator to choose the way in which an investigation will proceed is undoubtedly grounded in considerations of public policy." *Littell v. United States*, 191 F. Supp. 2d 1338, 1345 (M.D. Fl. 2002); *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) ("Investigations . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation.").

Moreover, to the extent Plaintiffs' seek to predicate liability on the assumption that, had the FBI followed up on tips then the FBI would have prevented Epstein from acting, such a claim falls within the discretionary function exception because it challenges policy-based decisions on whether and how to enforce statutes authorizing the FBI to investigate potential crimes. *McCloskey*, 385 F. Supp. 2d at 81; *see also Smith*, 375 F.2d at 247-48 ("The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy."); *Shuler*, 531 F.3d at 934 (FBI's decision on when to arrest drug-trafficking boss fell within discretionary function exception); *cf. Flammia v. United States*, 739 F.2d 202, 205 (5th Cir. 1984) (decision to release immigration detainee who was a known violent felon protected by the discretionary function exception).

In sum, the second prong of *Gaubert* applies. Because both prongs of the discretionary function exception are met here, the United States has not waived its sovereign immunity over Plaintiffs' negligence claim, warranting its dismissal.

### C.     Prosecutorial Decisions are Protected by Discretionary Function Exception

An additional flaw in the conclusory allegations of the FAC is its premise that an FBI investigation would have taken Epstein off the streets and prevented further harm.  In addition to ignoring that an intensive FBI investigation did take place, this causation premise overlooks that only a prosecutor's decision to file charges can potentially get a criminal off the streets, a decision which is inherently discretionary.  An even more clearly established discretionary function of the government is the decision whether or not to prosecute. Broadly defined, the term "prosecutorial discretion" refers to the soup-to-nuts entirety of "[a] prosecutor's power to choose from the options available in a criminal case, such as filing charges, prosecuting, not prosecuting, plea-bargaining, and recommending a sentence to the court." *In re Wild,* 994 F.3d 1244 (11th Cir. 2021) (citing *Prosecutorial Discretion*, *Black's Law Dictionary* (10th ed. 2014)). "The core of prosecutorial discretion, though—its essence—is the decision whether or not to charge an individual with a criminal offense in the first place." *Id.* The Supreme Court has repeatedly reaffirmed the principle that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 **U.S**. 683, 693 (1974) (citing *Confiscation Cases*, 74 **U.S**. (7 Wall.) 454, 19 L.Ed. 196 (1869)).

The Eleventh Circuit has already examined the conduct of the Department of Justice related to the 2007 Non-Prosecution Agreement with Epstein relied upon by the FAC. *See In re Wild*, 994 F.3d 1244 (11ᵗʰ Cir. 2021); FAC at 33, par. 222-223. While the Eleventh Circuit was strongly critical of the actions of the Department of Justice in its decision not to prosecute Epstein, it found that "Judicial review of a prosecutor's decision whether to prosecute is the very quintessence of an 'impair[ment of] prosecutorial discretion.'" *Id.* at *1263. The Court decided that the conduct of the government was within "prosecutorial discretion" and therefore, the case could not move forward. *Id.*[8]  Plaintiffs premise of causation runs directly into the Constitutionally vested discretion within the U.S. Attorney's Office whether to charge criminal conduct, or not.

### iii.     The Discretionary Function Exception is Properly Before the Court at the Motion to Dismiss Stage

---

[8] In the interest of transparency, the Defendant notes that the underlying holding was that there was no private cause of action under the Crime Victims Rights Act, but the analysis and finding of prosecutorial discretion was a determining factor in that finding.

18

While Defendant recognizes that this Court previously held that the assertion of the DFE was premature, the Defendant requests the Court conduct further review based on the specific facts alleged in the FAC under the scrutiny of relevant caselaw.

First, in their briefing defending the Third Amended Complaint (TAC), Plaintiffs relied on *Douglas v. U.S.*, for the contention that the DFE should not be applied at the motion to dismiss (MTD) stage. *See Douglas v. U.S.*, 814 F.3d 1268 (11th Cir. 2016). However, *Douglas* involved facts much different than those of this case. For example, the government's DFE challenge in *Douglas* was based on **factual questions** such as whether plaintiff's pay grade was correct, who can set that grade, etc. *Id.* The court found "the record shows that BOP regulations [related to the plaintiff's pay] allowed **no discretion**…" *Id*. at 1276. The Plaintiff in *Douglas*, at the MTD stage, was able to point to specific, non-discretionary regulations that defeated the discretionary function exception. The Plaintiffs here cannot do the same. Rather, they point to MIOGs and DIOGs which have been held to be couched with permissive language and therefore **discretionary**. *See Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020) (finding that plaintiff failed first step of *Gaubert* test by failing to identify a nondiscretionary duty violated by FBI, despite referencing *Attorney General's Guidelines on FBI Undercover Operations*'s *Undercover and Sensitive Operations Unit, Attorney General's Guidelines on FBI Undercover Operations* § VI.A.2 (1992), and *FBI Domestic Investigations and Operations Guide* ("DIOG")). Further, the government here is not making a DFE challenge based on factual contentions, but one of law. The Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs have pointed to no **mandatory** policy of the government, requiring the FBI to investigate, or the DOJ to prosecute.

The Court pointed to Judge Dimitrouleas's decision in *Marjory Stoneman Douglas*, in finding that consideration of the DFE at the MTD stage for the TAC was premature. *See* D.E. 97 at p. 14. However, the government points out that the denial of the DFE argument at the MTD stage in *Marjory Stoneman Douglas* was a **sanction on the government**. *See Marjory Stoneman Douglas*, 482 F. Supp. 3d at 1277.

Finally, to the extent the Court noted that all but one of the cases cited by the government in its MTD the TAC were decided pre-*Douglas*, [D.E. 97 at p. 13], the government provides further support for its contention that dismissal based on the DFE at the MTD stage is appropriate. *See Keo v. FBI*, No. 1:25-CV-00126, 2025 U.S. Dist. LEXIS 215126, at *8 (M.D. Pa. Oct. 31, 2025) ("Keo's claim that the FBI failed to investigate her complaints is barred by the discretionary

19

function exception to the FTCA"); *Garner v. United States*, No. 25-5335, 2026 U.S. App. LEXIS 648, at *1 (D.C. Cir. Jan. 8, 2026) (The district court correctly dismissed appellant's FTCA claims against the FBI for failure to investigate her reports because such investigative decisions are protected by the discretionary function exception to the FTCA's waiver of sovereign immunity); *Asanov v. United States of Am./ FBI*, No. 5:24-CV-82-M-KS, 2025 U.S. Dist. LEXIS 26293, at *8-9 (E.D.N.C. Jan. 14, 2025) (dismissing FTCA suit premised upon allegation that "FBI failed 'to handle and investigate tips concerning potential and ongoing Kids-For-Cash crimes in a reasonable manner and to act against [alleged children traffickers] to prevent them from committing repeated crimes.'"); *Unnamed Mother v. United States*, No. 1:25-cv-00154-KWR-SCY, 2025 U.S. Dist. LEXIS 160190, at *11 (D.N.M. Aug. 18, 2025) (dismissing FTCA suit because an FBI Agent's or United States Attorney's general duty to cooperate under § 2809(a) therefore invariably "involves 'a matter of choice' or judgment."); *Taylor v. United States*, Civil Action No. 2:24-cv-1440-BHH, 2025 U.S. Dist. LEXIS 97310, at *22-23 (D.S.C. Mar. 21, 2025) (Dismissing claims arising from FBI investigation because "the challenged conduct, which pertains to criminal law enforcement decisions (both investigative and prosecutorial), necessarily involved discretionary judgments or choices."); *Dalal v. Molinelli*, Civil Action No. 20-1434 (MCA) (LDW), 2024 U.S. Dist. LEXIS 254038, at *94 (D.N.J. July 31, 2024) ("It is well established that the FBI's investigation of Plaintiff otherwise satisfies the discretionary function exception."); *Awad v. United States*, 807 Fed. Appx. 876, 880 (10th Cir. 2020) (unpublished) ("[T]he manner in which law enforcement agents conduct their investigation and identify suspects involves elements of choice.").

### III.    Several Plaintiffs Failed to Present a Sum Certain as Required by the FTCA

"[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages ***in a sum certain***…" 28 C.F.R. § 14.2(a) (emphasis added). Where "the sum certain is omitted, the administrative claim fails to meet the statutory perquisite to maintaining a suit against the government and leaves the district court without jurisdiction to hear the case." *Dalrymple v. United States,* 460 F.3d 1318 (11th Cir. 2006); *see Suarez v. United States*, 22 F.3d 1064, 1066 (11th Cir. 1994) (holding that "the FTCA requires, at a minimum, that a claimant expressly claim a sum certain or provide documentation which allow the agency to calculate or estimate the damages to the claimant.").

Here, three of the Jane Doe Plaintiffs, Jane Does 13, 21, and 29, failed to assert a sum certain on their administrative claim forms. *See* Declaration of Deborah A. Edwards, attached as Exhibit I. Without a sum certain, these Plaintiffs failed to present a valid administrative claim, and they must be dismissed from this action for failing to properly exhaust administrative remedies.

## CONCLUSION

The Defendant respectfully requests that this Court dismiss this case in its entirety without further leave to amend, as further amendment would be futile. Plaintiffs have continuously failed to meet the pleading requirements of Rule 8, fail to properly assert subject matter jurisdiction, and fail to state a claim upon which relief can be granted. As such, dismissal is warranted.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), Defendant respectfully requests a hearing on its Motion to Dismiss. The Defendant believes a hearing would help clarify the issues and give the Court the opportunity to ask any questions necessary for resolution of the Defendant's Motion. The Defendant anticipates one hour would be needed for such hearing.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:  */s/ Kelsi R. Romero*
KELSI R. ROMERO
Assistant U.S. Attorney
United States Attorney's Office
Southern District of Florida
Special Bar No. A5502758
500 East Broward Blvd, Suite 700
Fort Lauderdale, FL 33394
kelsi.romero@usdoj.gov

By:  *Steven R. Petri*
STEVEN R. PETRI
Deputy Chief, Civil Division
United States Attorney's Office
Federal Bar No. A5500048
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Tel: (954) 660-5799
Steve.Petri@usdoj.gov